IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMARA PRYOR, As Administrator of the ESTATE OF AARON JENKINS | : : : | 2:20-cv-05532 |
| v. | : : | |
| CITY OF PHILADELPHIA and PHILADELPHIA INTERNATIONAL AIRPORT, et al. | : : : | JURY TRIAL DEMANDED |

**DEFENDANTS, CITY OF PHILADELPHIA AND
PHILADELPHIA INTERNATIONAL AIRPORT'S,
MOTION TO DISMISS PLAINTIFF'S COMPLAINT
<u>PURSUANT TO FED. R.C.P. 12(B)(6)</u>**

Defendants, City of Philadelphia and Philadelphia International Airport (improperly sued as a defendant)[1] (hereafter "City" or "Moving Defendants"), by and through its attorneys, Bennett, Bricklin & Saltzburg LLC, respectfully move to dismiss Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of said Motion, Moving Defendants aver as follows:

1. Plaintiff, Tamara Pryor, seeks to recover for the death of her decedent, Aaron Jenkins, who died as a result of a stab wound on May 3, 2018.

2. According to Plaintiff's Complaint, Decedent was an employee of Defendants Frontier Airlines, Inc. (Frontier) and Worldwide Flight Services (Worldwide) and worked at the Philadelphia International Airport. *See* Pl.'s Complaint at ¶ 11 (Exhibit A).

---

1  The Philadelphia International Airport is merely an asset of the City of Philadelphia and is not subject to suit in its own right. *See Fullam v. Philadelphia International Airport*, 49 F. Supp. 2d. 434 (E.D. Pa. 1999) and *Regulbuto v. City of Philadelphia*, 937 F. Supp. 394 (E.D. Pa. 1995).

3. Plaintiff further alleged that on May 3, 2018, "Once inside Frontier's terminals, Defendants' employee, Kevin Emanuel[2], bypassed security with a knife and stabbed [Decedent] in his leg; resulting in [Decedent's] death." Id. at ¶ 14.

4. Plaintiff seeks to recover from the City for alleged violations of Decedent's Fourteenth Amendment rights due to Moving Defendants' alleged failure to implement security measures and prevent prohibited weapons[3] from being brought to the airport. *Id*. at Count I and ¶ 26.

5. Plaintiff further seeks recovery for an alleged violation of Decedent's rights under 42 U.S.C.A. §1983 on a "state created danger" theory of liability. *Id*. at Count II and ¶ 32.

6. Additionally, Plaintiff seeks recovery based upon a state law negligence theory of liability.

7. Plaintiff's Fourteenth Amendment and §1983 claims should be dismissed because she has failed to satisfy the elements of the state-created danger theory of liability, and because Plaintiff has not pled a violation of Decedent's constitutional rights at all.

8. Plaintiff's state law claims should be dismissed because the City of Philadelphia is immune from tort liability under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §8541 *et seq*.

9. For these reasons, and those more fully set out in the attached brief, all of Plaintiff's claims should be dismissed in their entirety, with prejudice.

---

2    Mr. Emanuel was not an employee of the City of Philadelphia.
3    The Transportation Security Administration, created by the *Aviation and Transportation Security Act, Public Law 107-71*, 107th Congress, signed into law on November 19, 2001, is tasked with developing and implementing policies to ensure the safety of the nation's transportation systems. Its responsibilities include, but are not limited to, enforcing security-related regulations, approving measures for the detection of prohibited weapons, and vetting persons who require unescorted access to the secured areas of airports.

WHEREFORE, Defendants, City of Philadelphia and Philadelphia International Airport respectfully request that their motion be GRANTED, and that all claims against them be DISMISSED, WITH PREJUDICE.

                                      **BENNETT, BRICKLIN & SALTZBURG LLC**

By:    */s/ Michele E. Turner*
                Michele E. Turner, Esquire
                Centre Square, West Tower
                1500 Market Street, 32nd Floor
                Philadelphia, PA 19102
                (215) 665-3386
                E-mail: mturner@bbs-law.com
                *Attorneys for Defendants,*
                *City of Philadelphia and*
                *Philadelphia International Airport*
                *(improperly sued as a defendant)*

Date:  November 12, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMARA PRYOR, As Administrator of the ESTATE OF AARON JENKINS | : : : | 2:20-cv-05532 |
| v. | : : | |
| CITY OF PHILADELPHIA and PHILADELPHIA INTERNATIONAL AIRPORT, et al. | : : : | JURY TRIAL DEMANDED |

**DEFENDANTS, CITY OF PHILADELPHIA AND
PHILADELPHIA INTERNATIONAL AIRPORT'S
BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT
PURSUANT TO FED. R.C.P. 12(B)(6)**

Defendants, City of Philadelphia and Philadelphia International Airport (improperly sued as a defendant) (hereafter "City" or "Moving Defendants"), by and through their attorneys, Bennett, Bricklin & Saltzburg LLC, hereby move to dismiss Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), and submit the following Brief in Support of their Motion:

**I.   SUMMARY OF ARGUMENT**

Plaintiff Tamara Pryor, as administrator of the Estate of Aaron Jenkins, seeks to recover for the death of Aaron Jenkins (Decedent) due to a stab wound to his leg inflicted by coworker Kevin Emanuel on May 3, 2018.

Plaintiff alleges in her Complaint that Decedent was "an employee of [Defendant] Frontier and [Defendant], Worldwide Flight Services during his employment at [Philadelphia International Airport] in the City of Philadelphia." *See* Pl.'s Complaint at ¶ 11 (Exhibit A).

Plaintiff seeks to recover from the City for alleged violations of Decedent's Fourteenth Amendment rights due to Defendants' failure to implement security measures and prevent prohibited weapons from being brought into the airport. *Id*. at Count I and ¶ 26.  Plaintiff further

seeks recovery for a violation of Decedent's rights under 42 U.S.C.A. §1983 on a "state created danger" theory of liability.  *Id*. at Count II and ¶ 32.  Additionally, Plaintiff seeks recovery based upon a state law negligence theory of liability.

Plaintiff's Fourteenth Amendment and §1983 claims should be dismissed because she has failed to satisfy the elements of the state-created danger theory of liability, and because Plaintiff has not pled a violation of Decedent's constitutional rights at all.  Furthermore, Plaintiff's state law claims should be dismissed because the City of Philadelphia is immune from tort liability under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §8541 *et. seq*.

## II.    RELEVANT FACTS

According to Plaintiff's Complaint, Decedent was an employee of Frontier and Worldwide and was working at the Philadelphia International Airport when the incident giving rise to the Complaint occurred.  *See* Pl.'s Complaint at ¶ 11 (Exhibit A).  Plaintiff alleges that it was "custom for other employees to enter Philadelphia International Airport, as well as the terminals, without going through security checks."  *Id*. at ¶ 12.  Lastly, plaintiff alleges that "as a result, airport employees bypassed security and entered terminals with prohibited weapons."  *Id*. at ¶ 13.

Plaintiff further alleges that "Defendants' Rules and Regulations Manual, published under the authority contained in Sections 4-500(c) and 8-407 of the Philadelphia Home Rule Charter" provided that no persons (with exceptions not relevant here) shall "possess, carry or discharge…other weapons…at the Airport."  *Id*. at ¶¶ 35-36.

Plaintiff also alleges that "upon information and belief Defendants removed security measures for cost."  *Id*. at ¶ 33.  Plaintiff finally alleges that "Kevin Emanuel bypassed security with a knife and stabbed Plaintiff in his leg; resulting in Plaintiff's death."  *Id*. at ¶ 14.

In Count I of the Complaint Plaintiff alleges, *inter alia*, that Defendants violated Decedent's 14th Amendment rights "when he [Decedent] was assaulted at PHL", and that Decedent's injuries "directly resulted from Defendants' violation of its own Rules and Regulations, and lack of security measures." *Id.* at ¶ 22. In Count II of Plaintiff's Complaint, it is alleged, *inter alia*, that "Defendants deprived Plaintiff of his constitutional right under state-created danger because it (sic) should have known, and it was foreseeable Plaintiff would be harmed by the co-employee's actions." *Id*. at Count II, ¶ 31. Plaintiff further alleges that Decedent's §1983 claim falls under an exception to the state-created danger rule in that, "Upon information and belief, Defendants removed security measures for cost" and that "the State's affirmative conduct played a part in creating the danger and rendered Plaintiff more vulnerable to that danger." *Id*. at Count II, ¶¶ 32 and 33.

### III.   ARGUMENT

#### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for the dismissal of a claim for the "failure to state a claim for which relief can be granted" through a pre-pleading motion. Fed. R. Civ. Pro. 12(b)(6). To survive a motion to dismiss, a complaint must allege facts that adequately set forth each of the essential elements of a cause of action. Nami v. Fauver, 82 F.3d 63, 65 (3rd Cir. 1996). Although the Court must accept all well-pleaded factual allegations contained in the complaint, it need not credit bare allegations, conclusory assertions or unwarranted factual inferences. Maio v. Aetna, Inc., 221 F.3d 472, 485 n.12 (3d Cir. 2000); Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997); Kost v. Kozakiewwicz, 1 F.3d 176, 183 (3d Cir. 1993); Perry v. Grant, 775 F.Supp. 821 (M.D. Pa. 1991). Bald assertions and conclusions of law will similarly not survive a motion to dismiss. Gardiner v. Mercyhurst College,

942 F.Supp. 1050, 1052 (M.D. Pa. 1995).  In short, the complaint's "[f]actual allegations **must be enough to raise a right to relief above the speculative level**..., on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (U.S. 2007) (emphasis added, citations omitted). "Where a complaint pleads fact that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), quoting, Twombly, 550 U.S. at 557, 127 S.Ct. at 1955.

   **B.   Plaintiff's 14th Amendment and Section 1983 Claims Should be Dismissed for Failing to Plead (a) the Existence of a Policy or Custom that directly caused (b) a Violation of Decedent's Constitutional Rights.**

Section 1983 provides a private cause of action to citizens for deprivations of their constitutional rights by a person acting under the color of state law.  42 U.S.C.A. §1983.  "By itself, Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law." Morse v. Lower Merion School Dist., 132 F.3d 902, 906-07 (3d Cir. 1997), citing, Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689 (1979).  "In order to state a claim, plaintiff must show that the defendants, acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States." Id., citing, Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908 (1981).

A municipality that employs a state actor may only be held liable for section 1983 violations under certain limited circumstances.  Monell v. Dept. of Soc. Srvcs. of City of N.Y., 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36 (1978).  "[A] municipality cannot be held liable *solely* because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory." Id. at 691, 98 S.Ct. at 2036.  A municipality may only

be held liable when the unconstitutional conduct by the state-actor "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Id*. at 690, 98 S.Ct. at 2035-36.  Thus, a Monell claim is only viable when the municipality maintains an unconstitutional policy or custom which directly caused the violation of plaintiffs' civil rights.

"[P]roper analysis requires [the court] to separate two different issues when a §1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120, 112 S.Ct. 1061, 1066 (1992) (citations omitted).  "Thus, [the] first inquiry in any case alleging municipal liability under §1983 is the question of whether **there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.**" *Id*. at 123, 112 S.Ct. at 1067 (citations omitted, emphasis added).  In this case, Plaintiff's §1983 claims against the City of Philadelphia should be dismissed both because Plaintiff has failed to plead a violation of Decedent's constitutional rights, and because she has failed to satisfy the elements of a state-created danger theory of liability.

                *1.*      *Plaintiff Has Not Sufficiently Pled the Presence of a Policy or Custom that Directly Caused Decedent's Constitutional Harm.*

Plaintiff cannot proceed with her §1983 claim against the City of Philadelphia unless she pleads that the alleged constitutional harm was directly caused by a policy or custom of the City of Philadelphia.  "Policy is made when a 'decision maker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict.'" Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990), quoting, Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299 (1986).  "A course of conduct is considered

5

to be a 'custom' when, though not authorized by law, 'such practices of state officials are so permanent and well settled' as to virtually constitute law." Id., quoting, Monell, 436 U.S. at 690, 98 S.Ct. at 2035.  Regardless of whether a plaintiff pursues the claim on custom or policy grounds, "it is incumbent upon a plaintiff to show that a **policymaker** is responsible either for the policy, or through acquiescence, for the custom." Id. (emphasis added).

In order to pass muster under Iqbal and Twombly, *supra*, the plaintiffs' complaint "must identify a custom or policy, and specify what exactly that custom or policy was." McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009) (citations omitted).  The plaintiff must further plead involvement by a municipal decision-maker in the implementation of that policy. Id. at 658-59.  Courts of the Eastern District have previously dismissed §1983 Monell claims based on boilerplate allegations substantially more detailed than those at issue in this case.

For example, in Mirra v. Fynes, No. 13-CV-1677, 2014 WL 716692 (E.D. Pa. Feb. 25, 2014), the allegations were as follows:

> Plaintiff alleges that Darby Township and its police department "as a matter of policy and practice failed to discipline, train, supervise or otherwise sanction police officers who violate the rights of citizens, including the plaintiff's, thus encouraging defendants Detective Lundell and Officer Fynes in this case to engage in the unlawful and actionable conduct described...." Dkt. No. 1. at ¶ 37.  He also alleges that the Township and its police department, "as a further matter of policy and practice failed to train properly its police officers, including defendants, Detective Lundell and Fynes in this case, with respect to the constitutional, statutory and departmental limits of their authority." Id. ¶ 38.  Finally, plaintiff alleges that the Township and its police department "were on actual notice of a need to train, supervise, discipline or terminate its defendant officers prior to the incident in question as other similar incidents have occurred in the past involving defendants Detective Lundell and Officer Fynes." Id. at ¶ 40.

Id. at *6.  Dismissing the Monell claim, Judge O'Neill concluded that "plaintiff's complaint provides no factual details regarding the existence, scope or application of the alleged policy, practice, procedure or custom that is essential to his claim.  Plaintiff's allegations amount to mere

6

conclusory statements and a recitation of the elements required to bring forth a *Monell* claim, and are thus insufficient." *Id*. at *6. The plaintiff in Mirra then sought to supplement the pleading by adding the allegation that, "the Township was on notice of its need to provide training 'as a result of prior civil lawsuits, internal affairs complaints, and complaints from the general community.'" *Id*. Judge O'Neill found, however, that this allegation was also "merely conclusory and insufficient under *Twombly*." *Id*.

Additionally, a plaintiff must show that the "official policy and/or custom causes an employee to violated another person's constitutional rights." Estate of Massey v. City of Phila., 118 F. Supp. 3d 679, 696 (E.D. Pa. 2015). Additionally, a plaintiff must establish a "plausible nexus or affirmative link between the municipality's custom or policy and the constitutional deprivation challenged." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.1990).

Here, Plaintiff has failed to sufficiently plead a Monell claim against the City of Philadelphia. Plaintiff has not alleged a policy or custom that "caused an employee to violate" Decedent's constitutional rights. According to Plaintiff, "Defendants' employee Kevin Emanuel" stabbed Decedent, resulting in his death. Even taking as true Plaintiff's allegation that Kevin Emanuel was an employee of the City of Philadelphia (which he was not), the alleged policy or custom (allowing workers to bypass security with prohibited weapons) in no way "caused" Mr. Emanuel to attack Decedent. Nor is there any "plausible nexus" or "affirmative link" between the City of Philadelphia's alleged policy or custom, and Kevin Emanuel's criminal decision to stab a coworker.

Further, Plaintiff has failed to sufficiently plead a custom or policy. Plaintiff alleged in her Complaint that:

> "Defendants' formal and informal actions of not implementing security checks for its (sic) employees, overlooking reports made that airport

7

> employees were bringing prohibited weapons into the airport and/or not identifying why such security measures were not implemented reflect a policy, practice or custom authorizing and allowing employees that violated the constitutional rights of the Plaintiff."

Pl.'s Complaint at ¶¶ 26 and 48.

There is no allegation that the City of Philadelphia, as a governmental unit or municipality, enacted a policy or custom of any kind. Rather, Plaintiff generically avers that "Defendants" did not implement security measures, without specifying which of the "Defendants" purportedly did so. There is no allegation of "involvement by a municipal decision-maker in the implementation of that policy." McTernan, supra. Plaintiff's claims should therefore be dismissed.

### 2. *Plaintiff Has Failed to Allege a Violation of Decedent's Constitutional Rights*

Even if Plaintiff had sufficiently pled an actionable policy or custom, her claims should still be dismissed because she has not pled a violation of Decedent's constitutional rights. In particular, she has failed to plead sufficient facts that would support her Fourteenth Amendment "state created danger" theory of liability.

As a general matter, the Fourteenth Amendment imposes no obligation on the government to protect citizens against harm visited upon them by private actors or outside forces. DeShaney v. Winnebago Cty. Dept. of Soc. Services, 489 U.S. 189, 196, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). As the United States Supreme Court has explained:

> [N]othing in the language of the Due Process clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It **forbids the State itself** to deprive individuals of life, liberty, or property "without due process of law," but its language **cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means**. ...Its purpose was to protect the people from the State, **not to ensure that the State protected them from each other**.

*Id*. at 195-96, 109 S.Ct. at 1003 (emphasis added).  "As a general matter, then, …a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id*. at 197, 109 S.Ct. at 1004 (emphasis added).

For example, in DeShaney, *supra*, a four year old child was so severely beaten by his father (and sole caregiver) as to leave him mentally impaired for the rest of his life.  Prior to the beating, the local department of social services had been repeatedly advised by doctors of suspicions of child abuse by the father, once obtained a temporary order placing the child in foster care on suspicion of child abuse, and assigned a case worker to the child who made monthly visits to the child's home, recording suspicions of child abuse, but taking no further action.  489 U.S. at 192-93, 109 S.Ct. at 1001-02.  On the caseworker's last two visits to the home, shortly after the child had been hospitalized under suspicion of child abuse, the father - whom she suspected of abuse - told her that the child was too ill to be seen.  *Id*.  Still, she took no action.  *Id*.  After the severe beating, the child's mother filed a §1983 claim against the department of social services for failing to act, as was its obligation, notwithstanding its knowledge of abuse.  The Supreme Court dismissed the claim because the state "had no constitutional duty to protect" the child from harm inflicted by a private individual.  *Id*. at 201, 109 S.Ct. at 1006.

Following DeShaney, the Supreme Court in Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120, 112 S.Ct. 1061, 1066 (1992), found no constitutional obligation to provide a safe work environment when a city sent a sanitation worker into an unventilated sewer pipe, causing his death.  In Morse v. Lower Merion School Dist., 132 F.3d 902, 906-07 (3d Cir. 1997), the Third Circuit found no constitutional violation in failing to provide a safe work environment when a school teacher was shot in her classroom by a psychiatric patient who obtained access to the building when the school knowingly failed to secure the back doors as required by its own policies.

In <u>D.R. v. Middle Bucks Area Vo. Tech. School</u>, 972 F.2d 1364 (3d Cir. 1992) (*en banc*), the Third Circuit *en banc* found no constitutional duty to protect school students who were repeatedly raped by other students *during class* over a period of months under circumstances in which the school knew or should have known of the conduct, yet took no action to stop it. In <u>Bright v. Westmoreland Cty</u>, 443 F.3d 276 (3d Cir. 2006), the Third Circuit found no constitutional violation when a police officer and parole board delayed more than ten weeks in arresting a convicted child molester who violated his parole requirements by continually contacting his twelve year old former victim in an attempt to maintain a relationship with her. Due to the state's inaction, the parolee was able to murder the victim's eight year old sister.

In all of these cases, the decisions were premised on the concept that there is no constitutional duty to protect an individual from harm inflicted by private parties or outside forces. This was true even when the state actor had affirmative knowledge of the danger, and his job duties obligated him to assist or protect the victim. "[N]o affirmative duty to protect 'arises from the State's knowledge of the individual's predicament,' ... [or] 'from the State's expressions of intent to help' an individual at risk." <u>Bright</u>, 443 F.3d at 284, <u>quoting</u>, <u>Deshaney</u>, 489 U.S. at 200, 109 S.Ct. at 1005-06.

While the government is not required to protect individuals from harm inflicted by third parties, the government does have a Fourteenth Amendment obligation to protect its citizens from "state created dangers." <u>Sanford v. Stiles</u>, 456 F.3d 298, 304 (3d Cir. 2006). In order to plead a viable state created danger claim, the plaintiff must plead four elements:

(1) the harm ultimately caused was foreseeable and direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of

> persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to the danger than had the state not acted at all.

*Id*. at 304-05 (emphasis added). Plaintiff's complaint fails to satisfy any of these elements, as set forth below.

As to the first prong, Plaintiff must show that "the harm ultimately caused was a foreseeable and a fairly direct result of the state's actions." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 908 (3d Cir. 1997). Taking Plaintiff's allegations as true, the City of Philadelphia could not have foreseen that "allowing employees to bypass security" would have led to Mr. Emanuel stabbing Decedent.

In Morse, the Court held that the defendant "could not have foreseen that allowing construction workers to use an unlocked back entrance for access to the school building would result in the murderous act of a mentally unstable third party, and that the tragic harm which ultimately befell Diane Morse was too attenuated from defendants' actions to support liability." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 908 (3d Cir. 1997).

Like in Morse, Plaintiff here has not alleged that the City of Philadelphia knew or should have known of any "violent tendencies" of Decedent's attacker. Plaintiff did allege that Mr. Emanuel "During his employment…bullied and tormented the Plaintiff with no relief from Defendants." *See* Complaint at ¶ 15. There is no allegation that the City of Philadelphia knew or should have known that Mr. Emanuel bullied or tormented the Decedent, but only that it happened. That is not enough to show Mr. Emanuel's actions were foreseeable to the City of Philadelphia.

The Morse court further found that "While we must accept the allegation that Stovall gained access to the building through the unlocked rear entrance, this does not mean the attack on

Diane Morse occurred as a direct result of defendants allowing the construction crews to prop open the door. The causation, if any, is too attenuated." 132 F.3d at 909.  Here, too, even if Mr. Emanuel did in fact bypass security with a knife, the causation of him bypassing security to stabbing Decedent, is too attenuated.

Plaintiff also fails to satisfy the second prong that the degree of culpability shocks the conscience or that Defendant willfully disregarded Plaintiff's safety.  Rather, Plaintiff has alleged, at most, negligent conduct, which is insufficient to establish a Fourteenth Amendment violation.

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Connock v. Thompson, 563 U.S. 51, 61, 131 S.Ct. 1350, 1360, 179 L. Ed.2d 417 (2011).  The Morse court found that "Defendants could not have been aware of the danger posed by Stovall [who murdered the plaintiff], nor could they have foreseen it.."  Morse, 132 F.3d at 910.  Here, the City of Philadelphia "could not have been aware of the danger posed" by Mr. Emanuel and as a result, Defendant could not have foreseen this incident.  Plaintiff therefore cannot establish a willful disregard for Decedent's safety.

The third prong requires that the plaintiff be a foreseeable victim of harm.  Here, again, Plaintiff cannot satisfy this requirement because Mr. Emanuel's actions were not foreseeable. There are no allegations that the City of Philadelphia knew that Decedent could have been a target or victim of violent acts carried out by Mr. Emanuel.

The final prong requires Plaintiff to show that a "state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to the danger than had the state not acted at all."  Here, again, Morse is instructive:

> "Plaintiff does not allege, nor can he prove, that defendants placed Diane Morse in "a dangerous environment stripped of means to defend [herself]

> and cut off from sources of aid." Johnson, 38 F.3d at 202. Nor does plaintiff allege that defendants placed her in a "unique confrontational encounter" [**45] with Stovall. Cornelius, 880 F.2d at 359. What plaintiff does allege is that defendants, by unlocking the rear entrance of the school building, "increased the risk to Diane Morse . . . and left Diane Morse vulnerable to the actions of her attacker." Complaint ¶ 44. As we have already noted, however, Stovall's deadly attack was not a foreseeable and fairly [*916] direct result of defendants' behavior. Plaintiff, therefore, can prove no set of facts that will demonstrate that defendants placed Diane Morse in harm's way, and consequently has not satisfied the fourth prong of the Kneipp test."

Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 915-16 (3d Cir. 1997).

The City of Philadelphia, similarly, did nothing to place Decedent here in any greater harm. It could not have foreseen the conflict between Mr. Emanuel and Decedent which led to Decedent's death, and there was no affirmative use of authority by the City of Philadelphia which resulted in the tragic death of Decedent.

For the foregoing reasons, Plaintiff has failed to sufficiently allege a state created harm, and Plaintiff's Complaint should be dismissed.

### C. Plaintiffs' State Law Negligence Claims Should be Dismissed.

Under Pennsylvania law, local agencies, such as the City of Philadelphia, are generally immune from suit under the Pennsylvania Political Subdivision Tort Claims Act (PSTCA), 42 Pa. Cons. Stat. Ann. §8541 *et seq.*. The PSTCA mandates, "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa. Cons. Stat. Ann. §8541. Local agencies may only be held liable for damages where the plaintiff can first satisfy her burden to make two preliminary showings. First, that "damages would be recoverable under common law or a statute creating a cause of action if the injury were caused by a person not having immunity under [the PSTCA]." 42 Pa. Cons. Stat. Ann. §8542(a)(1). Second, that "the injury was caused by the negligent acts of the local agency or an employee thereof acting

13

within the scope of his office or duties with respect to one of the categories listed in subsection (b). As used in this paragraph, "negligent acts" shall **not** include acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct. 42 Pa. Cons. Stat. Ann. §8542(a)(2). If a plaintiff can satisfy both of these precursors, she must then demonstrate that her cause of action falls under one of the nine (9) enumerated exceptions to immunity under the PTSCA.

Plaintiff's Complaint demonstrates that she has failed to plead a cause of action that would satisfy the precursors for piercing immunity under the PSTCA.

### IV.  CONCLUSIONS

Plaintiff's Fourteenth Amendment and Section 1983 claims should be dismissed because she has not sufficiently pled a violation of Decedent's constitutional rights, and has not sufficiently pled that any such violation was directly caused by a policy or custom of the City of Philadelphia. Plaintiff's state law negligence claims should be dismissed because she has failed to plead facts that would satisfy the precursors to any immunity exception under the Pennsylvania Political Subdivision Tort Claims Act. For these reasons, all claims against the City of Philadelphia should be dismissed, with prejudice.

WHEREFORE Defendants, City of Philadelphia and Philadelphia International Airport respectfully request that their motion be GRANTED, and that all claims against them be DISMISSED, WITH PREJUDICE.

Respectfully Submitted,

**BENNETT, BRICKLIN & SALTZBURG LLC**

By: */s/ Michele E. Turner*
     Michele E. Turner, Esquire
     Centre Square, West Tower
     1500 Market Street, 32nd Floor

Philadelphia, PA 19102  
(215) 665-3386  
E-mail: mturner@bbs-law.com  
*Attorneys for Defendants,*  
*City of Philadelphia and*  
*Philadelphia International Airport*  
*(improperly sued as a defendant)*

Date:  November 12, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAMARA PRYOR, As Administrator of the ESTATE OF AARON JENKINS | : : : | 2:20-cv-05532 |
| v. | : : | |
| CITY OF PHILADELPHIA and PHILADELPHIA INTERNATIONAL AIRPORT, et al. | : : : | JURY TRIAL DEMANDED |

## ORDER

AND NOW, this _____ day of _____, 2020, upon consideration of Defendants, City of Philadelphia and Philadelphia International Airport (improperly named as a defendant) Motion to Dismiss, and any response thereto, it is hereby ORDERED and DECREED that the Motion to Dismiss is GRANTED. Plaintiff's Complaint is hereby dismissed as to the City of Philadelphia and Philadelphia International Airport, WITH PREJUDICE.

BY THE COURT:

_____
                                   , J.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Defendants, City of Philadelphia and Philadelphia International Airport's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed.R.C.P. 12(b)(6) was served upon all counsel of record via ECF Notification and/or Email and/or Regular Mail on this date.

**BENNETT, BRICKLIN & SALTZBURG LLC**

By: */s/ Michele E. Turner*

Michele E. Turner, Esquire
Centre Square, West Tower
1500 Market Street, 32nd Floor
Philadelphia, PA 19102
(215) 665-3386
E-mail: mturner@bbs-law.com
*Attorneys for Defendants,*
*City of Philadelphia and*
*Philadelphia International Airport*
*(improperly sued as a defendant)*

Date:  November 12, 2020