**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEISHA BROWN, As Administrator of the ESTATE OF AARON JENKINS | : | 2:20-cv-05532 |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA and PHILADELPHIA AIRPORT, et al. | : | JURY TRIAL DEMANDED |
| | : | |

**DEFENDANTS, CITY OF PHILADELPHIA AND
PHILADELPHIA AIRPORT A/K/A PHILADELPHIA INTERNATIONAL AIRPORT'S
(IMPROPERLY SUED AS A DEFENDANT),
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
PURSUANT TO FED. R.C.P. 12(B)(6)**

Defendants, City of Philadelphia and Philadelphia Airport a/k/a Philadelphia International Airport (improperly sued as a defendant)[1] (hereafter "City" or "Moving Defendants"), by and through its attorneys, Bennett, Bricklin & Saltzburg LLC, respectfully move to dismiss Plaintiff's Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of said Motion, Moving Defendants aver as follows:

1.    Plaintiff, Keisha Brown,[2] seeks to recover for the death of her decedent, Aaron Jenkins, who died as a result of a stab wound on May 3, 2018.

2.    According to Plaintiff's Amended Complaint, Decedent was an employee of Defendants Frontier Airlines, Inc. (Frontier) and Worldwide Flight Services (Worldwide) and

---

[1]    The Philadelphia International Airport is merely an asset of the City of Philadelphia and is not subject to suit in its own right. *See* Fullam v. Philadelphia International Airport, 49 F. Supp. 2d. 434 (E.D. Pa. 1999) and Regulbuto v. City of Philadelphia, 937 F. Supp. 394 (E.D. Pa. 1995).

[2]    Plaintiff's original Complaint named Tamara Pryor as the Plaintiff in her capacity as Administrator of the Estate of Aaron Jenkins. Plaintiff's Amended Complaint has substituted Keisha Brown as Plaintiff in her capacity as Administratrix of the Estate of Aaron Jenkins.

worked at the Philadelphia International Airport.  *See* Pl.'s Amended Complaint at ¶ 14 (Exhibit A).

3.      Plaintiff further alleged that on May 3, 2018, Kevin Emmanuel[3] "entered the premises of Terminal A with no metal screening and/or internal screening carrying a knife" and that Emmanuel ultimately stabbed Decedent in the leg, causing his death.  *Id*. at ¶¶ 31 – 33.

4.      Plaintiff seeks to recover from the City for alleged violations of Decedent's 14th Amendment rights under 42 U.S.C.A. §1983, due to Moving Defendants' alleged failure to implement security measures and prevent weapons[4] from being brought to the airport.  *Id*. at Count I and ¶ 40.

5.      Plaintiff's §1983 claims should be dismissed because she has failed to satisfy the elements of the state-created danger theory of liability, and, therefore, has not pled a violation of Decedent's constitutional rights at all.

6.      Furthermore, even if Plaintiff had pled a violation of her constitutional rights, she has not adequately pled that the alleged violation was directly caused by an unconstitutional policy or custom of the City of Philadelphia, which is necessary to impose §1983 liability on the City under Monell.  Monell v. Dept. of Soc. Srvcs. of City of N.Y., 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36 (1978).

7.      Plaintiff's claim for punitive damages against Moving Defendants should also be dismissed because such damages are not recoverable under §1983 pursuant to the United States

---

3       Mr. Emanuel was not an employee of the City of Philadelphia.
4       The Transportation Security Administration, created by the *Aviation and Transportation Security Act, Public Law 107-71*, 107th Congress, signed into law on November 19, 2001, is tasked with developing and implementing policies to ensure the safety of the nation's transportation systems. Its responsibilities include, but are not limited to, enforcing security-related regulations, approving measures for the detection of prohibited weapons, and vetting persons who require unescorted access to the secured areas of airports.

Supreme Court's holding in <u>City of Newport v. Fact Concerts, Inc</u>., 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981).  Pl.'s Amended Complaint at Count I *Ad Damnum* Clause subpart a.

8.      For these reasons, and those more fully set out in the attached brief, all of Plaintiff's claims should be dismissed in their entirety, with prejudice.

WHEREFORE, Defendants, City of Philadelphia and Philadelphia Airport a/k/a Philadelphia International Airport respectfully request that their motion be GRANTED, and that all claims against them be DISMISSED, WITH PREJUDICE.

**BENNETT, BRICKLIN & SALTZBURG LLC**

By:

*/s/ Michele E. Turner*
_____

Michele E. Turner, Esquire
Centre Square, West Tower
1500 Market Street, 32nd Floor
Philadelphia, PA 19102
(215) 665-3386
E-mail: mturner@bbs-law.com
*Attorneys for Defendants,*
*City of Philadelphia and*
*Philadelphia Airport a/k/a*
*Philadelphia International Airport*
*(improperly sued as a defendant)*

Date:   December 10, 2020

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEISHA BROWN, As Administrator of the<br>ESTATE OF AARON JENKINS | : | 2:20-cv-05532 |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA and<br>PHILADELPHIA AIRPORT, et al. | : | JURY TRIAL DEMANDED |
| | : | |

**DEFENDANTS, CITY OF PHILADELPHIA AND
PHILADELPHIA AIRPORT'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R.C.P. 12(B)(6)**

Defendants, City of Philadelphia and Philadelphia Airport a/k/a Philadelphia International Airport (improperly sued as a defendant) (hereafter "City" or "Moving Defendants"), by and through their attorneys, Bennett, Bricklin & Saltzburg LLC, hereby move to dismiss Plaintiff's Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), and submit the following Brief in Support of their Motion:

**I.      SUMMARY OF ARGUMENT**

Plaintiff Keisha Brown, as Administratrix of the Estate of Aaron Jenkins, seeks to recover for the death of Aaron Jenkins (Decedent) due to a stab wound to his leg inflicted by coworker Kevin Emanuel on May 3, 2018.

Plaintiff alleges in her Complaint that Decedent was "an employee of [Defendant] Frontier and [Defendant], Worldwide Flight Services during his employment at [Philadelphia International Airport] in the City of Philadelphia." *See* Pl.'s Amended Complaint at ¶ 14 (Exhibit A).

Plaintiff seeks to recover from the City for alleged violations of Decedent's 14th Amendment rights due to Defendants' alleged failure to implement security measures and prevent prohibited weapons from being brought into the airport. *Id*. at Count I and ¶ 26.

Plaintiff's §1983 claims should be dismissed because she has failed to satisfy the elements of the state-created danger theory of liability, and, therefore, has not pled a violation of Decedent's constitutional rights at all.  Plaintiff's claim for punitive damages against Moving Defendants should also be dismissed because such damages are not recoverable pursuant to §1983 jurisprudence.

## II.   <u>RELEVANT FACTS</u>

According to Plaintiff's Amended Complaint, Decedent was an employee of Frontier and Worldwide and was working at the Philadelphia International Airport when the incident giving rise to the Amended Complaint occurred.  *See* Pl.'s Amended Complaint at ¶ 14 (Exhibit A). Plaintiff alleges that it was "Due to Defendants' custom, airport employees bypassed security, and lack thereof, and were permitted to enter the airport and terminals with prohibited weapons."  *Id.* at ¶ 26.  However, the Amended Complaint sets forth no additional facts regarding the custom, such as the scope and application of the custom, when and by whom the custom was authorized, or whether the City of Philadelphia even knew about the purported custom.

Plaintiff further alleges that Moving Defendants' "Rules and Regulations Manual, published under the authority contained in Sections 4-500(c) and 8-407 of the Philadelphia Home Rule Charter" provided that no persons (with exceptions not relevant here) shall possess "firearms and/or other weapons."  *Id.* at ¶¶ 16-17.

Plaintiff also alleges that "Upon information and belief, [Moving Defendants] removed the additional security from the employee access areas…"  *Id.* at ¶ 24.  Plaintiff finally alleges that "Emmanuel entered the premises of Terminal A with no metal screening and/or internal screening carrying a knife…" and that plaintiff's decedent was "ultimately stabbed in his leg causing his death."  *Id.* at ¶¶ 31-33.

In Count I of the Complaint Plaintiff alleges, *inter alia*, that Moving Defendants violated Decedent's 14th Amendment "due process right to bodily integrity" and that "allowing individuals to enter Terminal E5 without any medical detectors or private screening is contrary to the rules and regulations of the Airport, City of Philadelphia and Federal Aviation Administration." *Id*. at ¶¶ 38, 42.  Plaintiff thus alleges that Moving Defendants' "actions constitute a 'state-created danger.'" *Id*. at ¶ 46.

## III.   ARGUMENT

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for the dismissal of a claim for the "failure to state a claim for which relief can be granted" through a pre-pleading motion. Fed. R. Civ. Pro. 12(b)(6).  To survive a motion to dismiss, a complaint must allege facts that adequately set forth each of the essential elements of a cause of action.  Nami v. Fauver, 82 F.3d 63, 65 (3rd Cir. 1996).  Although the Court must accept all well-pleaded factual allegations contained in the complaint, it need not credit bare allegations, conclusory assertions or unwarranted factual inferences.  Maio v. Aetna, Inc., 221 F.3d 472, 485 n.12 (3d Cir. 2000); Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997); Kost v. Kozakiewwicz, 1 F.3d 176, 183 (3d Cir. 1993); Perry v. Grant, 775 F.Supp. 821 (M.D. Pa. 1991).  Bald assertions and conclusions of law will similarly not survive a motion to dismiss.  Gardiner v. Mercyhurst College, 942 F.Supp. 1050, 1052 (M.D. Pa. 1995).  In short, the complaint's "[f]actual allegations **must be enough to raise a right to relief above the speculative level**...on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (U.S. 2007) (emphasis added, citations omitted).

---

5      Plaintiff's Amended Complaint references Terminal E in other paragraphs.

"Where a complaint pleads fact that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), quoting, Twombly, 550 U.S. at 557, 127 S.Ct. at 1955.

 **B.**  **Plaintiff's 14th Amendment and Section 1983 Claims Should be Dismissed for Failing to Plead (a) the Existence of a Policy or Custom that Directly Caused (b) a Violation of Decedent's Constitutional Rights.**

 Section 1983 provides a private cause of action to citizens for deprivations of their constitutional rights by a person acting under the color of state law.  42 U.S.C.A. §1983.  "By itself, Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal law." Morse v. Lower Merion School Dist., 132 F.3d 902, 906-07 (3d Cir. 1997), citing, Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689 (1979).  "In order to state a claim, plaintiff must show that the defendants, acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States." Id., citing, Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908 (1981).

 A municipality that employs a state actor may only be held liable for §1983 violations under certain limited circumstances.  Monell v. Dept. of Soc. Srvcs. of City of N.Y., 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36 (1978).  "[A] municipality cannot be held liable *solely* because it employs a tortfeasor - or, in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory." Id. at 691, 98 S.Ct. at 2036.  A municipality may only be held liable when the unconstitutional conduct by the state-actor "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." Id. at 690, 98 S.Ct. at 2035-36.

Thus, a <u>Monell</u> claim is only viable when the municipality maintains an unconstitutional policy or custom that directly caused the violation of plaintiffs' civil rights.

"[P]roper analysis requires [the court] to separate two different issues when a §1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." <u>Collins v. City of Harker Heights, Texas</u>, 503 U.S. 115, 120, 112 S.Ct. 1061, 1066 (1992) (citations omitted). "Thus, [the] first inquiry in any case alleging municipal liability under §1983 is the question of whether **there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.**" <u>Id.</u> at 123, 112 S.Ct. at 1067 (citations omitted, emphasis added). In this case, Plaintiff's §1983 claims against the City of Philadelphia should be dismissed both because Plaintiff has failed to plead a violation of Decedent's constitutional rights, and because she has failed to satisfy the elements of a state-created danger theory of liability.

> *1.*  ***Plaintiff Has Not Sufficiently Pled the Presence of a Policy or Custom that Directly Caused Decedent's Constitutional Harm.***

Plaintiff cannot proceed with her §1983 claim against the City of Philadelphia unless she pleads that the alleged constitutional harm was directly caused by a policy or custom of the City of Philadelphia. "Policy is made when a 'decision maker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict.'" <u>Andrews v. City of Philadelphia</u>, 895 F.2d 1469, 1480 (3d Cir. 1990), <u>quoting</u>, <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299 (1986). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials are so permanent and well settled' as to virtually constitute law." <u>Id.</u>, <u>quoting</u>, <u>Monell</u>, 436 U.S. at 690, 98 S.Ct. at 2035. Regardless of whether a plaintiff pursues the claim on custom or policy grounds,

"it is incumbent upon a plaintiff to show that a **policymaker** is responsible either for the policy, or through acquiescence, for the custom." Id. (emphasis added).

In order to pass muster under Iqbal and Twombly, *supra*, the plaintiffs' complaint "must identify a custom or policy, and specify what exactly that custom or policy was." McTernan v. City of York, Pa., 564 F.3d 636, 658 (3d Cir. 2009) (citations omitted). The plaintiff must further plead involvement by a municipal decision-maker in the implementation of that policy. Id. at 658-59. Courts of the Eastern District have previously dismissed §1983 Monell claims based on boilerplate allegations similarly undetailed than those at issue in this case.

For example, in Mirra v. Fynes, No. 13-CV-1677, 2014 WL 716692 (E.D. Pa. Feb. 25, 2014), the allegations were as follows:

> Plaintiff alleges that Darby Township and its police department "as a matter of policy and practice failed to discipline, train, supervise or otherwise sanction police officers who violate the rights of citizens, including the plaintiff's, thus encouraging defendants Detective Lundell and Officer Fynes in this case to engage in the unlawful and actionable conduct described...." Dkt. No. 1. at ¶ 37. He also alleges that the Township and its police department, "as a further matter of policy and practice failed to train properly its police officers, including defendants, Detective Lundell and Fynes in this case, with respect to the constitutional, statutory and departmental limits of their authority." Id. ¶ 38. Finally, plaintiff alleges that the Township and its police department "were on actual notice of a need to train, supervise, discipline or terminate its defendant officers prior to the incident in question as other similar incidents have occurred in the past involving defendants Detective Lundell and Officer Fynes." *Id*. at ¶ 40.

Id. at *6. Dismissing the Monell claim, Judge O'Neill concluded that "plaintiff's complaint provides no factual details regarding the existence, scope or application of the alleged policy, practice, procedure or custom that is essential to his claim. Plaintiff's allegations amount to mere conclusory statements and a recitation of the elements required to bring forth a Monell claim, and are thus insufficient." Id. at *6. The plaintiff in Mirra then sought to supplement the pleading by adding the allegation that, "the Township was on notice of its need to provide training 'as a result

of prior civil lawsuits, internal affairs complaints, and complaints from the general community.'" Id. Judge O'Neill found, however, that this allegation was also "merely conclusory and insufficient under *Twombly*." Id.

Additionally, a plaintiff must show that the "official policy and/or custom causes an employee to violated another person's constitutional rights." Estate of Massey v. City of Phila., 118 F. Supp. 3d 679, 696 (E.D. Pa. 2015). Thus, a plaintiff must establish a "plausible nexus or affirmative link between the municipality's custom or policy and the constitutional deprivation challenged." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.1990).

Here, at the outset, Plaintiff has failed to sufficiently plead a custom or policy. Plaintiff alleged in her Amended Complaint that:

> "[Defendant's custom in allowing individuals to enter Terminal E without any medical [sic] detectors or private screening is contrary to the rules and regulations of the Airport, City of Philadelphia, and Federal Aviation Administration."

Pl.'s Amended Complaint at ¶ 42.

Nowhere in Plaintiff's Amended Complaint is there any allegation of "involvement by a municipal decision-maker in the implementation of that policy." McTernan, supra. There is no allegation that the City of Philadelphia, as a governmental unit or municipality, enacted a policy or custom of any kind other than the generic allegation that it "removed" security measures. There are no allegations as to when such security measures were removed, or who made the decision to remove them. There are no allegations as to who was allowed to enter the airport as a result of purported policy or custom, or when, other than the conclusory statement that "it was custom employees of Frontier and WFS to enter Philadelphia International Airport, as well as gate access via the terminals with weapons." Pl.'s Amended Complaint at ¶ 19.

7

Importantly, there are no allegations in the Complaint that the City of Philadelphia actually knew that as a result of the purported policy or custom, weapons were being brought into the airport.  The Amended Complaint merely alleges that Moving Defendants were "aware [] of the risk of weapons within the airport by individuals not being screened…" Pl.'s Amended Complaint at ¶¶ 47-48.  This conclusory allegation is not enough to satisfy the standard set forth under Twombly and Iqbal.

Further, even assuming arguendo that Plaintiff did sufficiently plead a policy or custom, Plaintiff has still failed to sufficiently plead that the policy or custom "caused an employee to violate" Decedent's constitutional rights.  Massey, supra.  According to Plaintiff, "employee Kevin Emanuel" stabbed Decedent, resulting in his death.  Even taking as true Plaintiff's allegation that Kevin Emanuel was an employee of the City of Philadelphia (which he was not), the alleged policy or custom (allowing workers to bypass security with prohibited weapons) in no way "caused" Mr. Emanuel to attack Decedent.  Nor is there any "plausible nexus" or "affirmative link" between the City of Philadelphia's alleged policy or custom, and Kevin Emanuel's criminal decision to stab a coworker.

Plaintiff also appears to have included a Monell claim for failure to train and supervise in her Amended Complaint.  Specifically, she alleged that Moving Defendants chose not to train or supervise "their employees and/or agents including Frontier, regarding policies for screening for weapons or acquiesced in a longstanding practice or custom of inaction in this regard."  Amended Complaint at ¶¶ 47-48.

In order to pursue a Monell claim for failure to train and/or supervise, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact'." City of Canton v.

Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)).  Further, "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51, 62, 131 S. Ct. 1350, 1360 (2011).  This requires a showing that actual municipal policy makers "are on actual or constructive notice that a particular omission in their ... program causes city employees to violate a citizens' constitutional rights…"  Id.

Plaintiff's claim for a failure to train or supervise under Monell fails because there are no allegations supporting her claims other than the conclusory allegations contained in paragraphs 47 and 48.  There are no allegations in the Amended Complaint that there was a "pattern of similar constitutional violations by untrained employees." Connick, supra.  There are no allegations in the Amended Complaint concerning the scope or application of the training or supervision.  Nor are there any allegations establishing that the City of Philadelphia had actual or constructive notice that a "particular omission" in its training or supervision causes its employees to violate constitutional rights.  Id.

Importantly, there are no allegations that the City of Philadelphia was "deliberately indifferent" to Decedent's constitutional rights by or through its alleged failure to train or supervise.  According to the Amended Complaint, Moving Defendants allegedly allowed airline employees to enter the airport without passing through security.  This can hardly be said to be deliberate indifference under any definition of the term or well-established case law relative to same.

### 2. *Plaintiff Has Failed to Allege a Violation of Decedent's Constitutional Rights*

Even if Plaintiff had sufficiently pled an actionable policy or custom, her claims should still be dismissed because she has not pled a violation of Decedent's constitutional rights.  In

particular, she has failed to plead sufficient facts that would support her 14th Amendment "state

created danger" theory of liability.

As a general matter, the 14th Amendment imposes no obligation on the government to

protect citizens against harm visited upon them by private actors or outside forces.  DeShaney v.

Winnebago Cty. Dept. of Soc. Services, 489 U.S. 189, 196, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249

(1989).  As the United States Supreme Court has explained:

> [N]othing in the language of the Due Process clause itself requires the State to
> protect the life, liberty, and property of its citizens against invasion by private
> actors.  The Clause is phrased as a limitation on the State's power to act, not as a
> guarantee of certain minimal levels of safety and security.  It **forbids the State**
> **itself** to deprive individuals of life, liberty, or property "without due process of
> law," but its language **cannot fairly be extended to impose an affirmative**
> **obligation on the State to ensure that those interests do not come to harm**
> **through other means**.   ...Its purpose was to protect the people from the State, **not**
> **to ensure that the State protected them from each other**.

Id. at 195-96, 109 S.Ct. at 1003 (emphasis added).  "As a general matter, then…a State's failure

to protect an individual against private violence simply does not constitute a violation of the Due

Process Clause."  Id. at 197, 109 S.Ct. at 1004 (emphasis added).

For example, in DeShaney, *supra*, a four year old child was so severely beaten by his father

(and sole caregiver) as to leave him mentally impaired for the rest of his life.  Prior to the beating,

the local department of social services had been repeatedly advised by doctors of suspicions of

child abuse by the father, once obtained a temporary order placing the child in foster care on

suspicion of child abuse, and assigned a case worker to the child who made monthly visits to the

child's home, recording suspicions of child abuse, but taking no further action.  489 U.S. at 192-

93, 109 S.Ct. at 1001-02.  On the caseworker's last two visits to the home, shortly after the child

had been hospitalized under suspicion of child abuse, the father - whom she suspected of abuse -

told her that the child was too ill to be seen.  Id.  Still, she took no action.  Id.  After the severe

beating, the child's mother filed a §1983 claim against the department of social services for failing to act, as was its obligation, notwithstanding its knowledge of abuse. The Supreme Court dismissed the claim because the state "had no constitutional duty to protect" the child from harm inflicted by a private individual. Id. at 201, 109 S.Ct. at 1006.

Following DeShaney, the Supreme Court in Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120, 112 S.Ct. 1061, 1066 (1992), found no constitutional obligation to provide a safe work environment when a city sent a sanitation worker into an unventilated sewer pipe, causing his death. In Morse v. Lower Merion School Dist., 132 F.3d 902, 906-07 (3d Cir. 1997), the Third Circuit found no constitutional violation in failing to provide a safe work environment when a school teacher was shot in her classroom by a psychiatric patient who obtained access to the building when the school knowingly failed to secure the back doors as required by its own policies. In D.R. v. Middle Bucks Area Vo. Tech. School, 972 F.2d 1364 (3d Cir. 1992) (*en banc*), the Third Circuit *en banc* found no constitutional duty to protect school students who were repeatedly raped by other students *during class* over a period of months under circumstances in which the school knew or should have known of the conduct, yet took no action to stop it. In Bright v. Westmoreland Cty, 443 F.3d 276 (3d Cir. 2006), the Third Circuit found no constitutional violation when a police officer and parole board delayed more than ten weeks in arresting a convicted child molester who violated his parole requirements by continually contacting his twelve year old former victim in an attempt to maintain a relationship with her. Due to the state's inaction, the parolee was able to murder the victim's eight year old sister.

In all of these cases, the decisions were premised on the concept that there is no constitutional duty to protect an individual from harm inflicted by private parties or outside forces. This was true even when the state actor had affirmative knowledge of the danger, and his job duties

obligated him to assist or protect the victim.  "[N]o affirmative duty to protect 'arises from the State's knowledge of the individual's predicament,' ... [or] 'from the State's expressions of intent to help' an individual at risk."  <u>Bright</u>, 443 F.3d at 284, <u>quoting</u>, <u>Deshaney</u>, 489 U.S. at 200, 109 S.Ct. at 1005-06.

While the government is not required to protect individuals from harm inflicted by third parties, the government does have a 14th Amendment obligation to protect its citizens from "state created dangers."  <u>Sanford v. Stiles</u>, 456 F.3d 298, 304 (3d Cir. 2006).  In order to plead a viable state created danger claim, the plaintiff must plead four elements:

(1) the harm ultimately caused was foreseeable and direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to the danger than had the state not acted at all.

<u>Id</u>. at 304-05 (emphasis added).

While Plaintiff's Amended Complaint fails to satisfy any of these elements, Moving Defendants will focus on the fourth and final prong.  Here, <u>Morse</u> is instructive:

"Plaintiff does not allege, nor can he prove, that defendants placed Diane Morse in "a dangerous environment stripped of means to defend [herself] and cut off from sources of aid." <u>Johnson</u>, 38 F.3d at 202. Nor does plaintiff allege that defendants placed her in a "unique confrontational encounter" [**45] with Stovall. <u>Cornelius</u>, 880 F.2d at 359. What plaintiff does allege is that defendants, by unlocking the rear entrance of the school building, "increased the risk to Diane Morse . . . and left Diane Morse vulnerable to the actions of her attacker." Complaint ¶ 44. As we have already noted, however, Stovall's deadly attack was not a foreseeable and fairly [*916] direct result of defendants' behavior. Plaintiff, therefore, can prove no set of

> facts that will demonstrate that defendants placed Diane Morse in harm's way, and consequently has not satisfied the fourth prong of the Kneipp test."

Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 915-16 (3d Cir. 1997).

Plaintiff's Amended Complaint sets forth no allegations, nor can she, that the City of Philadelphia in removing security measures, placed Decedent in a position of greater danger than had it not acted all. That is because Moving Defendants did not create the danger. Nor did it cause Mr. Emanuel to attack the Decedent, or even to bring the weapon to the airport. Like in Morse, the City of Philadelphia did not place Decedent in a "unique confrontational encounter" or prevent Decedent a means of defending himself. At most, Plaintiff can merely allege that by removing security, it failed to prevent an attack with a weapn by a private individual. This is not a state created danger and thus there is no violation of the 14th Amendment by the City of Philadelphia.

For the foregoing reasons, Plaintiff has failed to sufficiently allege a state created harm, and Plaintiff's Amended Complaint should be dismissed.

## C.   **Plaintiff's Claims for Punitive Damages Should be Stricken.**

*Assuming arguendo* that Plaintiff's Amended Complaint is not dismissed in its entirety, Plaintiff's claims for punitive damages appearing in the *ad damnum* clause of her Amended Complaint should be stricken. *See* Amended Complaint at Count I *ad damnum* clause, subpart a.

The United States Supreme Court has held that punitive damages are not recoverable against a municipality under §1983. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983"). Thus, even if plaintiff had plead a viable claim against the City of Philadelphia, her claims for punitive damages must be dismissed.

## IV.    **CONCLUSION**

Plaintiff's claims under §1983 for violations of the 14th Amendment should be dismissed because she has not sufficiently pled a violation of Decedent's constitutional rights, and has not sufficiently pled that any such violation was directly caused by a policy or custom of the City of Philadelphia.   Plaintiff's claims for punitive damages should also be dismissed because such claims are barred under §1983 jurisprudence.   For these reasons, all claims against Moving Defendants should be dismissed, with prejudice.

WHEREFORE Defendants, City of Philadelphia and Philadelphia Airport a/k/a Philadelphia International Airport respectfully request that their motion be GRANTED, and that all claims against them be DISMISSED, WITH PREJUDICE.

Respectfully Submitted,

**BENNETT, BRICKLIN & SALTZBURG LLC**

By:    */s/ Michele E. Turner*
_____
Michele E. Turner, Esquire
Centre Square, West Tower
1500 Market Street, 32nd Floor
Philadelphia, PA 19102
(215) 665-3386
E-mail: mturner@bbs-law.com
*Attorneys for Defendants,*
*City of Philadelphia and*
*Philadelphia Airport a/k/a*
*Philadelphia International Airport*
*(improperly sued as a defendant)*

Date:  December 10, 2020

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEISHA BROWN, As Administrator of the<br>ESTATE OF AARON JENKINS | : | 2:20-cv-05532 |
| | : | |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA and<br>PHILADELPHIA AIRPORT, et al. | : | JURY TRIAL DEMANDED |
| | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2020, upon consideration of Defendants,

City of Philadelphia and Philadelphia Airport a/k/a Philadelphia International Airport (improperly

named as a defendant) Motion to Dismiss Plaintiff's Amended Complaint, and any response

thereto, it is hereby ORDERED and DECREED that the Motion to Dismiss is GRANTED.

Plaintiff's Amended Complaint is hereby dismissed as to the City of Philadelphia and Philadelphia

Airport a/k/a Philadelphia International Airport, WITH PREJUDICE.


BY THE COURT:


_____
                                                                , J.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing Defendants, City of Philadelphia and

Philadelphia Airport a/k/a Philadelphia International Airport's Motion to Dismiss Plaintiff's

Amended Complaint Pursuant to Fed.R.C.P. 12(b)(6) was served upon all counsel of record via

ECF Notification and/or Email and/or Regular Mail on this date.

**BENNETT, BRICKLIN & SALTZBURG LLC**

By: */s/ Michele E. Turner*
_____

Michele E. Turner, Esquire
Centre Square, West Tower
1500 Market Street, 32nd Floor
Philadelphia, PA 19102
(215) 665-3386
E-mail: mturner@bbs-law.com
*Attorneys for Defendants,*
*City of Philadelphia and*
*Philadelphia Airport a/k/a*
*Philadelphia International Airport*
*(improperly sued as a defendant)*

Date:  December 10, 2020

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **KEISHA BROWN, As Administratix**<br>**of the Estate of Aaron Jenkins**<br>*Plaintiff*,<br>v. | : <br> : <br> : <br> : <br> : | **Case No. 2:20-cv-05532-CMR**<br><br>JURY TRIAL DEMANDED |

**KEISHA BROWN, As Administratix**
**of the Estate of Aaron Jenkins**
    *Plaintiff*,
  v.

**CITY OF PHILADELPHIA**
1515 Arch Street, 14th Floor
 Philadelphia, PA 19102
    and

**PHILADELPHIA AIRPORT**
a/k/a Philadelphia International Airport
800 Essington Avenue
Philadelphia, PA 19153
and

**Worldwide Flight Services, Inc**.
Room361 – B151, E. Hangar Road
Cargo Area A, JFK International Airport
Jamaica, NY 11430

and

**Frontier Airlines**
4545 Airport Way
Denver, CO 80239
    *Defendant*.

**Case No. 2:20-cv-05532-CMR**

JURY TRIAL DEMANDED

## AMENDED COMPLAINT

Plaintiff, Keisha Brown as the Administratrix of the Estate of Aaron Jenkins, a decedent

by and through her attorneys, Mu'min F. Islam and Brittany Gardner, alleges as follows:

### PARTIES

1. Keisha Brown ("Plaintiff") is the Administrator of the Estate of Aaron Jenkins, with a

   residence of 1923 W. Sparks Street, Philadelphia, PA 19141.

2. Defendant, City of Philadelphia ("City"), having its principal place of business at 1515

   Arch Street, 14th Floor, Philadelphia, PA 19102.

1

3. Defendant, Philadelphia Airport, a/k/a Philadelphia International Airport, ("PHL") is the primary airport serving Philadelphia, which is owned by the City of Philadelphia.  Having its principal place of business at  800 Essington Avenue, Philadelphia, PA 19153.

4. Defendant, Worldwide Flight Services, ("WFS") is a ground handling organization providing cargo, passenger, premium, ramp, baggage, and technical services across a network spanning over 179 locations in more than 22 countries on five continents.  Having its principal place of business at Room361 – B151, E. Hangar Road, Cargo Area A, JFK International Airport, Jamaica, NY 11430.

5. Defendant, Frontier Airlines, Inc., ("Frontier") is an American carrier headquartered in Denver, Colorado having its principal place of business at 4545 Airport Way, Denver, CO 80239.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331, as Plaintiff's claims arise under the Fourteenth Amendment to the United States Constitution and U.S.C. §1983.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants can be found in, reside, or transact business in this District.

8. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because the event sor omissions giving rise to the claim occurred in this District.

## MATERIAL FACTS

9. On September 28, 2018 Plaintiff was duly qualified as Administrator of the Estate of Aaron Jenkins.

10. Aaron Jenkins ("Decedent") was pronounced dead on May 3, 2018 at Presbyterian Hospital from a stabing.

11. Decedent was a 28-year-old resident of Philadelphia County, residing at 126 West Roselyn Street, Philadelphia, PA 19120.

12. Plaintiff brings this suit as Administrator of the Estate of Aaron Jenkins, as personal representative of Aaron Jenkins.

13. At all times relevant to this cause of action, WFS, Frontier, PHL, and City (collectively referred to as "Defendants"), engaged in business within the Commonwealth of Pennsylvania and the City and County of Philadelphia on a regular, systematic, continuous and substantial basis controlling the operations of the airport.

14. At all times relevant to this cause of action, Plaintiff was an employee of WFS during his employment at PHL in the City of Philadelphia.

15. The City and PHL are responsible for operation and control of the Philadelphia International Airport including but not limited to, issuance of policies, rules and regulations, implementation of security measures and compliance with all federal and local rules.

16. Defendant's Philadelphia International Airport's Rules and Regulations Manual, published under the authority contained in Sections 4-500(c) and 8-407 of the Philadelphia Home Rule Charter, empowers the City of Philadelphia's Department of Commerce to make regulations governing the use and control of the Airport.

17. Since December 2016, the City's Department of Commerce Division of Aviation Rules and Regulations for the airport set forth a prohibition for any person "except duly

authorized, active, police officer, federal employees" from possessing firearms and/or other weapons.

18. In support of this prohibition, the City and PHL had a duty to maintain appropriate policies and procedures to ensure compliance with the prohibition of weapons on the airport's property.

19. Upon information and/or belief, during Plaintiff's employment with WFS, it was custom employees of Frontier and WFS to enter Philadelphia International Airport, as well as gate access via the terminals with weapons.

20. In fact, it was widely known amongst WFS' employees and management, that overnight workers would specifically bring weapons to the facility for their travel to and from work.

21. The City and PHL were responsible for managing, coordinating and positioning Transportation Security Administration's ("TSA") officers at appropriate entry points of PHL's terminals.

22. Frontier and WFS' employees and management were aware the City and PHL did not have TSA screening as mandated behind the employee entrances of Terminal E leading to gate access.

23. In addition to TSA, within Terminal E there was the employment of private security to ensure compliance with the weapon prohibition of airport employees.

24. Upon information and belief, defendants City and PHL removed the additional security from the employee access areas of Terminal E.

25. As a result of the custom of allowing individuals into the tarmac and other areas behind Terminal E and the removal of the private security, Plaintiff was exposed to unknown dangers created by the government actors as a violation of the Fourteenth Amendment.

4

26. Due to Defendants' custom, airport employees bypassed security, and lack thereof, and were permitted to enter the airport and terminals with prohibited weapons.

27. During his employment, employee Kevin Emanuel ("Emanuel") bullied and tormented the Plaintiff with no relief from Defendants.

28. Upon information and/or belief Emanuel had a personal relationship with the human resources manager.

29. As a result of this relationship, previous complaints by Plaintiff and other employees regarding workplace violence were ignored.

30. In fact, there was at least one complaint of a knife being brandished in the breakroom for which WFS management failed to address.

31. On May 3, 2018, consistent with the known custom, Emmanuel entered the premises of Terminal A with no metal screening and/or internal screening carrying a knife approximately 5 – 10 inches long.

32. During his lunch break, he engaged in an argument with Decedent while Decedent was napping during his scheduled break.

33. Based upon their pre-existing history, Decedent attempted to defend himself from Emmanuel and was ultimately stabbed in his leg causing his death.

## COUNT I
### CIVIL RIGHTS
**Keisha Brown, as Administrator of The Estate of Aaron Jenkins v. City of Philadelphia and Philadelphia International Airport**

34. The foregoing paragraphs are incorporated herein by reference.

35. Defendant City of Philadelphia is a Municipality that is subject to suit pursuant to 41 U.S.C. §1983.

5

36. Defendant Philadelphia International Airport is a municipal entity that is subject to 41 U.S.C. §1983.

37. Defendants Philadelphia International Airport and City of Philadelphia's constitutional torts are not governed or limited in any way by 41 Pa. C.S.§8541, *et seq.* or 42 Pa. C.S. §8521, *et seq.*

38. Defendants City of Philadelphia and Philadelphia International Airport violated Decedent's due process right to bodily integrity, which is secured by the Fourteenth Amendment to the Constitution of the United States.

39. At all times material hereto, defendants City of Philadelphia and the Philadelphia International Airport acted under color of state law.

40. The specific harm to which defendants City of Philadelphia and the Philadelphia International Airport exposed Decedent to was foreseeable and direct in that they were aware allowing employees within the Terminal with weapons would result in harm including but not limited to death via stabbings.

41. PHL's willful decision to remove private security and TSA security from Terminal E creates a degree of culpability that shocks the conscience in allowing individuals to have private access to Terminal E without proper security measures, including metal detector screening.

42. PHL's custom in allowing individuals to enter Terminal E without any medical detectors or private screening is contrary to the rules and regulations of the Airport, City of Philadelphia and Federal Aviation Administration.

43. The Decedent as an employee of Frontier and WFS was a member of a discrete class of person subjected to the potential harm brough about by the Defendants City and PHL.

44. As a member of this class, Decedent held a special relationship with the City of Philadelphia and the Philadelphia International Airport as he was an employee that used the employee access of Terminal E.

45. PHL affirmatively removed TSA and/or private screening measures for employees within Terminal E in a way that created a danger to Decedent.

46. PHL and the City of Philadelphia's actions constitute a "state-created danger," rendering them liable to Plaintiff for violation of Decedent's civil rights.

47. Despite their awareness of the risk of weapons within the airport by individuals not being screened, policymakers within the City of Philadelphia and the Philadelphia International Airport, deliberately chose not to train their employees and/or agents including Frontier, regarding policies for screening for weapons or acquiesced in a longstanding practice or custom of inaction in this regard.

48. Despite their awareness of the risk of weapons being brought onto the airport without metal detector screening, policy makers within Defendant City of Philadelphia and Philadelphia International Airport deliberately chose not to supervise their employees and/or agents including Frontier regarding policies for screening of weapons or acquiesced in a longstanding practice or custom of inaction in this regard.

49. The Constitutional rights violated by defendants City of Philadelphia and the Philadelphia International Airport consisted of liberty, privacy, and bodily integrity.

50. Defendants City of Philadelphia and the Philadelphia International Airport acted intentionally or with deliberate indifference to the rights of Decedent.

51. As a direct result of the actions of defendants as set forth above, Decedent was caused to suffer the injuries set forth in paragraph 30.

*WHEREFORE*, Plaintiff prays this Honorable Court to enter judgment in his favor, and against the Defendants, and award the following relief:

a.    Actual, special, compensatory, incidental, consequential, and punitive damages in an amount to be determined at trial;

b.    Cost of suit in an amount to be determined at trial; and,

c.    Such additional or further relief as the interest of justice may require

## COUNT II
### Negligence - Premises Liability
### Keisha Brown, as Administrator of The Estate of Aaron Jenkins v. Worldwide Flight Services and Frontier Airlines

52. The foregoing paragraphs are incorporated herein by reference.

53. PHL entered Into an use and lease agreement with Frontier for the use of lease space within Terminal E of the airport on/or about November 30, 2015.

54. Within the lease agreement for the premises at Terminal E, Frontier was obligated to exercise reasonable control over the conduct, demeanor and appearance of its employees, agents and representatives, contractors, suppliers, vendors, service providers and officers in an orderly and proper manner so as not to harass, irritate, disturb or be offensive to the public and at all times act in accordance with the Rules and Regulations and Airport Security Program.

55. WFS entered Into an agreement with Frontier, service as the baggage handler and other services for Frontier on/or about May 2018 for Terminal E.

56.  Decedent was an employee of WFS.

57. Under personal animus or third-party attack exception to Workers' Compensation Act's exclusivity provision, the exclusivity provision does not preclude damage recoveries by

8

employee based upon employer negligence in maintaining safe workplace if such negligence is associated with injuries inflicted by coworker for purely personal reasons. 77 P.S. §§ 411(1), 481.

58. Decedent was attacked during his lunch break while an argument ensued with someone for whom he has had previous negative encounters which had nothing to do with his employment.

59. Based upon their pre-existing relationship along with Emanuel's possession of a knife, Decedent was stabbed In his leg solely because of the two parties argument.

60. A Showing of personal animus is not strictly required to implicate personal animus or third party attack exception to Workers' Compensation Act's exclusivity provision; rather, what is required is a showing that a victim was attacked for purely personal reasons unrelated to employment. 77 P.S. §§ 411(1), 481.

61. As an employee of WFS, Decedent was also a business visitor of Frontier while on the premises of Terminal E.

62. A "business visitor" is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land.

63. The duty of care owed to a business invitee or business visitor is the highest duty owed to any entrant upon land; the landowner must protect the invitee not only against known dangers, but also against those which might be discovered with reasonable care.

64. A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he: (1) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, (2) should expect that they will not discover or realize the danger,

or will fail to protect themselves against it, and (3) fails to exercise reasonable care to protect them against the danger.

65. Based on Defendants' conduct, they failed to ensure Jenkins' safety at his place of employment by; (1) failing to ensure there were security checkpoints for visitors at PHL; (2) failing to ensure there were security checkpoints for airport staff at PHL; (3) failing to investigate the lack of safety of the employees after Defendants were put on notice prohibited weapons were entering PHL; (4) failing to train and supervise employees on PHL security policies; and (5) failing to protect Decedent from the injury he endured at Defendants' facility resulting in his death by his coworker.

66. Defendant had a duty to act reasonable and use due care while Decedent was an employee at PHL. Defendant breached that duty of due care and acted negligently and/or carelessly, and/or recklessly and/or in reckless disregard to Plaintiff by:

   a. Failing to ensure that there were security checkpoints for visitors at PHL.

   b. Failing to ensure that there were security checkpoints for airport staff at PHL.

   c. Failing to investigate the safety of the employees after Defendants were put on notice that weapons were entering PHL.

   d. Failing to supervise employees.

   e. Failing to protect Plaintiff from the injury he endured at Defendants' facility.

67. As a direct and proximate result of the negligence of Defendants, Plaintiff, was caused to suffer from the stab which led his death.

68. All of the above damages were directly and proximately caused by the aforementioned negligence of Defendants.

WHEREFORE, the Plaintiff prays this Honorable Court to enter judgment in his favor, and against

the Defendant, and award the following relief:

a.  Actual, special, compensatory, incidental, consequential, and punitive damages;

b.  Cost of suit and attorney's fees; and,

c.  Such additional or further relief as the interest of justice may require.

## COUNT IV
### Wrongful Death
**Keisha Brown, as Administrator of The Estate of Aaron Jenkins v. Defendants**

69. All preceding paragraphs of this Complaint are incorporate herein by reference.

70. Plaintiff brings this action as the Administrator of the Estate of Aaron Jenkins, on behalf of those entitled by law to recover for his wrongful death, under and by virtue of 42 Pa. C.S.A. § 8301, et seq., commonly known as the Pennsylvania Wrongful Death Act.

71. No action for damages was brought by Decedent during his lifetime as a result of the claims at issue in this case.

72. Plaintiff claims damages for the pecuniary loss suffered by Plaintiff's beneficiaries by reason of his death.

73. Plaintiff claims damages resulting from the deprivation of comfort, aid, assistance and society, and the loss of the guidance and tutelage to Jenkin's family due to his death.

*WHEREFORE*, the Plaintiff prays this Honorable Court to enter judgment in his favor, and against Defendants, and award the following relief:

f.  Actual, special, compensatory, incidental, consequential, and punitive damages;

g.  Cost of suit and attorney's fees; and,

h.   Such additional or further relief as the interest of justice may require.

## COUNT V
### SURVIVAL ACT
**Keisha Brown, as Administrator of The Estate of Aaron Jenkins v. Defendants**

74. All preceding paragraphs of this Complaint are incorporated herein by reference.

75. Plaintiff also brings this action under and by virtue of 42 Pa. C.S.A. § 8302, et seq., commonly known as the Pennsylvania Survival Act.

76. The Estate of Aaron Jenkins claims damages for pain and suffering undergone by the decedent as of a result of the Defendant's negligence, up to and including the time of death, and damages for the net amount that Decedent would have earned from the date of his death to the end of his life expectancy.

WHEREFORE, the Plaintiff prays this Honorable Court to enter judgment in his favor, and against the Defendant, and award the following relief:

     i.   Actual, special, compensatory, incidental, consequential, and punitive damages;

     j.   Cost of suit and attorney's fees; and,

     k.   Such additional or further relief as the interest of justice may require.

 

MFI LAW GROUP, PLLC

By: _____

Mu'min F. Islam, Esquire
7433 Limekiln Pike, Ste. 210
Philadelphia, PA, 19138
Email: mislam@mfilawgroup.com
*Attorney for Plaintiff*

Date: November 26, 2020

MFI Law Group, PLLC
By: Mu'min Islam, Esquire
Identification No.: 208979

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KEISHA BROWN, As Administratix**<br>**of the Estate of Aaron Jenkins**<br>　　　　*Plaintiff,*<br>　v.<br><br>**CITY OF PHILADELPHIA**<br>1515 Arch Street, 14th Floor<br>　Philadelphia, PA 19102<br>　　　　and<br><br>**PHILADELPHIA AIRPORT**<br>a/k/a Philadelphia International Airport<br>800 Essington Avenue<br>Philadelphia, PA 19153<br>and<br><br>**Worldwide Flight Services, Inc**.<br>Room361 – B151, E. Hangar Road<br>Cargo Area A, JFK International Airport<br>Jamaica, NY 11430<br><br>and<br><br>**Frontier Airlines**<br>4545 Airport Way<br>Denver, CO 80239<br>　　　　*Defendant.* | **Case No. 2:20-cv-05532-CMR**<br><br>JURY TRIAL DEMANDED |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the Plaintiff's Complaint was filed and served to:

City of Philadelphia
1515 Arch Street, 14th Floor
Philadelphia, PA 19102

PHILADELPHIA AIRPORT
a/k/a Philadelphia International Airport
800 Essington Avenue
Philadelphia, PA 19153

Worldwide Flight Services, Inc.
Room361 – B151, E. Hangar Road

13

Cargo Area A, JFK International Airport
Jamaica, NY 11430

Frontier Airlines
4545 Airport Way
Denver, CO 80239

Respectfully,
**MFI Law Group, PLLC**

BY: _____
Mu'min F. Islam, Esq.
*Attorney for Plaintiff*, Estate of Aaron Jenkins

Date: November 26, 2020