IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEISHA BROWN, As Administratix of the Estate of Aaron Jenkins**<br>    *Plaintiff*,<br>v.<br>**CITY OF PHILADELPHIA**, *et al.*<br>    *Defendant*. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | **Case No. 2:20-cv-05532-CMR**<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT CITY OF PHILADELPHIA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER F.R.C.P. 12(b)(6)**

Plaintiff, Keisha Brown as Administratrix of the Estate of Aaron Jenkins, respectfully moves the Court for entry in favor of Plaintiff's motion in opposition to Defendant's Motion to Dismiss Plaintiff's Complaint.

Respectfully submitted,

**MFI Law Group, PLLC**

BY: _____
Mu'min F. Islam, Esq.
*Attorney for Plaintiff*
I.D. No. 208979
7433 Limekiln Pike, Ste. 210
Philadelphia, PA 19138
215-735-2357/Fax: 215-735-2358
mislam@mfilawgroup.com

DATED: December 24, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEISHA BROWN**, As Administratix of the Estate of Aaron Jenkins<br>　　　*Plaintiff*,<br>　v.<br><br>**CITY OF PHILADELPHIA**, *et al.*<br>　　　*Defendant*. | Case No. 2:20-cv-05532-CMR<br><br>JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Keisha Brown, as Administratrix of the Estate of Aaron Jenkins ("Plaintiff"), does hereby move for the denial of Defendant City of Philadelphia ("Defendant") Motion to Dismiss and asks this Court to rule in favor of Plaintiff, for the reasons set forth below.

**I.    FACTS**

Aaron Jenkins ("Decedent") was employed by Defendant as a baggage handler. As an employee he was generally responsible for unloading and loading cargo onto passenger commercial airplanes. Defendant entered into an agreement with defendant Frontier Airlines, Inc. ("Frontier") in which Defendant was solely responsible for the baggage handling needs of Frontier. Additionally, Defendant had the exclusive possession of the baggage handling areas of Terminal E consistent with their agreement with Frontier.

On May 3, 2018, Decedent was asleep during his lunch break within the break room in the baggage handling area of Terminal E. Kevin Emanuel ("Emmanuel"), also an employee of Defendant engaged in an altercation with Decedent. Emmanuel and Decedent had previous altercations as Decedent was bullied and/or tormented without relief from Defendant. There were

multiple complaints regarding workplace violence and/or harassment, however, Emmanuel and other employees had personal relationships with management preventing any disciplinary actions. During the altercation with Decedent, Emmanuel brandished a knife and stabbed Decedent. Decedent died upon arrival to the hospital.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint.[1] In ruling on a motion to dismiss pursuant to 12(b)(6), a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom."[2] Because the court must determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief," a claim may be dismissed only "if it appears that the plaintiffs [can] prove no set of facts that would entitle them to relief."[3]

To determine whether a complaint meets the pleading standard, the court analyzes the complaint in three steps.[4] First, [the court] outline[s] the elements a plaintiff must plead to state a claim for relief.[5] Next, [the court] peels away those allegations that are no more than conclusions and thus not entitled to the assumption of truth.[6] Finally, [the court] looks for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief."[7] This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[8]

---

[1] Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).
[2] Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).
[3] *Id.*
[4] *Id.*
[5] *See* Ashcroft v. Iqbal, 556 U.S. 662, 675 (20090; Argueta v. U.S. Immigration & Customs Enforcement, 643 F.3d 60, 73 (3d Cir. 2011).
[6] *See Iqbal*, 556 U.S. at 679; Argueta, 643 F.3d at 73.
[7] *Id.*
[8] *See* Iqbal, 556 U.S. at 679.

When reviewing a 12(b)(6) motion, the court is obliged to draw all reasonable inferences therefrom in favor of the plaintiff.[9] Moreover, "[t]o decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."[10]

The complaint alleges sufficient facts if it adequately puts the defendants on notice of the essential elements of the plaintiffs' cause of action. In considering a Rule 12(b)(6) motion, there is no inquiry to whether plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims.[11] Therefore, courts will grant a motion to dismiss only if it appears the plaintiffs could prove no set of facts that would entitle them to relief.[12]

### III.     ARGUMENT

#### a. PLAINTIFF SUFFICIENTLY IDENTIFIES A CUSTOM, POLICY, OR PRACTICE OF DEFENDANT'S FAILURE TO SCREEN EMPLOYEES ENTERING TERMINAL E

In determining whether a government entity may be liable under 42 U.S.C. § 1983 there must be an "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." [13] A policy is made 'when a decision maker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy, or edict.'[14]

On the other hand, a custom may be established through a given course of conduct, although not specifically authorized or endorsed by law, which is so settled and permanent as

---

[9] McGovern v. City of Philadelphia, 554 F.3d 114, 115 (3d Cir. 2009)
[10] PBGC v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)
[11] Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).
[12] Conley v. Gibson, 355 U.S. 41 (1957)
[13] Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978).
[14] Natale v. Camden Community Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003)(*citing* Kneipp v. Tedder, 95 F.3d 1199, 1212 (3RD Cir. 1996).

virtually to constitute law.[15] Custom may be established by proof of knowledge and acquiescence.[16] A custom not formally approved by another may nevertheless "fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."[17]

In either case, after proof of the existence of an unlawful policy or custom is alleged the plaintiff bears the additional burden of proving the practice was the proximate cause of the injuries suffered.[18] "As long as the casual link is not too tenuous, the question whether the municipality policy or custom proximately caused the constitutional infringement should be left to the jury" [19] Further, the plaintiff is not required to establish injuries directly resulting from a formal department procedure, however, the mere establishment of a municipal custom coupled with causation is sufficient to satisfy a *Monell* claim.

Defendant through its entity the Philadelphia International Airport ("PHL") are exclusively responsible for the operation of the airport including security procedures. In the instant matter, Defendant's policies prohibit the possession of weapons (including a knife) while on PHL's premises.[20] However, throughout the Decedent's employment at PHL, employees were allowed to access Terminal E without being screened. These actions were a deliberate disregard for the employees safety and of other. Decedent's injuries of being stabbed with a knife brought onto PHL's premises by an employee is "casually linked" to the PHL is casually linked to Defendant's custom of allowing employees to enter the airport without being screened.

---

[15] Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)
[16] Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir.)
[17] Board of the County Comm'r of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1997).
[18] Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).
[19] Bielevicz v. Dubinan, 915 F.2d 845, 851 (3rd Cir. 1990)(*citing* Black v. Stephens, 662 F.2d 181, 190-91 (3rd Cir. 1981)).
[20] Exhibit A – City of Philadelphia Department of Commerce Division of Aviation

> b. PLAINTIFF ADEQUATELY PLEAD A CAUSE OF ACTION FOR DEFENDANT'S FAILURE TO TRAIN ITS EMPLOYEES RELATED TO THE SECURITY PROCEDURES AND SCREENING PROCESS

A *Monell* claim may also be satisfied based upon a municipality's failure to adequately train its employees to cause an action under Section 1983, if the deficient training reflects "a deliberate indifference to an individual's civil rights, and is 'closely related to the ultimate injury.'"[21] Although the "failure to train" cause of action requires evidence of multiple violations, a single-violation will satisfy a "failure to train" claim if the specific training to avoid the constitutional injury was "highly predictable" or "patently obvious."[22]

To plead a single-violation *Monell* claim for failure to train, a plaintiff must plead: (1) the violation of federal rights was highly predictable consequence of the failure to train; and (2) the likelihood of recurrence and predictability of a violation." [23] Plainly put, a failure to train is adequately demonstrated on a single occurrence which is 'closely related to the injury' and has a high likelihood of recurring.

Plaintiff clearly identifies Defendant's custom of failing to screen individuals who entered the employee entrances in Terminal E. Despite counsel's efforts, Defendant's only policy available publicly prohibits the possession of weapons.[24] However, counsel sought additional records through Pennsylvania's Right To Know Act, however responses refused to provide any of the security policies and/or procedures.[25][26] Therefore, without specific policies and/or procedures to review Plaintiff relies upon Exhibit B.

---

[21] Kane v. Chester Cnty. Dept. of Children Youth, and Families, 10 F. Supp. 3d 671, 688 (E.D. PA 2014)(*quoting* Kline ex rel. Ardnt v. Mansfield, 255 Fed. App'x 624, 629 (3d Cir. 2007)).
[22] Durham v. City of Philadelphia, 2020 WL 6940021, *3 (E.D. PA 2020).
[23] *Id.*
[24] See attached exhibit.
[25] See Exhibit B.
[26] *Id.* .

6

Plaintiff's complaint on its face satisfies her burden of demonstrating a single occurrence theory for Defendant's failure to train. The injury was caused by an employee who entered Terminal E without being screened for weapons. The Complaint identifies previous occurrences of weapons being brought upon PHL's premises by employees based upon the failure of maintaining adequate training on the security procedures. Moreover, with over 21,000 working at the PHL, there is a high likelihood of weapons being brought to the premises with the potential of further injuries[27]. These bodily injuries to Decedent and others are violations of their Constitutional Rights of life and liberty under the 5th Amendment,

    c. PLAINTIFF ADEQUATELY PLEAD THE ACTIONS OF THE DEFENDANT CREATED A STATE CREATED DANGER AND VIOLATED HIS RIGHTS UNDER THE 14TH AMENDMENT

> If the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive it is as much an active tortfeasor as if it had thrown him int  a snake pit.[28]

Plaintiff's amended complaint clearly establishes a cognizable claim under the constitutional theory of state-created danger liability. State created danger is a "mechanism for establishing a constitutional claim pursuant to 42. U.S.C. 1983.[29] The above quote from the Seventh Circuit is often quoted by courts to explain the state-created danger doctrine.[30] The record in this matter demonstrates that PHL with knowledge of the risks to which they were subjecting

---

[27] *Id.*

[28] D.R. by L.R. v. Middle Bucks Area Vo-Tech Sch. 972 F.2d 1364, 1374 (3d Cir. 1992) (quoting Bowers v. De Vito, 686 F.2d 616, 618 (7th Cir. 1982)).

[29] Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1999).

[30] *See also* Schieber v. City of Philadelphia, 320 F.3d 409, 416 (3d Cir. 2003)(finding that state actors will be found liable for constitutional violations when "the state acts in a way that makes a person substantially more vulnerable to injury from another source than he or she would have been in the absence of the state intervention.")

the Decedent, removed private security and permitted employees to access Terminal E without proper screening.

In Kneipp v. Tedder, the Third Circuit first formally recognized the elements of the state created danger theory as follows: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actors acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's actions.[31] The third Circuit subsequently restated that four -part state -created danger theory as follows:

1) The harm ultimate caused was foreseeable and fairly direct;
2) The state actor acted with a degree of culpability that shocks the conscience;
3) A relationship between the state and the Plaintiff existed such that the Plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brough about by the state's actions, as opposed to a member of the public in general; and
4) The state actor affirmative used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. [32]

In the Third Circuit, a state actor may be held under a state-created danger claim where *inter alia* the Plaintiff alleges and subsequently shows state authority was affirmatively exercised.[33] Here, Plaintiff is alleging PHL made the decision to remove security (TSA and private security) from the security clearances for the employee entrances of Terminal E. Viewing the facts in the light most favorable to Plaintiff, Emmanuel was a danger to Decedent being as there were previous altercations between the two. Similarly, Emmanuel used the employee entrances behind Terminal

---

[31] Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1986) (citing Mark v. Borough of Hatboro, 51 F.3d 1137, 1152 (3d Cir. 1995)).
[32] Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006)
[33] *Id.* 443 F.3d at 282; see id at 282 n.6 (stating that liability understate created danger theory exists where "the state's affirmative acts . . . work to plaintiffs' detriment in terms of exposure to danger.)

E to enter their workspace. However, as a result of PHL's actions in removing the screening of employees at Terminal E, Decedent became more vulnerable to danger of potential weapons being on the premises causing Decedent's demise.

### i. The Harm Sustained by Plaintiff was Foreseeable and Fairly Direct as a Result of Defendant's Affirmative Act

The first prong of the state created danger theory requires that the ham ultimately caused was foreseeable and fairly direct. [34] Plaintiff's allegations of foreseeability are at least as substantial as those found in Kneipp. In Kneipp, police officers stopped an intoxicated woman and her husband on a cold night, allowed her husband to continue on, and then left the woman to walk home by herself. The woman was later found unconscious, suffering from hypothermia and anoxia, and sustained brain damage as a result.[35] The Third Circuit found that the woman was "more likely to fall and injure herself if left unescorted than someone who was not inebriated. [36]

Here, Plaintiff alleges PHL officials removed security from screening employees entering Terminal E. It is a matter of common sense the purpose of the security screening is to prevent employees from bringing weapons to an International Airport. A reasonable official should've foreseen the lack of security screening employees for an extended period of time would foresee a potential injury if a weapon is brought onto the premises.

The harm that befell the Decedent is also fairly direct in that, but for the removal of the security screening, Decedent would not have otherwise had access to bring the knife onto the break

---

[34] Bright v. Westmoreland Cnty, 443 F.3d 276, 281 (3d Cir. 2006).
[k]NEIPP V. Tedder, 95 F.3d 1199, 1201 – 1203 (3d Cir. 1986).
[36] *Id.* at 1208. Wood v. Ostrander, 879 F.2d 583, 590 (9th cir 1989). (holding state actors liable under state create danger theory where police left female passenger stranded in a high crime area and she was subsequently raped by a man as she hitchhiked her way home; noting the "inherent danger facing a woman left alone at night in an unsafe area is a matter of common sense. ").

area. It should be noted that causation in the "state-created danger' setting will often be less than direct, as the factual setting necessarily includes an independent danger – in some cases a third party, in others a cold night or a state of inebriation, as in Kneipp – that leads to an injury to the plaintiff." [37] As such, "the proper inquiry on causation under state-created danger is not whether the state actor pulled the trigger, but whether the state actor placed the plaintiff in a bullet's likely path.[38] The Airport's actions answers this question affirmatively.

This case is materially distinguishable from Morse v. Lower Merion School District, 132 F.3d 901 (3d Cir. 1997), such that the City's reliance on Morse is entirely misplaced. In Morse, a teacher was shot and killed in front of her students when a mentally ill woman from the community entered the building through an unlocked rear entrance.[39] The plaintiff sued the District alleging the District failed to secure the back entrance despite their awareness that it remained unlocked.[40] The Third Circuit found the mentally ill woman's attack was not foreseeable and a fairly direct result of the defendant's behavior (unlocked rear entrance). Specifically the court pointed to other reasons for leaving the door unlock such as allowing construction workers to use the door for access to the school. Here, however, the City's decisions to remove the security team from screening employees behind Terminal E was presented with direct and appreciable risk or danger – someone could enter with a weapon. The City ignored the foreseeable risk when removing the security measures of screening all employees. In sum, the facts alleged are suffice to satisfy the first prong of the state-created danger theory.

      ii.   **The Removal of the Security Guards for employee screening evinces deliberate indifference in regard to Decedent's Safety.**

---

[37] Sciotto v. Marple Newton Sch. Distr., 81 F.Supp.2d 559, 565 n.8 (E.D. PA 19990.
[38] Id.
[39] See Morse v. Lower Merion School District, 132 F.3d at 908.
[40] Id.

The second prong of the state created danger theory requires that the state actor acted with a degree of culpability that shocks the conscience. [41] "The exact degree of wrongfulness necessary to reach the conscious -shocking level depends upon the circumstances of a particular case."[42] the defendant acted with willful disregard for, or in deliberate indifference to the plaintiff's safety. Kneipp, 95 F.3d at 1208. Whereas, the environment created by the state actor (or defendant) must be dangerous, they must know it to be dangerous, and they must have been deliberately indifferent. Morse, 132 F.3d at 910. Plainly stated, the state's actions must evidence a willingness to ignore a foreseeable danger or risk. Id. Where deliberation is possible and an official is not under pressure to make hurried judgments, deliberate indifference to a serious risk of harm will generally shock the conscience, satisfying prong (2) above. [43]

In Cornelius, plaintiff brought suit after being abducted and held hostage by several escaped prison inmates who were assigned to the work program in the community town hall where plaintiff was employed. Cornelius v. Town of Highland Lake, 880 F.2d 348 (11th Cir. 1989). The court upheld plaintiff's assertion of the state created danger theory because the defendants knew of the dangerous propensities and the danger presented to the community by having inmates working in the community. Morse, 132 F.3d at 909. Thus, the defendants could be held liable based on their knowledge of the risk created by the presence of these inmates, however despite this, deliberately ignoring this foreseeable danger or risk. Morse, 132 F.3d at 910.

---

[41] Bright 443 F.3d at 28.
[42] Sanford v. Stiles, 456 F.3d 298, 306 (3d Cir. 2006).
[43] *Id. 309.*

In order to hold a state actor accountable, his or her "actions must evince a willingness to ignore a foreseeable danger or risk."[44] In some instances, "the possibility [of] indifference might exist without actual knowledge of harm when the risk is so obvious that it should be known.[45] Notably, Plaintiff's complaint does not identify Defendant's actors were in an hurried state and the removal of the security ran over a course of time.

Plaintiff alleges Defendant and PHL ignored the foreseeable danger or risk posed by removing the security to screen all employees entering Terminal E. Taking these allegations as true, the Defendant acted with at least as much deliberate indifference as the officers in <u>Kneipp</u>, who sent an intoxicated woman home alone, despite their awareness of her intoxicated and incapacitated state. Although this claim is based upon an injury to an employee of the defendant, the existence of deliberate indifference to the risk to the millions of travelers to PHL occurred by refusing to screen employees for weapons and explosives. These same employees which have free access to the runway, storage areas and the commercial planes themself.

### iii.    **There Existed a Relationship between Plaintiff and Defendant**.

The third prong of the state created danger theory requires that a relationship between the state and the plaintiff existed such that the plaintiff (1) was a foreseeable victim of the defendant's acts, or (2) was a member of a discrete class of persons subjected to the potential harm brough about by the state's actions, as opposed to a member of the public in general.[46] The plaintiff need not "plead facts that show the same 'special relationship' basis for constitutional liability.[47]

---

[44] <u>Morse,</u> 132 F.3d at 910.
[45] <u>Phillips,</u> 515 F.3d at 240 – 241.
[46] <u>Bright,</u> 443 F.3d at 281.
[47] <u>Phillips,</u> 515 F.3d at 242.

Under the first part of this state-created danger element, the salient inquiry is whether the plaintiff was a foreseeable victim of the defendant's acts.[48] As an employee on Terminal E, it is clear Decedent would be a foreseeable victim of someone entering Terminal E with a weapon. Under the second part of the third prong, the "quintessential question" a court must answer when addressing this element is "whether the state actor's conduct foreseeably put the plaintiff, or a group of similarly situated people, including the plaintiff, in danger, or whether the risk was directed in a broader sense at the 'public at large.'"[49] It is without question Emmanuel's actions of bringing a knife through Terminal E without being screened specifically put the Decedent within the zone of danger. Emmanuel's use of the knife did not create a danger to the public generally, but was a danger to those he was working with. As such, this element of the state-created danger is satisfied.

    **iv.**    **The Defendant Used Its Authority to Create An Opportunity for the Act**

The final element under Kniepp is establishing the defendant used its authority to create an opportunity for the specific harm to occur which otherwise would not have existed.[50] The court further explained this requirement to embody a state actor/defendant must commit an affirmative act to create the risk which results in the harm to the plaintiff.[51] However, the courts have found the line between an affirmative act and an omission is difficult to draw. Id. Whether defendants' influence is an affirmative act or an omission is unclear, and thus the main consideration is premised on if the state has in some way placed the plaintiff in a foreseeable dangerous position.[52]

---

[48] Morse, 132 F.3d at 913 FN. 12.
[49] See Chriss W. Pehrson, Issues in the Third Circuit: Bright v. Westmoreland County: Putting the Kibosh on State-Created Danger Claims Alleging State Actor Inaction, 51 Vill. L. Rev. 1043, 1061 (2007).
[50] Kniepp, 95 F.3d at 1208.
[51] Morse, 132 F.3d at 914.
[52] Morse, 132 F.3d at 915.

The City of Philadelphia is responsible for the management and security of one of the largest airports in this country. Plaintiff is alleging the City through PHL removed security from Terminal E employee entrances which subjected the employees to potential additional harm and violation of their substantive due process rights of life and liberty. On its face during the pleading stage, there is strong evidence this affirmative act by Defendant's increased the danger to the Decedent as he now could be around employees who carried weapons that could harm him. This additional harm is violative of his due process rights as PHL's policy prohibits weapons, however by removing the security employees responsible for enforcing this rule places Decedent and all other employees in danger of their life and liberty under the 5th Amendment to the United States Constitution.

### c.   IN THE ALTERNATIVE, THE COURT SHOULD GRANT LEAVE TO FILE AN AMENDED COMPLAINT.

Leave to amend a party's pleading before trial should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). In the absence of factors such as bad faith or dilatory otive on the part of the movant, or undue prejudice to the opposing party by virtue of the allowance of the amendment, the leave sought should be freely given.[53]

Viewing Plaintiff's Complaint in a light most favorable to Plaintiff, this Honorable Court should deny Defendant's motion. However, if this Honorable Court grants Defendant's motion, this Court should grant Plaintiff leave to file an Amended Complaint. Plaintiff has not unduly delayed in seeking her request to amend, nor will the City of Philadelphia be unduly prejudiced.

---

[53] Forman v. Davis, 371 U.S. 178, 182 (1962)

To the contrary, there will be no prejudice to the City of Philadelphia as discovery as yet to commence and no trial date has been set as of this time.

### IV. CONCLUSION

.	For the reasons set forth herein, Plaintiff, Keisha Brown as Administratix for the Estate of Aaron Jenkins, respectfully requests that this Honorable Court deny Defendant City of Philadelphia's Motion to Dismiss and enter an Order in the form proposed. Plaintiff has plead a claim, taken as true and drawing all reasonable inferences in his favor, as plausible on its face. He has plead a cognizant 5th and 14th Amendment claims, which identifies a custom adopted by a final policymaker.

Respectfully submitted,

**MFI Law Group, PLLC**

BY: _____

Mu'min F. Islam, Esq.
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **KEISHA BROWN, As Administratix** <br> **of the Estate of Aaron Jenkins** <br> *Plaintiff*, <br> v. <br><br> **CITY OF PHILADELPHIA**, *et al.* <br> *Defendant*. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **Case No. 2:20-cv-05532-CMR** <br><br> JURY TRIAL DEMANDED |

### CERTIFICATE OF SERVICE

I, Mu'min F. Islam, do hereby certify that on this 24TH day of December 2020 , I caused a true and correct copy of the foregoing document to be served on the individuals and in the manner indicated below:

**VIA ECF SYSTEM**
**AND FIRST CLASS MAIL**

Michele E. Turner, Esq
Centre Square, West Tower
1500 Market Street, 32nd Floor
Philadelphia, PA 19102
mturner@bbs-law.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KEISHA BROWN, As Administratix of the Estate of Aaron Jenkins**<br>　　　*Plaintiff*,<br>　　v.<br><br>**CITY OF PHILADELPHIA**, *et al.*<br>　　　　　*Defendant*. | Case No. 2:20-cv-05532-CMR<br><br>JURY TRIAL DEMANDED |

## ORDER

AND NOW, this _____ day of _____, upon consideration of Defendant City of Philadelphia's Motion to Dismiss, and any response thereto, the Motion is DENIED.

BY THE COURT:

_____

J.