**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEISHA BROWN, as Administrator of the ESTATE OF AARON JENKINS, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 20-5532 |
| | : | |
| v. | : | **TRIAL BY JURY OF TWELVE DEMANDED** |
| | : | |
| CITY OF PHILADELPHIA and PHILADELPHIA INTERNATIONAL AIRPORT, et al., | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS, CITY OF PHILADELPHIA AND PHILADELPHIA INTERNATIONAL AIRPORT'S (INCORRECTLY SUED AS A DEFENDANT) *AMENDED* ANSWER TO PLAINTIFF'S AMENDED COMPLAINT WITH AFFIRMATIVE DEFENSES AND CROSS-CLAIMS PURSUANT TO FED.R.CIV.P. 13(G)**

Defendants, City of Philadelphia and Philadelphia International Airport[1] (improperly sued as a defendant), by and through their attorneys, Bennett, Bricklin & Saltzburg LLC, hereby files its *amended* answer to plaintiff's Amended Complaint, and sets forth as follows:

**PARTIES**

1.      Denied.  After reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

2.      Admitted.

---

[1]The Philadelphia International Airport is merely an asset of the City of Philadelphia and is not subject to suit in its own right.  *See* Fullam v. Philadelphia International Airport, 49 F. Supp. 2d. 434 (E.D. Pa. 1999) and Regulbuto v. City of Philadelphia, 937 F. Supp. 394 (E.D. Pa. 1995).  However, notwithstanding the improper inclusion of the Airport as a defendant, for the sake of consistency and unless otherwise indicated, the City and Airport will be collectively referred to as "Answering Defendants".

3.      Denied.  Philadelphia Airport, a/k/a Philadelphia International Airport, is merely an asset of the City of Philadelphia and is not subject to suit in its own right.  *See* Fullam v. Philadelphia International Airport, 49 F. Supp. 2d. 434 (E.D. Pa. 1999) and Regulbuto v. City of Philadelphia, 937 F. Supp. 394 (E.D. Pa. 1995).

4.      Denied.   The allegations in this paragraph are directed to a party other than Answering Defendants and thus, no response is required.

5.      Denied.   The allegations in this paragraph are directed to a party other than Answering Defendants and thus, no response is required.

## JURISDICTION AND VENUE

6-8.      Denied as conclusions of law to which no response is required.

## MATERIAL FACTS

9.      Denied.  After reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

10.      Denied.  After reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

11.      Denied.  After reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

12.      Denied.  After reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

13.     Admitted in part; denied in part.  It is admitted only that Answering Defendants conduct business in the City and County of Philadelphia.  The remaining allegations are denied. Strict proof is demanded at trial.

14.     Denied.  The allegations in this paragraph are directed to a party other than Answering Defendants and thus, no response is required.  To the extent a response is required, the averments of this paragraph are denied.   Strict proof is demanded at trial.

15.      Admitted in part; denied in part.  It is admitted only that the City of Philadelphia owns the airport and operates certain portions of the airport.  By way of further response, the Philadelphia International Airport is an asset of the City of Philadelphia and not an entity that is capable of being sued in its own right. The remaining allegations of this paragraph are denied. Strict proof is demanded at trial.

16.     Denied.  To the extent a response is required, any such rules and regulations speak for themselves, and plaintiff's characterizations of same are denied.  Strict proof is demanded at trial.  Finally, the Philadelphia International Airport is an asset of the City of Philadelphia and not an entity that is capable of being sued in its own right.

17.     Denied.  To the extent a response is required, any such rules and regulations speak for themselves, and plaintiff's characterizations of same are denied.  Strict proof is demanded at trial.

18.      Denied.  Strict proof is demanded at trial.  Finally, the Philadelphia International Airport is an asset of the City of Philadelphia and not an entity that is capable of being sued in its own right.

19.     Denied.  After reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

20.     Denied.  The allegations in this paragraph are directed to a party other than Answering Defendants and thus, no response is required.  To the extent a response is required, the averments of this paragraph are denied.   Strict proof is demanded at trial.

21.     Denied.   Strict proof is demanded at trial.   Furthermore, the Philadelphia International Airport is an asset of the City of Philadelphia and not an entity that is capable of being sued in its own right.

22.     Denied.  The allegations in this paragraph are directed to a party other than Answering Defendants and thus, no response is required.  To the extent a response is required, the averments of this paragraph are denied.   Strict proof is demanded at trial.

23.     Denied.  Strict proof is demanded at trial.

24.     Denied.  Strict proof is demanded at trial.

25.     Denied.  Strict proof is demanded at trial.

26.     Denied.  Strict proof is demanded at trial.

27.     Denied.  The allegations in this paragraph are directed to a party other than Answering Defendants and thus, no response is required.  To the extent a response is required, after reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

28.     Denied.  The allegations in this paragraph are directed to a party other than Answering Defendants and thus, no response is required.  To the extent a response is required,

after reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

29.     Denied.   The allegations in this paragraph are directed to a party other than Answering Defendants and thus, no response is required.   To the extent a response is required, after reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

30.     Denied.   The allegations in this paragraph are directed to a party other than Answering Defendants and thus, no response is required.   To the extent a response is required, after reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

31.     Denied.   The allegations in this paragraph are directed to a party other than Answering Defendants and thus, no response is required.   To the extent a response is required, after reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

32.     Denied.  After reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

33.     Denied.  After reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

## COUNT I
## CIVIL RIGHTS
### Keisha Brown, as Administrator of the Estate of Aaron Jenkins v. City of Philadelphia and Philadelphia International Airport

34.     Answering Defendants incorporate, by reference, all paragraphs as set forth above, as though fully set forth herein.

35.     Denied.  No such statute exists at Title 41.

36.     Denied.  No such statute exists at Title 41.  By way of further response, the Philadelphia International Airport is merely an asset of the City of Philadelphia and is not subject to suit in its own right.  *See* Fullam v. Philadelphia International Airport, 49 F. Supp. 2d. 434 (E.D. Pa. 1999) and Regulbuto v. City of Philadelphia, 937 F. Supp. 394 (E.D. Pa. 1995).  As such, its inclusion as a defendant herein is wholly improper.

37.     Denied as stated, because the application of federal preemption turns on the cause of action alleged in the complaint.  Moreover, the Philadelphia International Airport is merely an asset of the City of Philadelphia and is not subject to suit in its own right.  *See* Fullam v. Philadelphia International Airport, 49 F. Supp. 2d. 434 (E.D. Pa. 1999) and Regulbuto v. City of Philadelphia, 937 F. Supp. 394 (E.D. Pa. 1995).  As such, its inclusion as a defendant herein is wholly improper.

38.     Denied.  Strict proof is demanded at trial.

39.     Denied.  All characterizations of Answering Defendants' conduct "at all times material hereto" are denied because those times are not defined in plaintiff's Amended Complaint. Strict proof is demanded at trial.

40.     Denied.  Strict proof is demanded at trial.

41.     Denied.  Strict proof is demanded at trial.

42.     Denied.  By way of further response, plaintiff's characterizations of any rules and regulations are denied, as they speak for themselves.  Strict proof is demanded at trial.

43.     Denied.  Strict proof is demanded at trial.

44.     Denied.  By way of further response, it is denied that decedent was an employee of the City of Philadelphia.  All remaining averments of this paragraph are denied.  Strict proof is demanded at trial.

45.     Denied.  Strict proof is demanded at trial.

46.     Denied.  Strict proof is demanded at trial.

47.     Denied.  Strict proof is demanded at trial.

48.     Denied.  Strict proof is demanded at trial.

49.     Denied.  Strict proof is demanded at trial.  Further, the Philadelphia International Airport is merely an asset of the City of Philadelphia and is not subject to suit in its own right, and its inclusion as a defendant herein is wholly improper.

50.     Denied.  Strict proof is demanded at trial.  Further, the Philadelphia International Airport is merely an asset of the City of Philadelphia and is not subject to suit in its own right, and its inclusion as a defendant herein is wholly improper.

51.     Denied.  Strict proof is demanded at trial.

WHEREFORE, Answering Defendants demand that judgment be entered in their favor, together with interest and costs of defense of this matter.

**COUNT II**
**Negligence – Premises Liability**
**Keisha Brown, as Administrator of the Estate of Aaron Jenkins v. Worldwide Flight**
**Services and Frontier Airlines**

52.     Answering Defendants incorporate, by reference, all paragraphs as set forth above, as though fully set forth herein.

53.     Admitted only that the City of Philadelphia and Frontier Airlines, Inc. entered into a Lease and Use Agreement in effect on the date of incident that is the subject of plaintiff's Amended Complaint.

54.- 68.   Denied.   The allegations in these paragraphs are directed to parties other than Answering Defendants and thus, no response is required.

WHEREFORE, Answering Defendants demand that judgment be entered in their favor, together with interest and costs of defense of this matter.

**COUNT IV (sic)**
**Wrongful Death**
**Keisha Brown, as Administrator of the Estate of Aaron Jenkins v. Defendants**

69.     Answering Defendants incorporate, by reference, all paragraphs as set forth above, as though fully set forth herein.

70.     Denied.  Strict proof is demanded at trial.

71.     Denied.  After reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

72.     Denied.  After reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

73.     Denied.  After reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

WHEREFORE, Answering Defendants demand that judgment be entered in their favor, together with interest and costs of defense of this matter.

**COUNT V (sic)**
**Survival Act**
**Keisha Brown, as Administrator of the Estate of Aaron Jenkins v. Defendants**

74.     Answering Defendants incorporate, by reference, all paragraphs as set forth above, as though fully set forth herein.

75.     Denied.  Strict proof is demanded at trial.

76.     Denied.  After reasonable investigation, Answering Defendants are unable to form a belief as to the truth of the averments of this paragraph, deny the same, and demand strict proof at trial.

**WHEREFORE**, Answering Defendants deny all liability herein, demand that judgment be entered in their favor, together with interest and costs of defense of this matter.

**<u>AFFIRMATIVE DEFENSES</u>**

**<u>FIRST AFFIRMATIVE DEFENSE</u>**

Plaintiff's claims are barred and/or limited by the applicable period of the statute of limitations and/or doctrine of laches.

**<u>SECOND AFFIRMATIVE DEFENSE</u>**

Plaintiff's federal and state law claims, in whole or in part, fail to state a cause of action upon which relief may be granted.

### THIRD AFFIRMATIVE DEFENSE

Merely negligent or careless conduct on the part of Answering Defendants fail to support a cause of action under 42 U.S.C. § 1983.

### FOURTH AFFIRMATIVE DEFENSE

Answering Defendants may not be held vicariously, passively or secondarily liable for the conduct of its employees, nor may the doctrine of *respondeat superior* be imposed upon Answering Defendants.

### FIFTH AFFIRMATIVE DEFENSE

Any harm suffered by the plaintiff's decedent, which is denied, was not directly caused by a policy, custom or practice of Answering Defendants.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims, if any, are barred or otherwise limited by the terms, provisions, immunities and defenses set forth in the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, *et seq.*, and/or the doctrine of governmental immunity, which defenses and immunities are hereby incorporated, by reference, as though fully set forth herein.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to aver and/or plead an exception to immunity under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §8501 *et seq.*

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims, if any, are barred and/or limited by the Workers' Compensation Act, 77 P.S. § 1, *et seq.*, and to the extent plaintiff has received Workers' Compensation benefits.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims, if any, are barred because Answering Defendants owed no duty to plaintiff.

### <u>TENTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims, if any, are barred because any acts and/or omissions which she alleges on the part of Answering Defendants were not substantial or proximate causes or factors of the alleged incident referenced in Plaintiff's Complaint.

### <u>ELEVENTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims, if any, are barred because her alleged injuries and losses, if any, were caused or contributed to solely or in part by the careless, negligent and/or intentional acts or failures to act of persons or entities other than Answering Defendants, or authorized agents, servants, workers or employees of said entities and/or defendants, over whom Answering Defendants had no control or right of control, and for whom Answering Defendants were not and are not responsible.

### <u>TWELFTH AFFIRMATIVE DEFENSE</u>

The City of Philadelphia is not liable for the criminal or negligent acts of third parties.

### <u>THIRTEENTH AFFIRMATIVE DEFENSE</u>

Plaintiff is precluded from recovering damages pursuant to the provisions of Pennsylvania's Comparative Negligence Act, 42 Pa.C.S. §7102.  In the alternative, plaintiff's claims, if any, and damages, if any, are barred, limited or reduced by the Pennsylvania Comparative Negligence Act, 42 Pa.C.S. §7102.

### <u>FOURTEENTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims are or may be barred and/or limited by the doctrine of assumption of the risk.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims, if any, are barred because she failed to provide to the City of Philadelphia, within six months of the date of the alleged incident(s) referenced in the Amended Complaint, written notice of her claim in accordance with 42 Pa.C.S. §5522.

## SIXTEENTH AFFIRMATIVE DEFENSE

Answering Defendants acted properly and exercised due care under the circumstances.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims, if any, are barred by the failure to join indispensable parties.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims, losses and/or damages, if any, and her right of recovery for those losses and/or damages, if any, are reduced or limited because of plaintiff's failure to mitigate.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovering all or part of the damages alleged in the Amended Complaint pursuant to 42 Pa.C.S.A. §8553 relating to limitation of damages.

## TWENTIETH AFFIRMATIVE DEFENSE

In the event that plaintiff is deemed entitled to recover any damages in this action, per the Political Subdivision Tort Claims Act, she is barred from recovering damages from or against Defendant, City of Philadelphia for medical expenses or lost earnings to the extent that same were/are paid or were/are payable by a source or sources other than the City of Philadelphia.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of accord and/or satisfaction.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of compromise and/or release.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

The allegations as set forth in Plaintiff's Amended Complaint fail to support a cause of action under 42 U.S.C. §1983 against Answering Defendants.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

The allegations as set forth in Plaintiff's Amended Complaint fail to support a violation of plaintiff's Constitutional rights against Answering Defendants.

**WHEREFORE**, Answering Defendants deny all liability herein and demand that judgment be entered in their favor, together with interest and costs of defense of this matter.

### CROSS-CLAIM PURSUANT TO FED.R.CIV.P. 13(g) AGAINST DEFENDANT, FRONTIER AIRLINES, INC.

1.      Answering Defendants incorporate, by reference and as if fully set forth herein, the factual averments of plaintiff's Amended Complaint directed to Defendant, Frontier Airlines, Inc., without admitting or denying the truth thereof.

2.      If the averments of plaintiff's Amended Complaint are established at trial, all liability on the part of Answering Defendants being specifically denied, it is averred that Defendant, Frontier Airlines, Inc. and/or its agents, contractors, employees, servants, and/or workmen, are solely liable to plaintiff, or jointly or severally liable with Answering Defendants, by virtue of its negligence and carelessness, and/or negligent omissions as more fully set forth in plaintiff's Amended Complaint, which are incorporated herein for purposes of this cross-claim only.

**WHEREFORE**, Answering Defendants, the City of Philadelphia and Philadelphia International Airport (improperly sued as a defendant), demand judgment in their favor, but if

liability is imposed upon Answering Defendants, it is requested that judgment be entered against

Defendant, Frontier Airlines, Inc. for contribution and/or indemnity, together with counsel fees,

costs and interest.

### CROSS-CLAIM PURSUANT TO FED.R.CIV.P. 13(g) AGAINST DEFENDANT, FRONTIER AIRLINES, INC. – CONTRACTUAL INDEMNITY

3.      Answering Defendants incorporate, by reference and as if fully set forth herein, the

factual averments of plaintiff's Amended Complaint directed to Defendant, Frontier Airlines, Inc.,

(hereinafter sometimes referred to as "Frontier") without admitting or denying the truth thereof.

4.      The City of Philadelphia entered into Airport-Airline Use and Lease Agreement

with Frontier Airlines, Inc, (hereinafter "Lease Agreement") on July 1, 2015 relative to Frontier

Airlines, Inc.'s occupancy and uses at the Philadelphia International Airport.   The Lease

Agreement is incorporated herein by reference as though fully set forth herein, with relevant

portions thereof attached hereto collectively as Exhibit "A".

5.      Pursuant to the Terms and Conditions to the Lease Agreement, Frontier is required

to defend and indemnify the City as follows:

**14.02   Indemnification.**

**A.   General.** To the fullest extent provided by law, Airline shall indemnify, defend and hold harmless City, its officials, agents, employees, representatives, successors and assigns (the "Indemnified Parties") from and against all liability for claims, suits, causes of action, liabilities, losses, costs and expenses (including reasonable attorneys fees), for which the Indemnified Parties may be held liable by reason of injury (including death) to any person (including Airline's employees) or damage to any property whatsoever kind or nature except to the extent caused by City's sole negligence or willful misconduct of every kind relating to or arising in connection with:

**1.** Any act or negligent omission of Airline, its agents, directors, officers, employees, contractors or sublessees arising out of or in any manner connected with the Total Airline Leased

14

> Premises (including, but not limited to, Airline's use or occupancy
> of Total Airline Leased Premises. . .

<u>See</u> Lease Agreement at Article 14.02, contained within Exhibit A.

6.      Plaintiff's Amended Complaint and the alleged incident recited therein constitute a claim arising out of or resulting from the negligence, carelessness, and/or negligent omissions of Frontier as more fully set forth in plaintiff's Amended Complaint, in breach of the terms, conditions, responsibilities and obligations of Frontier as set forth in the Lease Agreement.

7.      Pursuant to the terms of the Lease Agreement, Frontier is required to defend, indemnify, and hold harmless the City of Philadelphia against the claims asserted in Plaintiff's Amended Complaint, as well as assume any defense costs and legal expenses incurred in the defense of those claims.

8.      In breach of the Lease Agreement, to date, Frontier has failed to assume the defense of the City of Philadelphia, and has failed to reimburse the defense costs of the City.

9.      As a result of Frontier's breach of the Lease Agreement, including its failure to provide indemnity and defense, the City of Philadelphia has incurred and continues to incur, various costs and expenses including, but not limited to, attorney's fees and court costs, and may suffer judgment against it.

**WHEREFORE**, Answering Defendants, the City of Philadelphia and Philadelphia International Airport (improperly sued as a defendant), demand that judgment be entered in their favor and against Defendant, Frontier Airlines, Inc., for (1) indemnification for any judgment the City of Philadelphia may suffer against it, and (2) all counsel fees, costs and expenses.

## COUNT II
## BREACH OF CONTRACT – FAILURE TO PROCURE INSURANCE

10.     Answering Defendants incorporate, by reference and as if fully set forth herein, the factual averments of plaintiff's Amended Complaint directed to Defendant, Frontier Airlines, Inc., without admitting or denying the truth thereof.

11.     Under the Terms and Conditions of the Lease Agreement, Frontier was required to purchase a Commercial General Liability insurance policy with limits of $1,000,000.00 per occurrence combined single limit for bodily injury (including death) and property damage liability; $100,000,000 general aggregate.  See Lease Agreement at Article 14.01, contained within Exhibit A.

12.     Under the terms of the Lease Agreement, Frontier was required to name the City of Philadelphia as an additional insured on its Commercial General Liability.  See Lease Agreement at Article 14.01, Section B1.

13.     Frontier's insurance carrier has not agreed to assume the City of Philadelphia's defense as an additional insured, and has thus far disclaimed any obligation to provide insurance coverage to the City of Philadelphia as an additional insured.

14.     The lack of additional insured coverage to the City of Philadelphia is due to Frontier's breach of the Lease Agreement in failing to purchase the Commercial General Liability insurance coverage required by said Lease Agreement, and/or failing to name the City of Philadelphia as an additional insured on any such policy of insurance.

15.     If Frontier had purchased the insurance required by the Lease Agreement, the City of Philadelphia would have been entitled to a defense against the claims asserted by Plaintiff in her Amended Complaint, as well as indemnification against any judgment that the City of Philadelphia may suffer against it.

16.     As a result of Frontier's breach of contract in failing to provide the required insurance coverage, the City of Philadelphia has incurred and may continue to incur various costs and expenses in defending against the Plaintiff's Amended Complaint including, but not limited to, attorneys' fees, and court costs, and may suffer a judgment against it.

**WHEREFORE**, Answering Defendants, the City of Philadelphia and Philadelphia International Airport (improperly sued as a defendant), demand that judgment be entered in their favor and against Defendant, Frontier Airlines, Inc., for (1) indemnification for any judgment the City of Philadelphia may suffer against it, and (2) all counsel fees, costs and expenses.

## CROSS-CLAIM PURSUANT TO FED.R.CIV.P. 13(g) AGAINST DEFENDANT, WORLDWIDE FLIGHT SERVICES, INC.

17.     Answering Defendants incorporate, by reference and as if fully set forth herein, the factual averments of plaintiff's Amended Complaint directed to Defendant, Worldwide Flight Services, Inc., (hereinafter sometimes referred to as "Worldwide") without admitting or denying the truth thereof.

18.     If the averments of plaintiff's Amended Complaint are established at trial, all liability on the part of Answering Defendants being specifically denied, it is averred that Defendant, Worldwide Flight Services, Inc. and/or its agents, contractors, employees, servants, and/or workmen, are solely liable to plaintiff, or jointly or severally liable with Answering Defendants, by virtue of its negligence and carelessness, and/or negligent omissions as more fully set forth in plaintiff's Amended Complaint, which are incorporated herein for purposes of this cross-claim only.

**WHEREFORE**, Answering Defendants, the City of Philadelphia and Philadelphia International Airport (improperly sued as a defendant), demand judgment in their favor, but if

liability is imposed upon Answering Defendants, it is requested that judgment be entered against Defendant, Worldwide Flight Services, Inc. for contribution and/or indemnity, together with counsel fees, costs and interest.

<u>**CROSS-CLAIM PURSUANT TO FED.R.CIV.P. 13(g) AGAINST DEFENDANT, WORLDWIDE FLIGHT SERVICES, INC. – CONTRACTUAL INDEMNITY**</u>

19.     Answering Defendants incorporate, by reference and as if fully set forth herein, the factual averments of plaintiff's Amended Complaint directed to Defendant, Worldwide Flight Services, Inc., without admitting or denying the truth thereof.

20.     The City of Philadelphia entered into a Ground Handling License Agreement (hereinafter "License Agreement") with Worldwide Flight Services, Inc. on July 1, 2017 relative to Worldwide's occupancy, uses and provision of ground handling services for one or more signatory and/or non-signatory airlines at the Philadelphia International Airport.  The License Agreement is incorporated herein by reference, as though fully set forth herein, with relevant portions thereof attached hereto collectively as Exhibit "B".

21.     Pursuant to the Terms and Conditions to the License Agreement, Worldwide (referred to in the License Agreement as "Licensee") is required to defend and indemnify the City as follows:

**8.     Indemnification**

A.     Except to the extent of the sole negligence or willful misconduct of the City, its officers, employees, agents, boards and commissions, Licensee shall, to the fullest extent permitted by law, indemnify, defend and hold harmless the City, officers, employees, agents, boards and commissions from and against any and all losses, costs (including litigation costs and counsel fees and costs), claims, suits, actions, damages, liability and expenses relating to or arising in connection with:

(1)     any act or omission of Licensee, or Licensee's agents, directors, officers, owners, employees, members, contractors, subcontractors,

> sublicensees, tenants, subtenants or business invitees (collectively "Licensee's Agents"), in connection with Licensee's activities on the Airport;
>
> (2) any accident, injury, death or damage to any person or property at the Airport caused, in whole or in part, by Licensee or Licensee's Agents;

<u>See</u> License Agreement at Section 8, contained within Exhibit B.

22.    Plaintiff's Amended Complaint and the alleged incident recited therein constitute a claim arising out of or resulting from the negligence, carelessness, and/or negligent omissions of Worldwide as more fully set forth in plaintiff's Amended Complaint, in breach of the terms, conditions, responsibilities and obligations of Worldwide as set forth in the License Agreement.

23.    Pursuant to the terms of the License Agreement, Worldwide is required to defend, indemnify, and hold harmless the City of Philadelphia against the claims asserted in Plaintiff's Amended Complaint, as well as assume any defense costs and legal expenses incurred in the defense of those claims.

24.    In breach of the License Agreement, to date, Worldwide has failed to assume the defense of the City of Philadelphia, and has failed to reimburse the defense costs of the City.

25.    As a result of Worldwide's breach of the License Agreement, including its failure to provide indemnity and defense, the City of Philadelphia has incurred and continues to incur, various costs and expenses including, but not limited to, attorney's fees and court costs, and may suffer judgment against it.

**WHEREFORE**, Answering Defendants, the City of Philadelphia and Philadelphia International Airport (improperly sued as a defendant), demand that judgment be entered in their favor and against Defendant, Worldwide Flight Services, Inc., for (1) indemnification for any

judgment the City of Philadelphia may suffer against it, and (2) all counsel fees, costs and expenses.

<u>COUNT II</u><br><u>BREACH OF CONTRACT – FAILURE TO PROCURE INSURANCE</u>

26.     Answering Defendants incorporate, by reference and as if fully set forth herein, the factual averments of plaintiff's Amended Complaint directed to Defendant, Worldwide Flight Services, Inc., without admitting or denying the truth thereof.

27.     Under the Terms and Conditions of the License Agreement, Worldwide was required to purchase a Commercial General Liability insurance policy against claims for personal, advertising and bodily injury, death or property damage occurring on, in or about the Airport, with a combined single limit for each occurrence of not less than Five Million Dollars ($5,000,000). <u>See</u> License Agreement at Section 9, contained within Exhibit B.

28.     Under the Terms and Conditions of the License Agreement, "such liability insurance shall contain a broad form endorsement and, without limitation, coverage for premises and operations, aviation operations, collapse, explosion and underground hazard, products/completed operations, blanket contractual liability insurance specifically covering, but not limited to, the contractual obligations to indemnify, hold harmless and defend" assumed by Worldwide pursuant to said License Agreement.  <u>See</u> License Agreement at Section 9.

29.     Worldwide's insurance carrier has not yet agreed to assume the City of Philadelphia's defense pursuant to the terms and conditions of the License Agreement, and has thus far disclaimed any obligation to provide insurance coverage to the City of Philadelphia.

30.     Disclaimed of additional insured coverage to the City of Philadelphia is due to Worldwide's breach of the License Agreement in failing to purchase the Commercial General

Liability insurance coverage required by said License Agreement, and/or failing to name the City of Philadelphia as an additional insured on any such policy of insurance.

31.     If Worldwide had purchased the insurance required by the License Agreement, the City of Philadelphia would have been entitled to a defense against the claims asserted by Plaintiff in her Amended Complaint, as well as indemnification against any judgment that the City of Philadelphia may suffer against it.

32.     As a result of Worldwide's breach of contract in failing to provide the required insurance coverage, the City of Philadelphia has incurred and may continue to incur various costs and expenses in defending against the Plaintiff's Amended Complaint including, but not limited to, attorneys' fees, and court costs, and may suffer a judgment against it.

**WHEREFORE**, Answering Defendants, the City of Philadelphia and Philadelphia International Airport (improperly sued as a defendant), demand that judgment be entered in their favor and against Defendant, Worldwide Flight Services, Inc., for (1) indemnification for any judgment the City of Philadelphia may suffer against it, and (2) all counsel fees, costs and expenses.

Respectfully Submitted,

**BENNETT, BRICKLIN & SALTZBURG LLC**

By:     */s/ Michele E. Turner*
        _____
        Michele E. Turner, Esquire
        Centre Square, West Tower
        1500 Market Street, 32nd Floor
        Philadelphia, PA 19102
        (215) 665-3386
        E-mail: mturner@bbs-law.com
        *Attorneys for Defendants,*
        *City of Philadelphia and*

*Philadelphia Airport a/k/a*
*Philadelphia International Airport*
*(improperly sued as a defendant)*

Dated:  August 25, 2021

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEISHA BROWN, as Administrator of the ESTATE OF AARON JENKINS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. 20-5532 |
| v. | : | |
| | : | **TRIAL BY JURY OF TWELVE DEMANDED** |
| CITY OF PHILADELPHIA and PHILADELPHIA INTERNATIONAL AIRPORT, et al., | : | |
| | : | |
| Defendants. | : | |

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing Answer with New Matter was filed on this date and served upon all counsel of record via ECF Notification and/or Email and/or Regular Mail on this date.

Respectfully Submitted,

**BENNETT, BRICKLIN & SALTZBURG LLC**

*/s/ Michele E. Turner*

By: _____

Michele E. Turner, Esquire
Pa. Atty I.D. #68343
Centre Square, West Tower
1500 Market Street, 32nd Floor
Philadelphia, PA 19102
(215) 665-3386
E-mail: mturner@bbs-law.com
*Attorneys for Defendants,*
*City of Philadelphia and*
*Philadelphia Airport a/k/a*
*Philadelphia International Airport*
*(improperly sued as a defendant)*

# EXHIBIT "A"

**AIRPORT-AIRLINE USE AND LEASE AGREEMENT**

**by and between**

**City of Philadelphia, Pennsylvania**

**AND**

**Frontier Airlines, Inc.**

FINAL

**Article 14**

**INSURANCE AND INDEMNIFICATION**

**14.01.  Insurance Requirements**

   **A.    Insurance Requirements.**  During the Term and any extension thereof, Airline shall, at its sole cost and expense, obtain and maintain in full force and effect, and promptly pay all premiums, when due, for, the following types of insurance in the amounts specified and in the form heretofore provided for:

   **1.    All Risk Property Insurance.**  All Risk property insurance including the perils of flood, earthquake and wind, covering all improvements, betterments, equipment, trade fixtures, merchandise, business personal property and any other property in Airline's care, custody or control, (other than aircraft hull, spaces, cargo and passenger baggage and personal effects) in an amount equal to the full replacement cost and with no penalty for coinsurance.  Said policy may take into consideration any limitations on liability that may exist in favor of Airline for customer goods.

   **2.    Boiler and Machinery.**  Boiler and machinery insurance against loss or damage from explosion, electrical injury or arcing, erupting, collapsing or mechanical breakdown of boilers or pressure vessels and all equipment parts thereof and appurtenances attached thereto to the extent applicable to the space leased to Airline.

   **3.    Automotive Liability.**  Automotive liability insurance covering liability arising from the ownership,  maintenance and use of all owned, non-owned, hired, leased and rented trucks, automobiles, with a combined single limit of $1,000,000 which requirement shall be $10,000,000 for those vehicles with access to the Airfield Area.

   **4.    Worker's Compensation and Employer's Liability.**  Worker's compensation and employer's liability insurance affording statutory coverage and containing statutory limits with the employer's liability insurance at limits of $1,000,000 each accident/$1,000,000 each employee/$1,000,000 policy limit. In addition, such policy shall include Waiver of Right to Recover From Others endorsement in favor of the City of Philadelphia, its respective officials, employees, agents, representatives, successors and assigns.

   **5.    General Liability Insurance/Aviation Liability.**  General liability insurance/aviation liability insurance in amounts not less than $100,000,000 per occurrence combined single limit for bodily injury (including death) and property damage liability; $100,000,000 general aggregate.  Coverage shall include but not be limited to Premises operations; contractual liability; passenger liability; War Risk and other perils which coverage shall be $50,000,000;  personal injury and advertising liability ( contractual exclusion deleted) which coverage shall be $10,000,000; Fire, legal liability which coverage shall be $1,000,000; products and completed operations; and liability for vehicles on the restricted access areas of the Airfield Area including baggage tugs, aircraft pushback tugs, provisioning trucks, air stair trucks,

FINAL

belt loaders and ground hangar keeper's liability.  Explosion, collapse and underground property damage liability coverages shall not be excluded from such insurance coverage.

> **a.    Aircraft Liability Insurance.** Airline shall maintain aircraft liability insurance with a limit of not less that (A) $50,000,000, with respect to Airline that operates aircraft with a passenger capacity not in excess of 20 persons, or (B) $100,000,000, with respect to all other Airlines, in any case with aggregates where applicable, for bodily injury or death, and property damage for all owned, operated, maintained, non-owned, leased, or hired aircraft.   The aircraft liability insurance may be included in the General Liability/Aviation Liability insurance.

**6.    Contractors' Insurance.**  Any (i) contractor, construction manager or other party engaged by Airline or (ii) subcontractor or other party engaged by a contractor, construction manager or other party that is engaged by Airline, in either case, to perform any construction, renovations or repairs at the Airport shall obtain and maintain in full force and effect during any construction period:

> **a.    **A commercial general liability insurance policy for premises operations, products/completed operations, personal and advertising injury, broad form property damage, contractual liability, in minimum limits, unless otherwise specified, of $1,000,000 per occurrence for bodily injury and $2,000,000  General Aggregate.

> **b.    **Automotive liability insurance covering liability arising from the ownership, maintenance, and/or use of all owned, non-owned and hired, leased and rented trucks and/or automobiles, with a combined limit of $1,000,000 which requirement shall be $10,000,000 for those vehicles with access to the Airfield Area..

> **c.    **A worker's compensation policy affording statutory coverage and containing statutory limits and employer's liability insurance at limits of $1,000,000 per accident/$1,000,000 each employee/$1,000,000 policy limit. In addition, such policy shall include Waiver of Right to Recover From Others Endorsement in favor of the City of Philadelphia, its respective officials, employees, agents, representatives, successors and assigns.

> **d.    **Professional liability insurance shall be maintained when any architect or engineer performs, directly or indirectly, work for or on behalf of Airline at Airport or involving Airline's operations and/or the Total Airline Leased Premises with a $1,000,000 policy limit.

> If coverage is written on a Claims-made basis, the retroactive date applicable to the coverage shall precede the effective date of this Agreement; and that continuous coverage will be maintained for a period of at least two (2) years after final payment to provide two (2) years of completed operations coverage.

**7.    Environmental Impairment or Pollution Liability.**  Environmental impairment or pollution liability insurance covering a minimum limit of $5,000,000 per occurrence for bodily injury (including death) and property damage.  Coverage shall include sudden, accidental and

gradual occurrences, as well as, coverage for receiving, dispensing, transporting, removing, handling or storing aviation fuels or any other pollutants, and may be written on a claims-made basis provided that coverage for occurrences happening during the term of this Agreement shall be maintained in full force and effect under the policy of "tail" coverage for a period of at least two (2) years after expiration or termination of this Agreement.  Airline, with the concurrence of City, may self-insure this risk.

   **8.**  **Self-Insurance.** In the event that Airline wants to self-insure any of the coverage listed in this Agreement, it shall make available its public financial statements on-line. In the event the City grants its approval, Airline understands and agrees that the City, its officers, employees and agents shall be entitled to receive the same coverage and benefits under Airline's self-insurance program that they would have received had the insurance requirements been satisfied by a reputable insurer. The insurance (including self-insurance) requirements set forth herein are not intended and shall not be construed to modify, limit or reduce the indemnifications made in the Agreement by Airline to the City, or to limit Airline's liability under the Agreement to the limits of the policies of insurance (or self-insurance) required to be maintained by Airline hereunder."

   **9.**  **Liquor Liability Insurance.**  If alcoholic beverages are served or sold on the Airline's Leased Premises, liquor liability insurance coverage shall be maintained in an amount of $5,000,000; provided, however, that no alcoholic beverages shall be served or sold unless approved in writing by City.

 **B.**  **Additional Requirements.**  All policies of insurance provided for in this Article 14 shall be issued in form reasonably acceptable to City by insurance companies accepted in the United States or International airline industry which shall include Airline's captive, if applicable, and otherwise acceptable to City.  At no time may Airline cancel any insurance without thirty (30) days (ten [10] days in the case of a cancellation due to non-payment of premium) prior written notice to City.  Airline may change insurance carriers as long as the obligations under this Article 14 are met and notice of such change is provided to City within ten (10) days.  Each and every such policy:

   **1.**  except for worker's compensation, employer's liability, professional liability, boiler and machinery and property insurance, shall be issued in the name of Airline and shall name City, its respective officers, employees, agents, successors and assigns and any other parties in interest from time to time designated in writing by notice from City to Airline as additional insureds to the extent covered and indemnified herein.  The coverage offered to the additional insureds shall be primary coverage to any coverage maintained by the additional insureds and shall not permit or require such other coverage to contribute to the payment of any loss.  In addition, the additional insureds shall also be provided the same completed operations coverage as detailed under the General Liability/Aviation Liability Coverage section herein;

   **2.**  with respect to liability insurance, shall be for the mutual and joint benefit and protection of City and Airline and  additional insureds;

   **3.**  shall (or certificates thereof shall) be delivered to City's Risk Manager (One Parkway, 1515 Arch Street, 14th Floor, Philadelphia, PA 19102) with a copy to the Division of Aviation, and additional insureds prior to the commencement of the Term and thereafter as soon as practical prior to the expiration of each such policy, and, as often as any such policy shall

expire or terminate.  Renewal or additional policies shall be procured and maintained by Airline in like manner and to like extent;

4.        shall be on an "occurrence" basis and not a "claims made" basis, except for pollution and professional liability which may be on a claims made basis with a tail. If coverage is written on a claims-made basis, the retroactive date applicable to the coverage shall precede the effective date of this Agreement; and that continuous coverage shall be maintained for a period of at least two (2) years after final payment.

C.        **Inspection of Policies**.  Airline will submit certificates of insurance.  If the City has questions concerning Airline's required coverage herein, the City may require Airline to furnish written responses from its authorized insurance carrier, broker or airline representatives at any time upon ten (10) business days written notice to Airline.

D.        **Waiver**.  To the extent permitted by law, Airline hereby waives all claims against the City for any loss or damage to Airline's property which loss or damage is covered by insurance or required to be insured against pursuant to this Article 14, except for such claims which arise due to the willful misconduct or sole negligence of City.

E.        **Failure to Maintain.**  In the event Airline fails to cause such insurance to be maintained, City  (i) shall not be limited in the proof of any damages which City may claim against Airline or any other person or entity to the amount of the insurance premium or premiums not paid or incurred and which would have been payable upon such insurance, but City shall also be entitled to recover as damages for such breach the uninsured amount of any loss, and damages, expenses of suit and costs, including without limitation reasonable cancellation fees, suffered or incurred during any period when Airline shall have failed or neglected to provide insurance as required herein and (ii) City may, after advance written notice,  provide such insurance by taking out policies from companies satisfactory to City in amounts which may be lesser than or equal to those specified herein.  The amount of the premiums paid for such policies by City shall be payable by Airline on receipt of City's billing therefore with interest at the Default Rate per year, accrued and compounded on a monthly basis, commencing from the date of payment by City.  Further, if Airline fails to comply with the insurance requirements set forth herein, City may terminate this Agreement upon seven (7) days prior written notice to Airline.

F.        **Increases.**  Airline may not use the Airport or conduct any additional, non-standard airline operations in any manner that will increase City's insurance rates with respect to the Airport.  If Airline's additional, non-standard operations activities at the Airport result in increased insurance costs for City at the Airport or in the cancellation of a City insurance policy, then City may, after advance written notice, charge the increased cost or the cost of obtaining new insurance to Airline as additional rent hereunder.

G.        **Minimums.**  The policy dollar amounts stated herein are minimums only; City shall be entitled to the full benefit and protection of any higher dollar amount of coverage stated in an insurance policy actually carried by Airline.  The insurance requirements set forth herein shall not be construed as a representation by City that the satisfaction of such requirements will be sufficient to protect Airline.

FINAL

**H.    No Limitation.**  The insurance requirements set forth herein shall in no way be intended to modify, limit or reduce the indemnifications made in this Agreement by Airline to City or to limit Airline's liability under this Agreement to the limits of the policies of insurance required to be maintained by Airline.

**I.    Sublessees.**  No subleasing of any interest in any part of this Agreement shall be effective unless and until City in writing acknowledges that it has received satisfactory evidence of a sub-lessee's insurance policies and/or coverage.

**J.    Changes to Insurance Requirements.**  The parties acknowledge and agree that circumstances affecting, among other things, the Airport, City, Airline, the aviation industry and the insurance market may occur during the Term hereof and, as a consequence, City may, upon written notice and after consultation with Signatory Airlines, adjust the insurance requirements set forth in this section at any time during the Term if, in City's judgment, the insurance requirements of this Agreement are deemed inadequate to properly protect City and/or the Airport and Airline shall promptly comply with such adjustment(s).  Any changes to insurance requirements will be implemented at the next applicable insurance policy renewal term.

**K.    Incidents.**  If any accident or event occurs during the Term which results in or may have resulted in bodily injury, personal injury, property damage, or a loss of any kind or is otherwise covered or should be covered by the insurance coverage provided for herein and such accident or event occurs in or about the Airport, then such accident or event in excess of $25,000 filed against or involving Airline and City based upon accidents or events at the Airport or involving Airline's operations in or around the Airport is to be reported  promptly to City (in any case no later than twenty-four hours after Airline has knowledge of the occurrence thereof) and a written report thereof shall be submitted to City within three days after the occurrence of the accident or event.  Further, any individual claim for damages in excess of twenty-five thousand dollars ($25,000) filed against or involving Airline and City based upon accidents or events at the Airport or involving Airline's operations in or around the Airport shall be reported to City within ten (10) days following receipt of such claim by Airline.    Airline is not required under this Section 14.01.K to report worker's compensation claims against Airline.

**L.    Deductibles.**  The payment of deductibles under any insurance policy required herein shall be made solely by Airline and City shall not have any liability for payment thereof. Any deductible amounts in excess of $500,000 shall be disclosed to the City.

**14.02  Indemnification.**

**A.    General.**  To the fullest extent provided by law, Airline shall indemnify, defend and hold harmless City, its officials, agents, employees, representatives, successors and assigns (the "Indemnified Parties") from and against all liability for claims, suits, causes of action, liabilities, losses, costs and expenses (including reasonable attorneys fees),  for which the Indemnified Parties may be held liable by reason of injury (including death) to any person (including Airline's employees) or damage to any property whatsoever kind or nature except to the extent caused by City's sole negligence or willful misconduct of every kind relating to or arising in connection with:

    **1.**    Any act or negligent omission of Airline, its agents, directors, officers, employees, contractors or sublessees arising out of or in any manner connected with the Total Airline Leased Premises (including, but not limited to, Airline's use or occupancy of Total Airline Leased

Premises, ingress or egress to Total Airline Leased Premises, access or use of parking lots, walkways or common areas and any alterations or work done in or about the Total Airline Leased Premises by the Airline or on the Airline's behalf);

    **2.**    Any breach, violation or nonperformance of any covenant, term or condition of this Agreement to be performed or observed by Airline, or of any restrictions of record or of any applicable laws, ordinances, statues, rules, codes or regulations, affecting the Total Airline Leased Space, Proprietary Equipment (unless such Proprietary Equipment was purchased or constructed by City in contravention of such applicable laws and/or regulations) or Airline Equipment, or any part of the Total Airline Leased Space, Proprietary Equipment or Airline Equipment, or the ownership, occupancy or use thereof;

    **3.**    Any encroachment of improvements made by Airline upon property adjoining the Total Airline Leased Premises.

The indemnification contained in this Section 14.02 applies to this Section 14.02 only.  Said indemnification does not apply to City-maintained equipment or property, unless caused by Airline's negligence.  Nothing herein shall prevent the Signatory Airline(s) to which City has tendered a matter covered by any indemnification provision of its/their Use and Lease Agreement from joining as a defendant any Air Transportation Company to the extent permitted by applicable law.

    **B.**    **Defense of Proceedings.**  In case any action or proceeding is brought against City by reason of any matter referred to in this Article 14 or any other Article herein to defend City, Airline, upon written notice from City (which shall be promptly given), shall at Airline's sole cost and expense, resist or defend such action or proceeding by counsel approved by City in writing (which approval shall not be unreasonably withheld), provided that no approval of counsel shall be required in each instance where the action or proceeding is resisted or defended by counsel of an insurance carrier obligated to resist or defend such action or proceeding, and further provided that City may engage at its own expense its own counsel to participate in the defense of any such action.

    **1.**    If Airline determines that the defense of such action is not covered by this Agreement, Airline shall immediately give City notice thereof.

    **2.**    If Airline fails to defend such action as required by this Article 14, Airline will be responsible for all defense costs and usual expenses incurred by City insofar as permitted by law as well as any settlement amounts paid or payable by City and/or damages awarded against the City by a court of competent jurisdiction.

    **3.**    City shall be notified in advance of any potential settlements of any action defended herein and Airline shall also be notified of any potential settlements in the event of a City defense of said action.

    **4.**    The provisions of Article 14 as they apply to occurrences or actual or contingent liabilities arising during the Term of this Agreement shall survive the expiration or any earlier termination of this Agreement for the applicable statute of limitations, but no longer than six (6) years, with the exception of losses involving minor children or the construction on real property.

    **C.     Non-Waiver of Tort Claims Act.**   Nothing contained in this Agreement shall be construed as a waiver by City of rights under the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. Section 8541 et seq., as may be amended from time to time, nor as a limitation on the rights and defenses available to City under law.

**CITY OF PHILADELPHIA** appearing herein through its duly authorized representative.

_____
Signature

Alan Greenberger
Director of Commerce

_____
Date

**Frontier Airlines, Inc.,** by its duly authorized representative

_____
Signature

Howard Diamond
Printed Name

SVP, General Counsel
Title

11.30.15
Date

Approved as to form:

_____
Shelley R. Smith, City Solicitor
By: Joseph F. Messina
Divisional Deputy City Solicitor

# EXHIBIT "B"

## GROUND HANDLING LICENSE AGREEMENT

THIS GROUND HANDLING LICENSE AGREEMENT (the "**Agreement**") is entered into this _/ ST_ day of _Jᴜʟʏ_, 2017, and effective _Jᴜʟʏ /_, 2017 (the "Effective Date"), by and between **THE CITY OF PHILADELPHIA**, acting through its Department of Commerce, Division of Aviation (the "**City**") and **WORLDWIDE FLIGHT SERVICES, INC.**, a Corporation authorized to do business in the Commonwealth of Pennsylvania (the "**Licensee**").

R E C I T A L S

The City is the fee simple owner and operator of the Philadelphia International Airport (the "**Airport**"); and

Licensee is in the business of providing ground handling services; and

Licensee is not a Signatory Airline or otherwise owned in whole or in part by a Signatory Airline; and

Licensee desires to obtain and the City is willing to grant certain non-exclusive rights and privileges with respect to conducting ground handling services for one or more Signatory Airlines and/or Non-Signatory Airlines, as such terms are defined in the Airport-Airline Use and Lease Agreement currently in effect, at the Airport.

NOW, THEREFORE, for and in consideration of the mutual covenants herein contained, and intending to be legally bound hereby, City and Licensee agree as follows:

1.    TERM.

A.  Subject to earlier termination as provided herein, Licensee shall have and hold the non-exclusive rights, licenses, privileges and obligations set forth in this Agreement for a period commencing July 1, 2017 and continuing so long as Licensee is under contract to provide any Services to a Signatory Airline and/or an Air Carrier owned in whole or in part by a Signatory Airline, provided, however, that (1) if the Licensee is not under contract to provide any Services to a Signatory Airline and/or an Air Carrier owned in whole or in part by a Signatory Airline, either party can terminate this Agreement at any time by giving the other party at least thirty (30) days' written notice of such termination and (2) in any event, either party can terminate this Agreement at any time by giving the other party at least thirty (30) days' written notice of such termination to be effective on or after July 1, 2021, provided, however, that if the Licensee is, at the time termination is initiated, providing any Services to a Signatory Airline and/or an Air Carrier owned in whole or in part by a Signatory Airline, then the City shall provide at least one hundred twenty (120) days written notice of termination to the Licensee and to such Signatory Airline(s) (the "**Term**").

B.  Termination under this or any other provision of this Agreement shall not relieve Licensee of any liabilities or obligations hereunder which shall have accrued on or prior to

1

E. Licensee shall be an independent contractor and not an agent of the City. The City shall not exercise any control over the daily performance of the duties of Licensee's employees. The selection, retention, assignment, direction and/or payment of Licensee's employees shall be the sole responsibility of Licensee.

6.      SPACE AVAILABILITY.

This Agreement is not a lease of premises and does not guarantee the availability of any space at the Airport. Licensee is cautioned to determine whether it requires space. If space is required, it must be leased under a separate agreement subject to space availability. Such an agreement, if entered into, will be on terms similar those granted others who lease comparable space at the Airport.

7.      EQUIPMENT.

A. Licensee must provide first class equipment, in sufficient quantity and in proper operating condition, to meet its responsibilities for the provision of Services. Licensee shall provide and maintain all such equipment at its sole cost and expense.

B. All equipment shall be suitable in appearance, quality and quantity and at least equal in these respects to equipment used for similar purposes at major airports throughout the country.

C. Licensee shall, at its sole cost and expense, remove from the Airport all equipment Licensee ceases to use or which becomes inoperable during the Term or any extension thereof. Failure to remove such equipment from the Airport will result in enforcement action being taken by the City against Licensee under all applicable laws and regulations including, but not limited to, the Airport Rules and Regulations.

8.      INDEMNIFICATION.

A. Except to the extent of the sole negligence or willful misconduct of the City, its officers, employees, agents, boards and commissions, Licensee shall, to the fullest extent permitted by law, indemnify, defend and hold harmless the City, officers, employees, agents, boards and commissions from and against any and all losses, costs (including litigation costs and counsel fees and costs), claims, suits, actions, damages, liability and expenses relating to or arising in connection with:

(1) any act or omission of Licensee, or Licensee's agents, directors, officers, owners, employees, members, contractors, subcontractors, sublicensees, tenants, subtenants or business invitees (collectively "**Licensee's Agents**"), in connection with Licensee's activities on the Airport;

(2) any accident, injury, death or damage to any person or property at the Airport caused, in whole or in part, by Licensee or Licensee's Agents;

8

(3) any breach, violation or nonperformance of any covenant, term or condition of this Agreement to be performed or observed by Licensee, or of any restrictions of record, or of any federal grant assurances, or of any laws or regulations (including the Airport Rules and Regulations) affecting Licensee's activities on or use of the Airport, by Licensee or Licensee's Agents;

(4) any federal, state or local tax, levy or payment in lieu of taxes attributable to Licensee's or Licensee's Agents' operations on or about the Airport; and any tax attributable to the execution, delivery or recordation of this Agreement;

(5) the release of any Hazardous Material, as defined in Section 10, by Licensee or Licensee's Agents, including but not limited to any cost or expense incurred in connection with safety measures, containment and/or clean-up of Hazardous Material; or Licensee or Licensee's Agents' failure to comply with Environmental Laws, as defined in Section 10, including but not limited to any fines, penalties or other punitive measures arising from such failures.

B. The obligations under this indemnity shall not be limited, reduced or altered by the insurance maintained by Licensee pursuant to this Agreement. Licensee's obligation to indemnify, defend and hold harmless the City, its officers, employees and agents shall survive the expiration and/or termination of this Agreement.

C. In the event that any action or proceeding is brought against the City by reason of any matter referred to in this Section, Licensee, upon written notice from the City and at Licensee's sole cost and expense, shall resist or defend such action or proceeding by counsel approved by the City in writing, provided that no approval of counsel will be required in each instance where the action or proceeding is resisted or defended by counsel of an insurance carrier obligated to resist or defend such action or proceeding, and further provided that the City may engage at its expense its own counsel to participate in the defense of any such action.

D. Notwithstanding anything contained in this Agreement to the contrary, nothing in this Agreement shall waive, or be construed to waive, any power or authority or defense of the City under all applicable laws, rules and regulations.

E. Licensee's indemnification and liability to the City as set forth in this Section shall also apply to any and all security matters and shall include but not be limited to Licensee's duty to pay any fines and satisfy any punitive measures imposed upon the City by the Federal Aviation Administration (the "**FAA**"), the Transportation Security Administration (the "**TSA**") or any other governmental agencies in connection with Licensee's breach(es) of the Airport's security program and the Airport Rules and Regulations regarding security.

9.    <u>INSURANCE.</u>

A. Throughout the Term of this Agreement or any extension thereof, Licensee shall maintain or cause to be maintained with insurers licensed to do business in the Commonwealth of Pennsylvania and otherwise satisfactory to the City, a minimum of the following insurance:

(1) Commercial general liability insurance against claims for personal, advertising and bodily injury, death or property damage occurring on, in or about the Airport, with a combined single limit for each occurrence of not less than Five Million Dollars ($5,000,000). Such liability insurance shall contain a broad form endorsement and, without limitation, coverage for premises and operations, aviation operations, collapse, explosion and underground hazard, products/completed operations, blanket contractual liability insurance specifically covering, but not limited to, the contractual obligations to indemnify, hold harmless and defend assumed by Licensee pursuant to this Agreement, broad form property damage, personal injury (employee exclusion deleted), independent contractors, owner's protective liability coverage, employees as additional insured and cross liability coverage and have no limitations with respect to aircraft or aviation operations;

(2) Comprehensive automobile liability insurance insuring against liability arising from the maintenance and use of all owned, non-owned, hired, leased and rented trucks, automobiles and other vehicles for bodily injury, death or property damage, with a combined single limit for each occurrence of not less than Five Million Dollars ($5,000,000);

(3) Workers compensation and employer's liability insurance affording statutory coverage and containing statutory limits with the employer's liability insurance at limits of One Million Dollars ($1,000,000) each accident/ One Million Dollars ($1,000,000) each employee/ One Million Dollars ($1,000,000) policy limit. Policy shall include Waiver of Right to Recover from Others Endorsement (WC 00 03 13) naming the City.

(4) Environmental impairment or pollution liability insurance at a minimum limit of $5,000,000.00 per occurrence for bodily injury (including death) and property damage. Coverage will include sudden, accidental and gradual occurrences and may be written on a claims-made basis provided that coverage for occurrences happening during the Term or any extension thereof will be maintained in full force and effect under the policy of "tail" coverage for a period of at least two (2) years after expiration or termination of this Agreement. This insurance shall only be required if Licensee performs the services under paragraph 2A.(6)(7) and (9).

B. With respect to the insurance listed above the following shall apply:

(1) All of the foregoing policies shall be provided on an "occurrence" basis and not on a "claims made" basis.

10

(2) Except for Workers compensation and employer's liability, all insurances shall name the City of Philadelphia, its officers, employees and agents as additional insureds. All such policies shall include an endorsement stating that the coverage afforded these parties as additional insureds will be primary to any other coverage available to them.

(3) Certificates of insurance evidencing the required coverages shall be submitted by Licensee to the Division of Aviation (Philadelphia International Airport, Terminal D/E, Philadelphia, Pennsylvania, 19153, Attention: Airport Properties Manager), and the City's Risk Manager (One Parkway, 1515 Arch Street, 14th Floor, Philadelphia, PA 19102) at least ten (10) days before commencement of the Term. Licensee's failure to furnish certificates of insurance as required herein shall be considered as a default with a cure period of five (5) days after receipt of written notice thereof. Thereafter, and without further notice to Licensee, the City may exercise any and all remedies set forth in the Agreement and/or at law or equity.

(4) Licensee shall furnish copies of the original policies of all insurance required under this Agreement at any time within ten (10) days after written request by the City.

(5) All insurance policies shall provide for at least thirty (30) days prior written notice to be given to the City in the event coverage is materially changed, canceled or not renewed. At least ten (10) days prior to the expiration of each policy, Licensee shall deliver to the City a certificate or certificates evidencing a replacement policy to become effective immediately upon the termination of the previous policy.

(6) From time to time during the Term or any extension thereof and in any event not more frequently than every year, the City may adjust the amounts, types and deductibles of insurance coverage required to reflect changed circumstances affecting insurance requirements.

(7) If Licensee fails to cause such insurance to be maintained, the City shall not be limited in the proof of any damages which the City may claim against Licensee or any other person or entity to the amount of the insurance premium or premiums not paid or incurred and which would have been payable upon such insurance, but the City shall also be entitled to recover as damages, expenses of suit and costs, including without limitation, reasonable cancellation fees, suffered or incurred during any period when Licensee shall have failed or neglected to provide insurance as required herein.

(8) The insurance requirements set forth herein shall in no way be intended to modify, limit or reduce the indemnifications made in this Agreement by Licensee to the City or to limit the City's liability under this Agreement to the limits of the policies of insurance required to be maintained by Licensee hereunder.

C. Licensee shall not do, or suffer to be done, any matter or thing whereby, or in consequence whereof, the policy or policies of insurance shall become voided or suspended, or which increase the risk or hazard of fire in or on the Airport unless, in the latter case only, such increased risk or hazard is adequately insured in the City's sole discretion and the use creating such increased risk or hazard is permitted hereunder.

D. Licensee shall not permit separate insurance to be carried which relates to the Airport and is concurrent in form or contributing, in the event of loss, with that required to be maintained under this Agreement, or increase or permit to be increased the amounts of any then-existing insurance relating to the Airport by securing as additional policy or additional policies, without including the applicable parties required in this Section as insured parties or additional insureds. Licensee immediately shall notify the City whenever such separate insurance is obtained and deliver to the City certificates evidencing such policies and, upon request, certified copies or duplicate originals of the same (as required in this Section and in accordance with the procedures set forth herein).

10.     ENVIRONMENTAL PROVISION.

A. The term "Hazardous Material" as used in this Agreement means any and all materials which require, under Environmental Laws (as defined herein), special handling in use, generation, collection, storage, treatment or disposal, or payments of costs associated with responding to the lawful directives of any court or agency of competent jurisdiction. Hazardous Materials shall include, without limitation, (i) asbestos, flammables, volatile hydrocarbons, industrial solvents, explosives, hazardous chemicals, radioactive material, oil, petroleum, petroleum products or by products, crude oil, natural gas, natural gas liquids, hazardous chemical gases and liquids, volatile or highly volatile liquids, and/or synthetic gas, and shall include, without limitation, substances defined as "hazardous substances", "hazardous materials", "hazardous waste", "toxic substances", "pollutants", or "contaminants", as those terms are used in any Environmental Law or at common law, and (ii) any and all other materials or substances that any governmental agency or unit having appropriate jurisdiction shall determine in generally applicable regulations from time to time are hazardous, harmful, toxic, dangerous or otherwise required to be regulated, removed, cleaned-up, or remediated.

B. The term "Environmental Laws" as used in this Agreement shall mean all current and future federal, state, and local environmental safety or health laws, statutes, rules, regulations, ordinances, orders, or common law including, but not limited to, reported decisions of any state or federal court and shall include, but not be limited to, the Occupational Safety and Health Act of 1970, as amended (29 U.S.C. § 651 *et seq.*), the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. § 9601 *et seq.*); the Resource Conservation and Recovery Act, as amended (42 U.S.C. § 6901 *et seq.*); the Toxic Substances Control Act, as amended, (15 U.S.C. § 2601 *et seq.*); the Hazardous Materials Transportation Act, as amended (49 U.S.C. § 5101 *et seq.*); the Clean Air Act, as amended, (42 U.S.C. § 7401 *et seq.*); the Clean Water Act, as amended (33 U.S.C. § 1251 *et seq.*); the Oil Pollution Act of 1990, as amended (33 U.S.C. § 2701 *et seq.*); the Safe Drinking Water Act, as amended (42 U.S.C. § 201 *et seq.*);

F. <u>Records</u>. In accordance with applicable FAA regulations, all records concerning the Airport are subject to inspection by any duly authorized agent of the United States Secretary of Transportation upon reasonable request.

G. <u>Time of the Essence</u>. It is expressly understood and agreed that with respect to all responsibilities, covenants and conditions of Licensee herein, time is of the essence of this Agreement. All payments are due by 4:00 pm on the due date. Any payment submitted by Licensee to cure a financial default must be received no later than 4:00 pm on the final day of the cure period or such payment will not be accepted by the City as a cure of the default.

H. <u>Signatory Airlines</u>. City acknowledges and agrees that in no circumstance shall a Signatory Airline, or any company owned, in whole or in part, by a Signatory Airline, be required to execute this Agreement or a similar licensing agreement. The parties hereto expressly agree that the Signatory Airlines, and any company owned, in whole or in part, by a Signatory Airline, shall be deemed intended third-party beneficiaries to this paragraph 23H.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers or representatives as of the day and year first above written.

<table>
<tr><td></td><td><strong>CITY:</strong></td></tr>
<tr><td></td><td><strong>THE CITY OF PHILADELPHIA,</strong> acting</td></tr>
<tr><td>Approved as to form:</td><td>through its Department of Commerce,</td></tr>
<tr><td>Sozi Pedro Tulante,</td><td>Division of Aviation</td></tr>
<tr><td>City Solicitor</td><td></td></tr>
</table>

Per: _____      By: _____
    Brad Bak                      Rochelle L. Cameron, CPA
    Divisional Deputy City Solicitor   Chief Executive Officer,
                                    Philadelphia International Airport

**LICENSEE:**
**WORLDWIDE FLIGHT SERVICES, INC.**

Attest: _____   By: _____

**Name:** Michael W. Simpson

**Its:** CFO
        06/23/2017

24