**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| KEISHA BROWN as Administrator of the ESTATE OF AARON JENKINS, | : : : : | |
| Plaintiff, | : | **CIVIL ACTION NO. 20-5532** |
| v. | : : | |
| CITY OF PHILADELPHIA, et al., | : : | |
| Defendants. | : : | |

**DEFENDANT FRONTIER AIRLINES, INC.'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FED. R.C.P. 12(b)(6)**

Defendant, FRONTIER AIRLINES, INC. ("Frontier"), by its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully requests that this Court dismiss Plaintiff's Amended Complaint against Frontier.[1] (*See* Exhibit A.) Frontier cannot be liable for a third-party's violent, intentional act no matter how tragic the consequence of such act.  In support of its Motion to Dismiss, Frontier contemporaneously files and submits a Memorandum of Law which is relied upon and incorporated herein by reference.

In sum, this civil action arises from a violent incident that occurred on May 3, 2018 during a Worldwide Flight Services Inc. employee's work break at Philadelphia International Airport ("PHL").  Plaintiff, Keisha Brown, as administrator of Aaron Jenkins' estate ("Plaintiff"), filed a four-count Amended Complaint in the United States District Court for the Eastern District of Pennsylvania, against Defendants, Frontier, City of Philadelphia, PHL, and Worldwide Flight Services, Inc. ("WFS"). As pleaded against Frontier, Plaintiff alleges negligence – premises

---

[1] Count I of Plaintiff's Amended Complaint is directed exclusively to defendants other than Frontier.  There is no Count III of Plaintiff's Amended Complaint.

liability ("Count II"); she also pleaded claims for wrongful death ("Count IV") and pursuant to Pennsylvania's survival act ("Count V"). (Doc. # 6.)

Counts II, IV, and V of Plaintiff's Amended Complaint fail to state a claim upon which relief can be granted.  Count II fails because Frontier owed no duty of care to the Decedent, Aaron Jenkins, who was a WFS employee, and who suffered injuries and an unfortunate death as a result of a third-party's violent, intentional act for which Frontier has no liability.  Further, Frontier is not responsible for the alleged negligence of its independent contractor, and Frontier's conduct was not a substantial factor in the cause of the Decedent's injuries.

Counts IV and V also fail as derivative claims of Count II, which fails to state a claim against Frontier.  Lastly, even if Plaintiff has a viable claim against Frontier, which Frontier denies, Plaintiff's conclusory claims for punitive damages must be stricken.

WHEREFORE, Defendant, FRONTIER AIRLINES, INC. ("Frontier"), prays that this Honorable Court enter an order dismissing Counts II, IV, and V as pleaded against Frontier, pursuant to Fed. R. Civ. P. 12(b)(6), striking the claims for punitive damages, and for such further relief as this Court deems just and reasonable.

Dated: September 10, 2021

Respectfully submitted,

**ADLER MURPHY & MCQUILLEN LLP**

*/s/ Kristin A. Hoffman*
Kristin A. Hoffman (Admitted *Pro Hac Vice*)
Brian T. Maye (Admitted *Pro Hac Vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: khoffman@amm-law.com
        bmaye@amm-law.com

SKINNER LAW GROUP
Laurie Alberts Salita (PA I.D. No. 87884)

2

Mackenzie W. Smith (PA I.D. No. 306685)
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Email: salita@skinnerlawgroup.com
       smith@skinnerlawgroup.com

*Counsel for Frontier Airlines, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEISHA BROWN as Administrator of the ESTATE OF AARON JENKINS, | : : : | |
| Plaintiff, | : : | **CIVIL ACTION NO. 20-5532** |
| v. | : : | |
| CITY OF PHILADELPHIA, et al., | : : | |
| Defendants. | : : : | |

**DEFENDANT FRONTIER AIRLINES, INC.'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S**
**AMENDED COMPLAINT PURSUANT TO FED. R.C.P. 12(b)(6)**

Defendant, FRONTIER AIRLINES, INC. ("Frontier"), by its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully requests that this Court dismiss Plaintiff's Amended Complaint against Frontier.[1]   In support of its Motion to Dismiss, Frontier states as follows:

## I.   INTRODUCTION

This case arises out of the death of Aaron Jenkins (the "Decedent"), an employee of Worldwide Flight Services, Inc. ("WFS"), who was fatally stabbed by a WFS co-worker while both were working at Philadelphia International Airport ("PHL"). Frontier operated flights to and from PHL pursuant to an Airport-Airline Use and Lease Agreement with the City of Philadelphia (the "City"). In addition, WFS provided services to Frontier at PHL pursuant to a ground handling agreement. In the Amended Complaint (the "Complaint"), Plaintiff, Keisha Brown, as

---

[1] Count I of Plaintiff's Amended Complaint is directed exclusively to defendants other than Frontier.  There is no Count III of Plaintiff's Amended Complaint.

Administrator of the Decedent's Estate ("Plaintiff"), alleges claims against Frontier for negligence – premises liability ("Count II"); she also alleges claims for wrongful death ("Count IV") and under Pennsylvania's survival act ("Count V"). Plaintiff seeks an award of punitive damages, among other damages.

Plaintiff's claims fail as a matter of law because (1) Frontier owed no duty to protect against an unforeseeable, violent and intentional act of a third-party; (2) Frontier is not responsible for the alleged negligence of its independent contractor, WFS; and (3) Frontier's conduct was not a substantial factor in causing the Decedent's injuries. Additionally, Plaintiff's punitive damages claim against Frontier should be stricken because Plaintiff fails to allege specific facts showing Frontier acted "recklessly."

## II.   STATEMENT OF FACTS

Plaintiff alleges that on May 3, 2018, the Decedent's WFS co-worker, Kevin Emanuel ("Emanuel"), presented for work in Terminal A at PHL carrying a knife. (*See* Exhibit A, Doc. # 6, ¶¶ 27, 31.) Terminal A is owned, controlled and operated by the City. (*Id.*, ¶¶ 3, 15.) The City is responsible for policies, rules and regulations, and implementation of security measures at PHL, including ensuring compliance with the prohibition of weapons on airport property. (*Id.*, ¶ 18.) The City was responsible for managing, coordinating, and positioning Transportation Security Administration's ("TSA") officers at appropriate entry points of PHL's terminals, including Terminal A. (*Id.*, ¶ 21.)

At the time of the subject incident, WFS and Frontier were parties to a contract related to WFS providing ground handling services to Frontier at PHL. (*Id.*, ¶ 55.) WFS employed both the Decedent and Emanuel, both of whom worked at PHL. (*Id.*, ¶¶ 14, 27, 28, 32, 56, 57.)  Shortly

before the incident, the Decedent was "napping" while on a WFS-scheduled lunch break.[2] (*Id.*, ¶¶ 32, 61.)  Thereafter, the Decedent engaged in an argument with Emanuel, who ultimately stabbed the Decedent's leg causing his death. (*Id.*, ¶¶ 32–33.) Plaintiff alleges that the stabbing of the Decedent was solely caused by the argument between the Decedent and Emanuel. (*Id.*, ¶ 59.) Plaintiff further claims that Emanuel's attack on the Decedent "had nothing to do with his employment." (*Id.*, ¶ 58.)  Plaintiff alleges that the injuries suffered by the Decedent were inflicted by a co-worker for purely personal reasons. (*Id.*, ¶ 57.)

According to Plaintiff, the Decedent, as a WFS employee, was a business visitor of Frontier while on the PHL premises of Terminal E. (*Id.*, ¶¶ 56, 61.)  Plaintiff claims that Frontier owed the highest duty to protect business invitees or visitors not only against known dangers, but also against those which might be discovered with reasonable care. (*Id.*, ¶ 63.) Plaintiff alleges that it was widely known among WFS's employees and management that overnight workers would bring weapons to PHL for their travels to and from work. (*Id.*, ¶ 20.)  Further, Plaintiff claims that Frontier and WFS employees and management were aware that the City did not have the mandated TSA-screening behind the employee entrances of Terminal E at PHL. (*Id.*, ¶ 22.)

Plaintiff alleges that Frontier was negligent for failing to ensure that there were security checkpoints for visitors and airport staff at PHL; failing to investigate the lack of safety of WFS employees; failing to train and supervise WFS employees on PHL's security policies; and failing to protect the Decedent from the injury he endured at PHL. (*Id.* at ¶¶ 66–67.)

### III.   <u>LEGAL STANDARD</u>

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain sufficient facts to state a plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563, 570 (2007) (citing

---

[2] The Complaint does not specify the location where the Decedent was napping while on his break.

FED. R. CIV. P. 12(b)(6)). Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Adams v. US Airways Group, Inc.*, 978 F. Supp. 2d 485, 489, 496, 498 (E.D. Pa. 2013). A plaintiff is prohibited from relying on speculation and conclusory allegations alone. FED. R. CIV. P. 8; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Whether a party owes a duty of care to prevent injury to another is a threshold question of law. *Feld v. Merriam*, 485 A.2d 742, 745 (Pa. 1984).

## IV.   ARGUMENT

### A.   Frontier is Not Responsible for the Unforeseeable, Violent Act of a Third-Party.

Plaintiff alleges that because the Decedent was an employee of WFS, and WFS and Frontier were parties to a service contract, the Decedent was a business invitee of Frontier while he was on the PHL premises of Terminal E. (Doc. # 6, ¶ 61.)  The mere fact that the Decedent was an employee of WFS, however, does not establish that he was a business invitee of Frontier. Although Frontier leased particular space *within* Terminal E at PHL, Plaintiff fails to identify the specific location of the incident. (*Id.*, ¶¶ 53, 58.) Therefore, on the face of the Complaint, it cannot be discerned whether the location of the incident occurred within space leased by Frontier. As such, the Complaint fails to plead the requisite facts to establish that Plaintiff was a business invitee of Frontier.

Even if the Decedent had been considered a business invitee of Frontier, which Frontier denies, Frontier would not have owed a duty to protect him against intentionally violent, third-party conduct, unless there was a reasonable basis to anticipate such conduct. *See Reason v.*

*Kathryn's Korner Thrift Shop*, 169 A.3d 96, 102–03 (Pa. Super. Ct. 2017) (premises owner owed no duty to protect invitee from assault in absence of notice); *Kearns v. Methodist Hosp.*, 574 A.2d 1068, 1076 (Pa. Super. Ct. 1990) (plaintiffs failed to establish notice to premises owner and security firm of a particular threat to its invitees from the violent acts of third parties); *see also T.A. v. Allen (Appeal of Allen)*, 669 A.2d 360, 362 (Pa. Super. Ct. 1995) (internal citations omitted) (wherein wife owed no duty to protect children from abuse by their grandfather/her husband that occurred in a building she co-owned).

Here, Plaintiff fails to plead any facts establishing that Emanuel's threat of violence could have been anticipated by Frontier. Not only did Frontier not employ the Decedent and Emanuel, but, according to the Complaint, the incident had nothing to do with the Decedent's employment with WFS, and it was solely caused by a personal argument between the Decedent and Emanuel. (Doc. # 6, ¶¶ 14, 27, 28, 32, 56–59.)  No specific allegation is made suggesting that any prior act or omission provided Frontier with the requisite knowledge and opportunity to prevent the third-party violent act. *See Reason*, 169 A.3d at 102–03; *Kearns*, 574 A.2d at 1076. While Plaintiff alleges that the City and/or WFS were on notice of earlier incidents involving WFS employees, and that weapons were being brought into PHL, there are no allegations that Frontier was aware of such information or that it had responsibility over such issues. (Doc. # 6, ¶¶ 14, 20–25, 27, 28, 30, 32, 56–59.)

Because Frontier was so far removed from the two individuals involved in the incident, and it was not responsible for airport security, there was no reason for it to be aware of the alleged tension between the Decedent and Emanuel that allegedly led to the Decedent's death.  *See Reason*, 169 A.3d at 104 (defendant had no reason to anticipate violent acts by assailant against its business invitees, and, therefore, had no duty to protect the plaintiff as a business invitee). The

circumstances and history of Frontier's operations at PHL did not portend that the Decedent would be stabbed by another WFS employee. *Midgette v. Wal-Mart Stores, Inc*., 317 F. Supp. 2d 550, 562–63 (E.D. Pa. 2004) (it could not be expected that Wal-Mart would have reason to foresee the violent actions in its store of the husband of one of its employees). Frontier was not responsible for security at PHL, and, therefore, it would not have been involved in addressing instances of threats or violence, the possession of weapons, or TSA screening issues. The Aviation and Transportation Security Act ("ATSA") made airport security "a direct federal responsibility." *Orelski v. NCS Pearson*, 337 F. Supp. 2d 695, 699–700 (W.D. Pa. 2004). Under the ATSA, security screeners at airports became U.S. government employees, "as opposed to employees of private contractors under contract to individual airlines." *Id.* at 702–03.

Additionally, the City owns PHL and is "responsible for [the] operation and control of . . . including but not limited to, issuance of policies, rules and regulations, implementation of security measures and compliance with all federal and local rules." (Doc. # 6, ¶¶ 3, 15.) Under the City's Department of Commerce, Division of Aviation Rules and Regulations, "[n]o person, except duly authorized, active, police officers, federal employees authorized to carry firearms in the performance of their duties, or members of the armed forces of the United States on official duty shall possess, carry or discharge, ignite, or use any firearms, other weapons, or explosives on the Airport." (*Id.*, ¶ 17; *see also* Rules & Regulations for PHL, § 2(D)(1).)

Accordingly, the City and TSA are responsible for PHL's security, not Frontier. *See* 49 C.F.R. Part 1542; *see also Kerns v. Methodist Hosp.*, 574 A.2d 1068, 1077 (Pa. Super. Ct. 1990) (citing *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984) (security program is "an extra precaution, *such as personnel specifically charged to patrol and protect the premises*. Personnel charged with such protection may be expected to perform their duties with the usual reasonable care required

under standard tort law for ordinary negligence")). The fact that a WFS employee allegedly bypassed security and was permitted to enter PHL with a weapon is not to be taken lightly, but a generalized "custom" is simply not sufficient to impose a duty on Frontier to be a "virtual insurer" against violent harm in all situations and specifically the circumstances presented here.[3] Frontier did not contract to provide security at PHL,[4] and, in fact, the City is charged with this security responsibility both pursuant to agreement and federal regulations. (Doc. #6, ¶¶ 15, 17, 21.) As such, any notice that WFS employees were bypassing security and entering PHL with weapons is attributed to parties other than Frontier.

Plaintiff's claims against Frontier arise from the tragic but unforeseeable stabbing of a WFS employee at PHL. Because Plaintiff has not alleged any facts establishing that Frontier had a reasonable basis to anticipate the conduct of Emanuel, Frontier owed no duty of care to the Decedent to prevent the stabbing. *See Pearson v. Phila. Eagles, LLC*, 220 A.3d 1154, 1166 (Pa.

---

[3] *See James v. Duquesne Univ.*, 936 F. Supp. 2d 618, 633–34, 647, n.8 (W.D. Pa. 2013) (finding there is no duty on a possessor of land to protect against spontaneous criminal intrusion without having constructive or actual notice, and the duty "is one of reasonable care under the circumstances and not that of an insurer"); *Midgette*, 317 F. Supp. 2d at 566 ("'If the people closest to the situation could not have anticipated it, we cannot expect Wal-Mart could foresee [assailant's] actions, or that its failure to call the police, maintain the kind of spousal abuse policy that [an employee] believes it should have, or prohibit the sale of commonly-used and sold ammunition to someone with no restrictions on his ability to purchase firearms or ammunition, would have prevented the shooting. Certainly, no reasonable jury could find that the shooting 'would have been foreseen by an ordinary person as the natural and probable outcome' of [Wal-Mart's] failure to carry out the above tasks.").

[4] Plaintiff's citation to the Lease in support of her negligence theory relating to PHL's security is misguided. This provision cannot be read as an agreement undertaken by Frontier to implement its own security program or insure against *unforeseen, violent* activity of its independent contractor's employee:

> Airline shall require all of its agents, employees, contractors, subcontractors, suppliers, service providers, vendors or officers hired by Airline working in view of the public and about the Terminal Area to wear clean and neat attire and to display appropriate identification. Airline will, in and about the Airport and its Airline's Leased Premises, exercise reasonable control over the conduct, demeanor and appearance of its employees, agents and representatives, contractors, suppliers, vendors, service providers and officers in an orderly and proper manner so as not to harass, irritate, disturb or be offensive to the public and at all times act in accordance with the Rules and Regulations and Airport Security Program.

Lease, Non-Disturbance and Conduct of Employees, § 3.03(H).

Super. Ct. 2019).  Accordingly, Plaintiff's negligence claim fails as a matter of law and should be dismissed with prejudice.

## B.       Frontier is Not Responsible for the Alleged Negligence of its Independent Contractor.

Plaintiff's claim that the Decedent's death arises from Frontier's failure to protect the Decedent from the conduct of his fellow WFS employee is meritless, as WFS, Frontier's independent contractor, was in a better position to discover the alleged dangerous condition(s) that led to the Decedent's death. *See Warnick v. Home Depot U.S.A., Inc.*, 516 F. Supp. 2d 459, 465 (E.D. Pa. 2007) (citing Restatement (Second) of Torts, § 343 (Dangerous Conditions Known or Discoverable by Possessor)). Possessors of land are generally insulated from liability for the negligence of an independent contractor since the contractor is in control of the workplace, has expertise in the performance of the work, and is in the best position to protect others. *Mentzer v. Ognibene*, 597 A.2d 604, 609 (Pa. Super. Ct. 1991). Accordingly, a hiring party is not liable for the injuries of an independent contractor's employee unless (1) the hiring party "'retained control' . . . over the means and methods of the contractor's work," or (2) the work being performed poses a special danger or is particularly risky. *Warnick*, 516 F. Supp. 2d at 466.

Pennsylvania law has long construed the retained control exception narrowly, almost always finding that the hiring party did not exercise sufficient control over the independent contractor. *Id.* at 467 (internal citations omitted); *see also Court v. Loews Phila. Hotel, Inc.*, No. 16–4848, 2017 U.S. Dist. LEXIS 206378, at *23–25 (E.D. Pa. Dec. 15, 2017) (holding the hiring party was not liable for its contractor's tortious conduct because any control asserted by the hiring party "was about the results, not the manner, of hiring," the underlying services at issue were not unusually dangerous, and it had no notice that the contractor's employee's assault was going to occur). Additionally, courts have declined to apply the "peculiar risk" doctrine, unless the

employee was performing work that entailed risks different from the ordinary risks associated with the employee's usual work. *See Warnick*, 516 F. Supp. 2d at 469.

Neither exception to the general rule of non-liability for an independent contractor's conduct applies here. As in *Warnick* and *Court*, Frontier did not control the means and method of WFS's work, and the underlying work for which the Decedent presented on the date of the incident was not of a particularly risky nature or more peculiar than his usual ground handling services. *See Warnick*, 516 F. Supp. 2d at 470. Frontier did not supervise or control WFS employees. Frontier was not responsible for the scheduling, monitoring, evaluating, or disciplining of WFS employees. In fact, WFS states in its motion to dismiss (Doc. # 7) that it was the employer of Decedent as evidenced by his 2017 and 2018 W-2 forms (*Id.*, Ex. B), and also identifies the Decedent's offer of employment and an executed copy of the WFS ramp service clerk job description (*Id.*, Ex. C). Further, according to Plaintiff, WFS had exclusive possession of the baggage handling area in which the Decedent worked. (Doc. # 9, p. 2) In short, WFS hired the Decedent, paid his wages, had supervisory authority over him, assigned his job duties, including daily work assignments, and exclusively controlled the manner and means of his work.

Moreover, Plaintiff alleges that the previous encounters between the Decedent and Emanuel "*had nothing to do with [the Decedent's] employment.*" (Doc. 6, ¶ 58 (emphasis added).) Seeing as Frontier's only connection to WFS was the ground handling agreement, it is not plausible that Frontier would have been in a better position than WFS to discover or address non-work related issues between WFS employees. To the extent the Decedent's injuries were caused by WFS's negligence, Frontier is not responsible for its independent contractor's actions or inactions. To create such an unrecognized legal duty and impose it on Frontier here would be improper.

Plaintiff's negligence claim based on the non-existent duty fails as a matter of law and should be dismissed with prejudice.

**C.     Frontier's Conduct Was Not a Substantial Factor in the Cause of the Injuries.**

Even where a duty of care is owed, which Frontier denies in this case, a plaintiff must still sufficiently allege that the defendant knew or should have known that the specific risk of injury existed under the circumstances presented, and the alleged tortious conduct by that defendant was a substantial factor in producing the subject injury. *See Heeter v. Honeywell Int'l, Inc.*, 195 F. Supp. 3d 753, 757 (E.D. Pa. 2016) (internal citations omitted), *aff'd*, 706 Fed. Appx. 63 (3d Cir. 2017).[5]

In *Heeter*, this Court found that multiple factors weighed against predominance and the existence of proximate cause when the plaintiff alleged that the failure of an alarm system she purchased from the defendants allowed an intruder to steal firearms from her home, which the intruder then used to murder the plaintiff's son at a different location. 195 F. Supp. 3d at 754–56, 761. Prior to the incident, when discussing the home alarm system, the plaintiff told the defendants she was principally concerned with keeping the eventual intruder/murderer (among others) off her property, and with the intruder's "'conscious disregard for the well-being of . . .'" her son (the victim). *Id.* at 754, 760. Despite the defendants' assurance that the alarm system would alert the plaintiff if there was a break-in, the intruder was ultimately able to break into the plaintiff's home,

---

[5] Causation under Pennsylvania law requires:

> Cause in fact or "but for" causation requires proof that the harmful result would not have come about but for the conduct of the defendant. Proximate cause, in addition, requires proof that the defendant's conduct was a substantial contributing factor in bringing about the harm alleged. Where the relevant facts show either that the defendant was not responsible for the injury, or that the causal connection between the defendant's negligence and the plaintiff's injury is remote, the question of causation is decided by the court as a matter of law.

*Id.* at 757 (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 366–67 (3d Cir. 1990) (discussing Pa. law)).

disable the alarm, and steal the plaintiff's firearms, without the plaintiff receiving any notification. *Id.* at 754. This Court ultimately held that proximate cause did not exist and granted the defendants' motion to dismiss – which was affirmed by the Third Circuit[6] – because a variety of factors "'had a far greater effect'" than the allegedly defective alarm system in bringing about the victim's death, including the intruder's decision to go to the plaintiff's home and take the firearms, and the intruder's "'conscious disregard for the well-being of . . . [the victim]." *Id.* at 759.

Here, like in *Heeter*, it is abundantly clear that a variety of factors other than Frontier's alleged conduct had a substantially greater impact on the events leading to the Decedent's death, and, critically important, Frontier had no knowledge of any prior violence or security issue at PHL. *See id.* Indeed, Plaintiff alleges that "previous complaints by [Decedent] and other [WFS] employees regarding workplace violence were ignored [by WFS]" (Doc. 6, ¶ 29); "there was at least one complaint of a knife being brandished in the breakroom for which WFS management failed to address" (*Id.*, ¶ 30); "it was widely known amongst WFS's employees and management that overnight workers would bring weapons to [PHL]" (*Id.*, ¶ 20); the City did not have the mandated TSA-screening behind employee entrances (*Id.*, ¶ 22); and the City removed private security for weapon screening of PHL employees (*Id.*, ¶ 23–24). There are no allegations, however, that Frontier was aware of any information that put it in a position to prevent the stabbing death of the Decedent, or that Frontier was primarily responsible for addressing potential security concerns.

The aforementioned allegations do not establish that Frontier knew or should have known of a specific risk of injury to the Decedent, or that Frontier committed tortious conduct that was a substantial factor in producing the Decedent's injury. *See Heeter*, 195 F. Supp. 3d at 757. It is clear

---

[6] While the Third Circuit opinion is designated as non-precedential under its Internal Operating Procedure 5.7, it is cited herein pursuant to Rule of Appellate Procedure 32.1. *Heeter v. Honeywell Int'l Inc.*, 706 Fed. Appx. 63 (3d. Cir. 2017) (affirming a "myriad [of] other matters had a far greater effect on the murder of [the victim] than the conduct of the [defendants]").

that Frontier's alleged conduct was not predominant or a substantial factor in the death of the Decedent. *See id.* at 759. There were numerous factors outside of Frontier's control that weighed against any opportunity to have prevented this unforeseeable stabbing, including the unanticipated argument and physical encounter between non-Frontier employees and the use of a weapon. As such, Plaintiff's negligence claim fails as a matter of law and should be dismissed with prejudice.

**D.      Plaintiff's Derivative Claims of Wrongful Death and Survival Fail.**

Plaintiff's wrongful death and survival claims incorporate the negligence allegations and refer to the injury from which she derives the underlying cause of action. Since Plaintiff's negligence claim fails to state a cause of action against Frontier, the wrongful death and survival claims must fail, too.

An action may be brought under the Wrongful Death Act "to recover damages for the death of an individual *caused by the wrongful act or neglect or unlawful violence or negligence of another . . . .*" 42 PA. C.S. § 8301(a) (emphasis added). Under the Survival Act, "[a]ll causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants." 42 PA. C.S. § 8302.

"Derivative action" is "[a] lawsuit arising from an injury to another person, such as a husband's action for loss of consortium arising from an injury to his wife caused by a third person." BLACK'S LAW DICTIONARY at 509 (9th ed. 2009). Pennsylvania has long held the "fundamental principle that both an estate in a survival action, and a statutory claimant in a wrongful death action, shoulder the same burden of proving that tortious conduct on the part of the defendant caused the decedent's death." *Valentino v. Phila. Triathlon, LLC*, 150 A.3d 483, 493 (Pa. Super. Ct. 2016) (internal citation omitted); *see also Moyer v. Rubright*, 651 A.2d 1139, 1143 n.3 (Pa. Super. Ct. 1994) (holding wrongful death and survival actions are derivative of the original tort). Further,

> [a] wrongful death action is derivative of the injury which would have supported the decedent's own cause of action and is dependent upon the decedent's cause of action being viable at the time of death. *Moyer*, 651 A.2d at 1143. "As a general rule, no action for wrongful death can be maintained where the decedent, had he lived, could not himself have recovered for the injuries sustained." *Ingenito v. AC & S, Inc.*, 430 Pa. Super. 129, 633 A.2d 1172, 1176 (Pa. Super. 1993). Thus, although death is the necessary final event in a wrongful death claim, the cause of action is derivative of the underlying tortious acts that caused the fatal injury. *Id.*

*Sunderland v. R.A. Barlow Homebuilders*, 791 A.2d 384, 390–91 (Pa. Super Ct. 2002). "A survival action has its genesis in the decedent's injury, not his death" and allows for pain and suffering damages between the time of injury and death. *Frey v. Penn. Elec. Co.*, 607 A.2d 796, 798 (Pa. Super. Ct. 1992).

In Count IV for wrongful death and Count V for survival, the Decedent's Estate seeks to recover damages arising from Decedent's injuries and death. (*See* Doc. #6, Count IV & Count V.) Principally, such claims require underlying tortious conduct on the part of Frontier – such claims are not independent causes of action. And, as Plaintiff has failed to state a claim for negligence against Frontier, Plaintiff's derivative claims for wrongful death and survival fail, too.

**E.    The Court Should Strike Plaintiff's Claims for Punitive Damages.**

Plaintiff seeks recovery for punitive damages as set forth in her "Wherefore" clauses in each count asserted against Frontier, which all rely on alleged negligence. (*See id.*, Counts II, IV, & V.) Despite the principal negligence claim, Plaintiff alleges that Frontier "recklessly and/or in reckless disregard" failed to ensure there were security checkpoints for visitors and airport staff at PHL; failed to investigate the safety of the employees after Frontier was put on notice that WFS's employees were bringing weapons to PHL; failed to supervise employees; and failed to protect Decedent from the injury he endured at PHL. (*Id.*, ¶ 66.) If, despite Frontier's Motion, Plaintiff's claims against Frontier are not dismissed in their entirety, the Court should strike Plaintiff's

conclusory request for punitive damages because she has failed to plead sufficiently outrageous conduct.

Punitive damages are proper "'only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct.'" *Lloyd v. Covanta Plymouth Renewable Energy, LLC*, No. 20-4330, 2021 U.S. Dist. LEXIS 20353, at *11–12 (E.D. Pa. Feb. 3, 2021) (internal citation omitted)). "Wanton misconduct . . . 'means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probably that harm would follow.'" *Evans v. Phila. Transp. Co.*, 212 A.2d 440, 443 (Pa. 1965). A plaintiff must plead facts constituting an act done with an "evil motive or . . . reckless indifference to the right of others." *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984) (internal citation omitted). In *Feld,* which involved an armed, violent attack in an apartment's parking lot, the Pennsylvania Supreme Court held that "[i]n deciding whether to impose punitive damages[,] a court should not look to the third party's criminal conduct, which in this case was truly outrageous; a court should not look at the end result, which in this case also was outrageous; rather, the court should examine the actor's conduct." *Id.* at 748.

Plaintiff's Complaint contains no material facts supporting a request for punitive damages against Frontier. (*See* Doc. #6, Counts II, IV, & V.) There are no facts alleged demonstrating that Frontier acted with reckless indifference to the rights of the Decedent and which could ever (even liberally construed) support a characterization of Frontier's behavior as outrageous and evil. Moreover, Plaintiff alleges that the Decedent's <u>WFS</u> co-worker bullied and tormented him (*Id.*, ¶ 27); the Decedent made previous complaints regarding workplace violence, but it is not alleged that the complaints were made to Frontier (*Id.*, ¶ 29); and there was a prior complaint of a knife

being brandished for which <u>WFS</u> management failed to address (*Id.*, ¶ 30). Moreover, the City, not Frontier, is responsible for the operation and control of PHL, including its security (*Id.*, ¶¶ 15, 18, 21, 24).

Aside from improper conclusions that Frontier had "notice" and acted "recklessly," there are no actual facts alleged against Frontier supporting a punitive damages claim. The Complaint is notably missing the necessary facts that Frontier intentionally acted unreasonably and in disregard of a known risk or a risk so obvious that Frontier must have been aware of it. Such allegations are simply not plausible under the circumstances. Thus, even if Plaintiff has a viable claim against Frontier, which Frontier denies, this Court should strike the claims for punitive damages.

## V.       <u>CONCLUSION</u>

WHEREFORE, Defendant, FRONTIER AIRLINES, INC. ("Frontier"), prays that this Honorable Court enter an order dismissing Counts II, IV, and V of Plaintiff's Complaint as pleaded against Frontier, pursuant to Fed. R. Civ. P. 12(b)(6), striking the claims for punitive damages, and for such further relief as this Court deems just and reasonable.

Dated: September 10, 2021                    Respectfully submitted,

**ADLER MURPHY & MCQUILLEN LLP**

*/s/ Kristin A. Hoffman*
Kristin A. Hoffman (Admitted *Pro Hac Vice*)
Brian T. Maye (Admitted *Pro Hac Vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: khoffman@amm-law.com
           bmaye@amm-law.com

SKINNER LAW GROUP
Laurie Alberts Salita (PA I.D. No. 87884)

15

Mackenzie W. Smith (PA I.D. No. 306685)
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Email: salita@skinnerlawgroup.com
       smith@skinnerlawgroup.com

*Counsel for Frontier Airlines, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| KEISHA BROWN as Administrator of the ESTATE OF AARON JENKINS, | : : : : | |
| Plaintiff, | : | **CIVIL ACTION NO. 20-5532** |
| v. | : | |
| CITY OF PHILADELPHIA, et al., | : : : | |
| Defendants. | : : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2021, upon consideration of Defendant Frontier Airlines, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R.C.P. 12(b)(6), and any response thereto, it is hereby ORDERED and DECREED that the Motion to Dismiss is GRANTED. Plaintiff's Amended Complaint is hereby dismissed as to Frontier Airlines, Inc., WITH PREJUDICE.

BY THE COURT:

_____

, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEISHA BROWN as Administrator of the ESTATE OF AARON JENKINS, | : : : : | |
| Plaintiff, | : | **CIVIL ACTION NO. 20-5532** |
| v. | : : : | |
| CITY OF PHILADELPHIA, et al., | : | |
| Defendants. | : : | |

## CERTIFICATE OF SERVICE

I, the undersigned, certify that on this date, I caused true and correct copies of Defendant Frontier Airlines, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed.R.C.P. 12(b)(6), Memorandum in Support of Defendant Frontier Airlines, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed.R.C.P. 12(b)(6), and Proposed Order to be filed via the Official Court Electronic Document Filing System, and that said documents are therefore available for viewing and downloading from the ECF system. By virtue of this filing, service is complete upon receipt of the Court's e-mail notification of the Notice of Electronic Filing for the Electronic Case Filing Users whose appearances have been entered on the docket in this matter.

Dated: September 10, 2021                    */s/ Kristin A. Hoffman*

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **KEISHA BROWN, As Administratix** | : | |
| **of the Estate of Aaron Jenkins** | : | |
| *Plaintiff*, | : | **Case No. 2:20-cv-05532-CMR** |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| **CITY OF PHILADELPHIA** | : | |
| 1515 Arch Street, 14th Floor | : | |
| Philadelphia, PA 19102 | : | |
| and | : | |
| | : | |
| **PHILADELPHIA AIRPORT** | : | |
| a/k/a Philadelphia International Airport | : | |
| 800 Essington Avenue | : | |
| Philadelphia, PA 19153 | : | |
| and | : | |
| | : | |
| **Worldwide Flight Services, Inc**. | : | |
| Room361 – B151, E. Hangar Road | : | |
| Cargo Area A, JFK International Airport | : | |
| Jamaica, NY 11430 | : | |
| | : | |
| and | : | |
| | : | |
| **Frontier Airlines** | : | |
| 4545 Airport Way | : | |
| Denver, CO 80239 | : | |
| *Defendant*. | : | |

### AMENDED COMPLAINT

Plaintiff, Keisha Brown as the Administratrix of the Estate of Aaron Jenkins, a decedent by and through her attorneys, Mu'min F. Islam and Brittany Gardner, alleges as follows:

### PARTIES

1. Keisha Brown ("Plaintiff") is the Administrator of the Estate of Aaron Jenkins, with a residence of 1923 W. Sparks Street, Philadelphia, PA 19141.

2. Defendant, City of Philadelphia ("City"), having its principal place of business at 1515 Arch Street, 14th Floor, Philadelphia, PA 19102.

1

3. Defendant, Philadelphia Airport, a/k/a Philadelphia International Airport, ("PHL") is the primary airport serving Philadelphia, which is owned by the City of Philadelphia. Having its principal place of business at 800 Essington Avenue, Philadelphia, PA 19153.

4. Defendant, Worldwide Flight Services, ("WFS") is a ground handling organization providing cargo, passenger, premium, ramp, baggage, and technical services across a network spanning over 179 locations in more than 22 countries on five continents. Having its principal place of business at Room361 – B151, E. Hangar Road, Cargo Area A, JFK International Airport, Jamaica, NY 11430.

5. Defendant, Frontier Airlines, Inc., ("Frontier") is an American carrier headquartered in Denver, Colorado having its principal place of business at 4545 Airport Way, Denver, CO 80239.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331, as Plaintiff's claims arise under the Fourteenth Amendment to the United States Constitution and U.S.C. §1983.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Defendants can be found in, reside, or transact business in this District.

8. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(2) because the event sor omissions giving rise to the claim occurred in this District.

## MATERIAL FACTS

9. On September 28, 2018 Plaintiff was duly qualified as Administrator of the Estate of Aaron Jenkins.

2

10. Aaron Jenkins ("Decedent") was pronounced dead on May 3, 2018 at Presbyterian Hospital from a stabing.

11. Decedent was a 28-year-old resident of Philadelphia County, residing at 126 West Roselyn Street, Philadelphia, PA 19120.

12. Plaintiff brings this suit as Administrator of the Estate of Aaron Jenkins, as personal representative of Aaron Jenkins.

13. At all times relevant to this cause of action, WFS, Frontier, PHL, and City (collectively referred to as "Defendants"), engaged in business within the Commonwealth of Pennsylvania and the City and County of Philadelphia on a regular, systematic, continuous and substantial basis controlling the operations of the airport.

14. At all times relevant to this cause of action, Plaintiff was an employee of WFS during his employment at PHL in the City of Philadelphia.

15. The City and PHL are responsible for operation and control of the Philadelphia International Airport including but not limited to, issuance of policies, rules and regulations, implementation of security measures and compliance with all federal and local rules.

16. Defendant's Philadelphia International Airport's Rules and Regulations Manual, published under the authority contained in Sections 4-500(c) and 8-407 of the Philadelphia Home Rule Charter, empowers the City of Philadelphia's Department of Commerce to make regulations governing the use and control of the Airport.

17. Since December 2016, the City's Department of Commerce Division of Aviation Rules and Regulations for the airport set forth a prohibition for any person "except duly

authorized, active, police officer, federal employees" from possessing firearms and/or other weapons.

18. In support of this prohibition, the City and PHL had a duty to maintain appropriate policies and procedures to ensure compliance with the prohibition of weapons on the airport's property.

19. Upon information and/or belief, during Plaintiff's employment with WFS, it was custom employees of Frontier and WFS to enter Philadelphia International Airport, as well as gate access via the terminals with weapons.

20. In fact, it was widely known amongst WFS' employees and management, that overnight workers would specifically bring weapons to the facility for their travel to and from work.

21. The City and PHL were responsible for managing, coordinating and positioning Transportation Security Administration's ("TSA") officers at appropriate entry points of PHL's terminals.

22. Frontier and WFS' employees and management were aware the City and PHL did not have TSA screening as mandated behind the employee entrances of Terminal E leading to gate access.

23. In addition to TSA, within Terminal E there was the employment of private security to ensure compliance with the weapon prohibition of airport employees.

24. Upon information and belief, defendants City and PHL removed the additional security from the employee access areas of Terminal E.

25. As a result of the custom of allowing individuals into the tarmac and other areas behind Terminal E and the removal of the private security, Plaintiff was exposed to unknown dangers created by the government actors as a violation of the Fourteenth Amendment.

26. Due to Defendants' custom, airport employees bypassed security, and lack thereof, and were permitted to enter the airport and terminals with prohibited weapons.

27. During his employment, employee Kevin Emanuel ("Emanuel") bullied and tormented the Plaintiff with no relief from Defendants.

28. Upon information and/or belief Emanuel had a personal relationship with the human resources manager.

29. As a result of this relationship, previous complaints by Plaintiff and other employees regarding workplace violence were ignored.

30. In fact, there was at least one complaint of a knife being brandished in the breakroom for which WFS management failed to address.

31. On May 3, 2018, consistent with the known custom, Emmanuel entered the premises of Terminal A with no metal screening and/or internal screening carrying a knife approximately 5 – 10 inches long.

32. During his lunch break, he engaged in an argument with Decedent while Decedent was napping during his scheduled break.

33. Based upon their pre-existing history, Decedent attempted to defend himself from Emmanuel and was ultimately stabbed in his leg causing his death.


## COUNT I
## CIVIL RIGHTS
### Keisha Brown, as Administrator of The Estate of Aaron Jenkins v. City of Philadelphia and Philadelphia International Airport


34. The foregoing paragraphs are incorporated herein by reference.

35. Defendant City of Philadelphia is a Municipality that is subject to suit pursuant to 41 U.S.C. §1983.

36. Defendant Philadelphia International Airport is a municipal entity that is subject to 41 U.S.C. §1983.

37. Defendants Philadelphia International Airport and City of Philadelphia's constitutional torts are not governed or limited in any way by 41 Pa. C.S.§8541, *et seq.* or 42 Pa. C.S. §8521, *et seq.*

38. Defendants City of Philadelphia and Philadelphia International Airport violated Decedent's due process right to bodily integrity, which is secured by the Fourteenth Amendment to the Constitution of the United States.

39. At all times material hereto, defendants City of Philadelphia and the Philadelphia International Airport acted under color of state law.

40. The specific harm to which defendants City of Philadelphia and the Philadelphia International Airport exposed Decedent to was foreseeable and direct in that they were aware allowing employees within the Terminal with weapons would result in harm including but not limited to death via stabbings.

41. PHL's willful decision to remove private security and TSA security from Terminal E creates a degree of culpability that shocks the conscience in allowing individuals to have private access to Terminal E without proper security measures, including metal detector screening.

42. PHL's custom in allowing individuals to enter Terminal E without any medical detectors or private screening is contrary to the rules and regulations of the Airport, City of Philadelphia and Federal Aviation Administration.

43. The Decedent as an employee of Frontier and WFS was a member of a discrete class of person subjected to the potential harm brough about by the Defendants City and PHL.

6

44. As a member of this class, Decedent held a special relationship with the City of Philadelphia and the Philadelphia International Airport as he was an employee that used the employee access of Terminal E.

45. PHL affirmatively removed TSA and/or private screening measures for employees within Terminal E in a way that created a danger to Decedent.

46. PHL and the City of Philadelphia's actions constitute a "state-created danger," rendering them liable to Plaintiff for violation of Decedent's civil rights.

47. Despite their awareness of the risk of weapons within the airport by individuals not being screened, policymakers within the City of Philadelphia and the Philadelphia International Airport, deliberately chose not to train their employees and/or agents including Frontier, regarding policies for screening for weapons or acquiesced in a longstanding practice or custom of inaction in this regard.

48. Despite their awareness of the risk of weapons being brought onto the airport without metal detector screening, policy makers within Defendant City of Philadelphia and Philadelphia International Airport deliberately chose not to supervise their employees and/or agents including Frontier regarding policies for screening of weapons or acquiesced in a longstanding practice or custom of inaction in this regard.

49. The Constitutional rights violated by defendants City of Philadelphia and the Philadelphia International Airport consisted of liberty, privacy, and bodily integrity.

50. Defendants City of Philadelphia and the Philadelphia International Airport acted intentionally or with deliberate indifference to the rights of Decedent.

51. As a direct result of the actions of defendants as set forth above, Decedent was caused to suffer the injuries set forth in paragraph 30.

*WHEREFORE*, Plaintiff prays this Honorable Court to enter judgment in his favor, and against the Defendants, and award the following relief:

a.    Actual, special, compensatory, incidental, consequential, and punitive damages in an amount to be determined at trial;

b.    Cost of suit in an amount to be determined at trial; and,

c.      Such additional or further relief as the interest of justice may require

### COUNT II
**Negligence - Premises Liability**
**Keisha Brown, as Administrator of The Estate of Aaron Jenkins v. Worldwide Flight Services and Frontier Airlines**

52. The foregoing paragraphs are incorporated herein by reference.

53. PHL entered Into an use and lease agreement with Frontier for the use of lease space within Terminal E of the airport on/or about November 30, 2015.

54. Within the lease agreement for the premises at Terminal E, Frontier was obligated to exercise reasonable control over the conduct, demeanor and appearance of its employees, agents and representatives, contractors, suppliers, vendors, service providers and officers in an orderly and proper manner so as not to harass, irritate, disturb or be offensive to the public and at all times act in accordance with the Rules and Regulations and Airport Security Program.

55. WFS entered Into an agreement with Frontier, service as the baggage handler and other services for Frontier on/or about May 2018 for Terminal E.

56.  Decedent was an employee of WFS.

57. Under personal animus or third-party attack exception to Workers' Compensation Act's exclusivity provision, the exclusivity provision does not preclude damage recoveries by

employee based upon employer negligence in maintaining safe workplace if such negligence is associated with injuries inflicted by coworker for purely personal reasons. 77 P.S. §§ 411(1), 481.

58. Decedent was attacked during his lunch break while an argument ensued with someone for whom he has had previous negative encounters which had nothing to do with his employment.

59. Based upon their pre-existing relationship along with Emanuel's possession of a knife, Decedent was stabbed In his leg solely because of the two parties argument.

60. A Showing of personal animus is not strictly required to implicate personal animus or third party attack exception to Workers' Compensation Act's exclusivity provision; rather, what is required is a showing that a victim was attacked for purely personal reasons unrelated to employment. 77 P.S. §§ 411(1), 481.

61. As an employee of WFS, Decedent was also a business visitor of Frontier while on the premises of Terminal E.

62. A "business visitor" is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of land.

63. The duty of care owed to a business invitee or business visitor is the highest duty owed to any entrant upon land; the landowner must protect the invitee not only against known dangers, but also against those which might be discovered with reasonable care.

64. A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he: (1) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, (2) should expect that they will not discover or realize the danger,

9

or will fail to protect themselves against it, and (3) fails to exercise reasonable care to protect them against the danger.

65. Based on Defendants' conduct, they failed to ensure Jenkins' safety at his place of employment by; (1) failing to ensure there were security checkpoints for visitors at PHL; (2) failing to ensure there were security checkpoints for airport staff at PHL; (3) failing to investigate the lack of safety of the employees after Defendants were put on notice prohibited weapons were entering PHL; (4) failing to train and supervise employees on PHL security policies; and (5) failing to protect Decedent from the injury he endured at Defendants' facility resulting in his death by his coworker.

66. Defendant had a duty to act reasonable and use due care while Decedent was an employee at PHL. Defendant breached that duty of due care and acted negligently and/or carelessly, and/or recklessly and/or in reckless disregard to Plaintiff by:

    a. Failing to ensure that there were security checkpoints for visitors at PHL.

    b. Failing to ensure that there were security checkpoints for airport staff at PHL.

    c. Failing to investigate the safety of the employees after Defendants were put on notice that weapons were entering PHL.

    d. Failing to supervise employees.

    e. Failing to protect Plaintiff from the injury he endured at Defendants' facility.

67. As a direct and proximate result of the negligence of Defendants, Plaintiff, was caused to suffer from the stab which led his death.

68. All of the above damages were directly and proximately caused by the aforementioned negligence of Defendants.

WHEREFORE, the Plaintiff prays this Honorable Court to enter judgment in his favor, and against

the Defendant, and award the following relief:

a. Actual, special, compensatory, incidental, consequential, and punitive damages;

b. Cost of suit and attorney's fees; and,

c. Such additional or further relief as the interest of justice may require.

**COUNT IV**
**Wrongful Death**
**Keisha Brown, as Administrator of The Estate of Aaron Jenkins v. Defendants**

69. All preceding paragraphs of this Complaint are incorporate herein by reference.

70. Plaintiff brings this action as the Administrator of the Estate of Aaron Jenkins, on behalf of those entitled by law to recover for his wrongful death, under and by virtue of 42 Pa. C.S.A. § 8301, et seq., commonly known as the Pennsylvania Wrongful Death Act.

71. No action for damages was brought by Decedent during his lifetime as a result of the claims at issue in this case.

72. Plaintiff claims damages for the pecuniary loss suffered by Plaintiff's beneficiaries by reason of his death.

73. Plaintiff claims damages resulting from the deprivation of comfort, aid, assistance and society, and the loss of the guidance and tutelage to Jenkin's family due to his death.

*WHEREFORE*, the Plaintiff prays this Honorable Court to enter judgment in his favor, and against Defendants, and award the following relief:

f. Actual, special, compensatory, incidental, consequential, and punitive damages;

g. Cost of suit and attorney's fees; and,

h. Such additional or further relief as the interest of justice may require.

**COUNT V**
**SURVIVAL ACT**
**Keisha Brown, as Administrator of The Estate of Aaron Jenkins v. Defendants**

11

74. All preceding paragraphs of this Complaint are incorporated herein by reference.

75. Plaintiff also brings this action under and by virtue of 42 Pa. C.S.A. § 8302, et seq., commonly known as the Pennsylvania Survival Act.

76. The Estate of Aaron Jenkins claims damages for pain and suffering undergone by the decedent as of a result of the Defendant's negligence, up to and including the time of death, and damages for the net amount that Decedent would have earned from the date of his death to the end of his life expectancy.

*WHEREFORE*, the Plaintiff prays this Honorable Court to enter judgment in his favor, and against the Defendant, and award the following relief:

    i.   Actual, special, compensatory, incidental, consequential, and punitive damages;

    j.   Cost of suit and attorney's fees; and,

    k.   Such additional or further relief as the interest of justice may require.

MFI LAW GROUP, PLLC

By: _____

Mu'min F. Islam, Esquire
7433 Limekiln Pike, Ste. 210
Philadelphia, PA, 19138
Email: mislam@mfilawgroup.com
*Attorney for Plaintiff*

Date: November 26, 2020

MFI Law Group, PLLC
By: Mu'min Islam, Esquire
Identification No.: 208979

12

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

_____  :
                                      :
**KEISHA BROWN, As Administratix**     :
**of the Estate of Aaron Jenkins**     :
     *Plaintiff*,                   :    **Case No. 2:20-cv-05532-CMR**
  v.                                 :
                                      :    JURY TRIAL DEMANDED
                                      :
**CITY OF PHILADELPHIA**               :
1515 Arch Street, 14th Floor          :
 Philadelphia, PA 19102              :
       and                       :
                                      :
**PHILADELPHIA AIRPORT**               :
a/k/a Philadelphia International Airport :
800 Essington Avenue                  :
Philadelphia, PA 19153                :
and                                   :
                                      :
**Worldwide Flight Services, Inc**.     :
Room361 – B151, E. Hangar Road        :
Cargo Area A, JFK International Airport :
Jamaica, NY 11430                     :
                                      :
and                                   :
                                      :
**Frontier Airlines**                  :
4545 Airport Way                      :
Denver, CO 80239                      :
     *Defendant*.                  :
_____  :

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the Plaintiff's Complaint was filed and served to:

City of Philadelphia
1515 Arch Street, 14th Floor
Philadelphia, PA 19102


PHILADELPHIA AIRPORT
a/k/a Philadelphia International Airport
800 Essington Avenue
Philadelphia, PA 19153


Worldwide Flight Services, Inc.
Room361 – B151, E. Hangar Road

13

Cargo Area A, JFK International Airport
Jamaica, NY 11430

Frontier Airlines
4545 Airport Way
Denver, CO 80239

Respectfully,
**MFI Law Group, PLLC**

BY: _____

Mu'min F. Islam, Esq.
*Attorney for Plaintiff*, Estate of Aaron Jenkins

Date: November 26, 2020