IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| KEISHA BROWN as Administrator of the ESTATE OF AARON JENKINS, | : : : | |
| Plaintiff, | : : | **CIVIL ACTION NO. 20-5532** |
| v. | : : : | |
| CITY OF PHILADELPHIA, et al., | : : : | |
| Defendants. | : : | |

**DEFENDANT FRONTIER AIRLINES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLAIMS AGAINST FRONTIER**

Defendant, FRONTIER AIRLINES, INC. ("Frontier"), by its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully submits this Reply in Support of its Motion to Dismiss Plaintiff's Amended Complaint as pleaded against Frontier.

I.  ARGUMENT

Plaintiff's Opposition only serves to highlight the flawed allegations against Frontier in her Amended Complaint (the "Complaint"). First, Plaintiff fails to identify any facts establishing that Frontier had a reasonable basis to anticipate the incident as Frontier had no notice. Second, Plaintiff fails to address Frontier's argument that its alleged conduct was not a substantial factor in causing the Decedent's injuries. Finally, in response to Frontier's argument that Plaintiff's Complaint fails to allege facts showing that Frontier acted "recklessly," Plaintiff simply recites the law on punitive damages, and then summarily contends that Plaintiff has pleaded sufficient facts, without actually identifying any facts to support her claim.  In other words, Plaintiff proves the point that there is no factual basis for the recovery of punitive damages, and her claim must be stricken.

1

A. **Plaintiff Fails to Allege a Cognizable Duty or Claim Recognized in Law.**

1. <u>Frontier had no reasonable basis to anticipate the incident</u>.

In its Motion to Dismiss (Doc. # 39), Frontier argues that it did not owe a duty to protect the Decedent against intentionally violent, third-party conduct because there was no reasonable basis to anticipate such conduct. *See Reason v. Kathryn's Korner Thrift Shop*, 169 A.3d 96, 102–03 (Pa. Super. Ct. 2017) (premises owner owed no duty to protect invitee from assault in absence of notice). In her Opposition, Plaintiff contends that the death of the Decedent was foreseeable in that WFS employee Kevin Emanuel ("Emanuel") bullied and tormented the Decedent with no relief from the Defendants. (Doc. # 44 at 13). This is the only fact on which Plaintiff relies to argue that Frontier had a reasonable basis to anticipate the incident. This single allegation, however, reveals nothing about whether Frontier had notice of this, much less any, information that would have possibly made the incident foreseeable. While the allegation speaks to the nature of the relationship between the Decedent and his WFS co-worker, it says nothing about what Frontier knew or why Frontier should have anticipated the ultimate tragedy. (*See* Doc. # 6, ¶¶ 14, 27–28, 30, 32, 56–59). Plaintiff does not allege that Frontier was aware of prior incidents at Philadelphia International Airport ("PHL") that were connected to Frontier, or that Frontier was aware of any issues with WFS employees. As such, Plaintiff has not established that Frontier owed a duty to prevent the spontaneous, violent act of Emanuel. *See James v. Duquesne Univ.*, 936 F. Supp. 2d 618, 633–34, 647, n.8 (W.D. Pa. 2013); *see also Midgette v. Wal-Mart Stores, Inc.*, 317 F. Supp. 2d 550, 562–63 (E.D. Pa. 2004).

Tellingly, Plaintiff does not even attempt to distinguish *Reason*, *Kearns*, or the other cases cited in Frontier's Motion supporting its argument that Plaintiff failed to adequately plead a cognizable duty here. Instead, Plaintiff attempts to make the argument that Frontier owed an

unconditional duty to protect invitees from the intentional acts of third parties, relying on *Truax v. Roulhac*. (Doc. # 44 at 10). However, Plaintiff failed to explain that the *Truax* court made clear that no duty is owed if the harm is unforeseeable, such that the owner has no opportunity to reasonably anticipate such conduct might occur. *See Truax v. Roulhac*, 126 A.3d 991, 989 (Pa. Super. Ct. 2015). Plaintiff also cites to section 344 of the Second Restatement of Torts to argue that Frontier is under an absolute duty to protect any visitors at PHL. (Doc. # 44 at 10–11). Yet, Plaintiff fails to note that this section of the Restatement focuses on conduct that is *reasonably anticipated*. Restatement 2d of Torts, § 344 cmt. F (emphasis added). Plaintiff's "facts don't matter" approach should be rejected here.

2. <u>Frontier was not responsible for screening at PHL</u>.

Because Plaintiff is unable to identify facts in the Complaint establishing that Frontier should have foreseen this tragic event, Plaintiff attempts to muddy the waters by arguing that Frontier owed a duty to screen WFS employees or purportedly allowed its contractors to bypass security screening. (Doc. # 44 at 9, 11). However, Plaintiff does not make any allegations in the Complaint that Frontier was responsible for security screening at PHL. Instead, she claims that the City was responsible for the security of the entire airport, which includes Terminal E.[1] (Doc. # 6, ¶¶ 15, 21, 23–25, 40–42). Plaintiff also alleges that the City exposed the Decedent to a specific harm because the City was "aware [that] allowing employees within the Terminal with weapons would result in harm including but not limited to death via stabbings." (Doc. # 6, ¶ 40). She further claims that the City, which owns PHL, made a "willful decision to remove private security and TSA security from Terminal E . . . allowing individuals to have private access to Terminal E

---

[1] Again, the Complaint does not specify the location where the Decedent was napping while on his break, but for purposes of this Reply, Frontier focuses its argument on Terminal E as identified in Plaintiff's Opposition and with the recognition that Frontier leased particular space *within* Terminal E at PHL, along with other airlines. (Doc. # 6, ¶¶ 53, 58).

3

without proper security measures, including metal detector screening" (Doc. # 6, ¶ 41); and that it was PHL's "custom in allowing individuals to enter Terminal E without any [metal] detectors or private screening [which] is contrary to the rules and regulations of the Airport, City of Philadelphia and Federal Aviation Administration." (Doc. # 6, ¶ 42). In short, Plaintiff's Opposition is undermined by her own Complaint, which does not allege that Frontier was ever involved in, or responsible for, screening individuals entering PHL. *See generally* Doc. # 6.

3. <u>Airport Agreement does not establish that Frontier owed the Decedent a duty</u>.

Lastly, Plaintiff raises the flawed proposition that Frontier owed the Decedent a contractual duty based upon the Airport-Airline Use and Lease Agreement (the "Agreement") between Frontier and the City. (*See* Doc. # 44 at 11–12; *see also* Doc. # 44, Ex. B). Because Plaintiff failed to attach the Agreement to her Complaint, she is precluded from relying on such Agreement to respond to Frontier's Motion to Dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 299 (2d ed. 1990)). Notwithstanding, Frontier's Agreement with the City did not create a duty to protect the Decedent against intentionally violent, third-party conduct. Like numerous other air carriers that operated in Terminal E at PHL on the date of the incident, Frontier was not privy to information that made this event foreseeable, and the existence of the Agreement does not alter the common law duty analysis in this case. Moreover, Plaintiff has not alleged a breach of contract claim against Frontier.

In summary, Plaintiff fails to identify any facts establishing that Frontier had a reasonable basis to anticipate this incident. Thus, Frontier owed no duty to protect the Decedent from Emanuel's intentionally violent conduct.

**B.       Plaintiff Fails to Allege Specific Facts to Establish Notice to Frontier.**

Plaintiff argues that Frontier had an obligation to prevent this unforeseeable violence committed by a third-party because, during the Decedent's employment, Emanuel "bullied and tormented the [Decedent] with no relief." (Doc. # 6, ¶ 27). As explained above, this alleged fact does not establish that Frontier knew or should have known that the Decedent was being bullied by his WFS co-worker. Aside from conclusory statements, Plaintiff alleges no facts establishing that Frontier was in a position to discover and respond to the alleged history between WFS's employees.

In her Complaint, Plaintiff alleges that (1) Emanuel had a personal relationship with the WFS human resources manager (Doc. # 6, ¶ 28); (2) previous complaints to WFS by the Decedent and other WFS employees regarding workplace violence were ignored (Doc. # 6, ¶ 29); and (3) WFS management failed to address one prior complaint of a knife being brandished in the breakroom (Doc. # 6, ¶ 30). These allegations are directed to WFS, not Frontier, establishing that only WFS was in a position to address employee issues involving the Decedent and Emanuel. As such, any liability related to pre-incident notice pertaining to the activities of WFS employees cannot be attributed to Frontier.

Further, and as explained above, Plaintiff does not allege that Frontier was ever involved in, or responsible for, screening individuals entering PHL. *See generally* Doc. # 6. Instead, she claims that the City was responsible for the security of the entire airport. (Doc. # 6, ¶¶ 15, 21, 23–25, 40–42). Any liability related to pre-incident notice pertaining to screening cannot be attributed to Frontier. Accordingly, Plaintiff alleges no facts specific to Frontier to make this incident foreseeable.

C.   **Plaintiff Fails to Allege that Frontier's Conduct was a Substantial Factor in Causing the Decedent's Injuries.**

Although Plaintiff fails to address Frontier's argument that its conduct was not a substantial factor in the cause of the Decedent's injuries, she makes conclusory statements, unsupported by facts in the Complaint, that Frontier created an alleged security defect by "allowing [its] employees / independent contractors / baggage handlers to not go through any security screening." (Doc. # 44 at 6, 9, 13). To the extent Plaintiff's theory against Frontier relates to alleged negligent screening, it is clear that none of Frontier's alleged conduct could have ever been a substantial factor in causing the Decedent's injuries. There are no allegations in the Complaint suggesting that Frontier was aware of security screening issues. There are no allegations in the Complaint claiming that Frontier had any knowledge of any prior violence among WFS employees based on bypassing security with weapons or otherwise. Finally, there are no allegations that Frontier was aware of *any* information that put it in a position to take action to address potential security concerns. Plaintiff's new suggestion that Frontier was involved in security or enabled Emanuel to bypass security at PHL is entirely unsupported by any facts in the Complaint. In her Complaint, Plaintiff alleges that the City was responsible for security at PHL, not Frontier. Accordingly, based on the facts alleged in the Complaint, Frontier's alleged conduct could not have been a substantial factor in the unforeseeable death of the Decedent.

D.   **Plaintiff Fails to Allege Outrageous Conduct Supporting Punitive Damages.**

In her Opposition, Plaintiff only recites the elements for the imposition of punitive damages, but she identifies no factual basis for her punitive damages claim. As identified above and in Frontier's Motion (Doc. # 39, Memorandum in Support of Motion, at 14–15), there are no facts alleged against Frontier suggesting that it had actual knowledge of Emanuel's threat of violence or a foreseeable risk of harm to invitees. No matter how Plaintiff tries to rewrite her

6

allegations, she could never allege facts under the circumstances supporting a characterization that Frontier's conduct was outrageous and evil. Accordingly, Plaintiff's request for punitive damages is futile and must be stricken.

## II.  CONCLUSION

WHEREFORE, Defendant, FRONTIER AIRLINES, INC. ("Frontier"), respectfully requests that the Court dismiss Counts II, IV, and V of Plaintiff's Amended Complaint as pleaded against Frontier with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6), strike Plaintiff's claims for punitive damages, and for such further relief as this Court deems just and reasonable.

Dated: October 1, 2021                                              Respectfully submitted,

**ADLER MURPHY & MCQUILLEN LLP**

*/s/ Kristin A. Hoffman*
Kristin A. Hoffman (Admitted *Pro Hac Vice*)
Brian T. Maye (Admitted *Pro Hac Vice*)
ADLER MURPHY & McQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Phone: (312) 345-0700
Email: khoffman@amm-law.com
          bmaye@amm-law.com

SKINNER LAW GROUP
Laurie Alberts Salita (PA I.D. No. 87884)
Mackenzie W. Smith (PA I.D. No. 306685)
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
Email: salita@skinnerlawgroup.com
          smith@skinnerlawgroup.com

*Counsel for Frontier Airlines, Inc.*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on October 1, 2021, she served the foregoing document by electronically filing the same with the Clerk of the U.S. District Court for the Eastern District of Pennsylvania by using the CM/ECF system, which will send notification of such filing to all CM/ECF participants for this matter.

/s/ *Kristin A. Hoffman*